**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0883
DIRECT EMAIL  rkaplan@kaplanhecker.com

July 7, 2022

**BY ECF AND EMAIL**

The Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

           Re:    <u>Pierce v. Better Holdco, Inc., et al.</u>, No. 22-cv-04748 (S.D.N.Y.)

Dear Judge Torres:

        Pursuant to Section III.A of Your Honor's Individual Practices, we write on behalf of Better Holdco, Inc. ("Better" or "the Company"), to set forth the bases for an anticipated motion to dismiss. On June 28, 2022, pursuant to Section III.B.ii of Your Honor's Individual Practices, Better sent Plaintiff a letter identifying the numerous legal infirmities which require dismissal with prejudice. By email dated July 7, 2022, Plaintiff informed Better that she will not withdraw her Complaint but otherwise declined to respond substantively to the Company's arguments, stating that she would instead wait for the Company to file the instant letter with the Court. As explained below, Plaintiff's Complaint fails as a matter of law because (a) she relies on a version of New York's whistleblower law not in effect at the time of the alleged conduct, and (b) her Complaint fails to adequately allege that she engaged in protected activity, or that there was any plausible causal connection between her acts and the purportedly retaliatory actions of the Company.

        Plaintiff by this action continues her months-long effort to extract unearned compensation from her former employer, this time by manufacturing a meritless lawsuit through unsupported, untrue, and prejudicial allegations.[1] Plaintiff was a recent college graduate with a degree in Urban

---

[1] For purpose of its anticipated motion, Better will treat the Complaint's allegations as true, as is required by Fed. R. Civ. P. 12(b)(6), though it vehemently denies the truth of the vast majority of them. *See, e.g., Grayson v. Ressler & Ressler*, 271 F. Supp.3d 501, 513 (S.D.N.Y. 2017). However, the Court need not accept as true those of Plaintiff's false allegations that are plainly contradicted by documents incorporated by reference in the Complaint. *See Rapoport v. Asia Elecs. Holding Co.*, 88 F.Supp.2d 179, 184 (S.D.N.Y. 2000). For example, Plaintiff claims that the Company made false statements in a "May 2021" S-4 filing (Compl. ¶ 38), but no such filing exists. And Plaintiff repeatedly alleges that her December 17, 2021 email, incorporated by reference in the Complaint, was "not a resignation," even though it expressly states that she would "like to begin transitioning out of my role and Better." Ex. A. (Not surprisingly, the Complaint also fails to disclose other facts demonstrating Plaintiff's intent to resign, including that she relocated to Aspen and repeatedly told her colleagues in writing that she was "about to resign," was "zoned out," and was planning her "quitting strategy.")

Studies/Affairs when she joined Better in 2016 as a sales person earning $65,000 a year. Over the next five years, Better and its executives invested heavily in Plaintiff, giving her significant opportunities for professional growth and development. By December 2021, she had been promoted to Head of Sales and Operations and was earning a salary of $1 million a year, with a recent bonus of $1 million. Compl. ¶ 31. She also held nearly 2 million shares of Better stock, *id.*, a portion of which she purchased with a $2.2 million loan from the Company in January 2021.

But it turns out that the Company's overwhelming generosity toward and faith in Plaintiff was not enough. Shortly after Better's Board of Directors instructed CEO Vishal Garg to hire a Chief Operating Officer and President who is a "seasoned operator," Compl. ¶ 87, Plaintiff, apparently angered by the Board's stewardship, resigned from her position and made a set of exorbitant demands. While she now deceptively contends that she did not resign, her correspondence explicitly stated that she'd "like to begin transitioning out of my role and Better," Compl. ¶ 112 and Ex. A, and demanded that the Company, among other things, pay her as a non-employee "at a fixed per annum fee of $2 million," accelerate vesting of all her unvested shares and options, and then purchase all of her two million shares at a price of $27 per share—as much as *$54 million. Id.*

Worse, in a cynical and opportunistic effort to force the Company to accept her outrageous demands, Plaintiff's email cryptically stated that she would agree "not take action against the Company with the information in my possession," if the Company agreed to her terms. Ex. A. But when Better's General Counsel asked Plaintiff to discuss what she meant by the "information in her possession," Plaintiff objected, stating that the supposed "information in her possession" was "already known" by the General Counsel and the executive team. Compl. ¶ 117.

The Company did not accept Plaintiff's outrageous demands, but it did accept her resignation. Plaintiff thereafter brought this baseless lawsuit, in which she alleges, in a shocking display of dishonesty, that she was terminated (from a position from which she resigned) for being a whistleblower (which she plainly was not). Plaintiff's allegations are not only factually baseless, but her first cause of action, the purported violation of New York Labor Law ("NYLL") § 740 against Better, fails as a matter of law for two independent reasons.[2]

### I. The new statute upon which Plaintiff relies does not apply here.

Plaintiff's first cause of action purports to rely on a version of New York's whistleblower law NYLL § 740 that was not in effect at the time of the conduct she challenges and therefore does not apply to her claims. More specifically, NYLL § 740 was amended in relevant part, effective January 26, 2022, to extend protection against retaliation to employees who report an activity, policy, or practice "that the employee reasonably believes is in violation of law, rule or regulation . . . ." § 740(2)(a). Prior to this amendment, NYLL § 740 extended only to employees who reported a legal violation that created "a substantial and specific danger to the *public health and safety*."

---

[2] Plaintiff's first cause of action is the only one pled against Defendant Better. Plaintiff's remaining claims, which are equally spurious, are pled against Defendants Calamari and Garg individually and are addressed separately in a letter submitted by their counsel.

*Remba v. Fed'n Emp. & Guidance Serv.*, 76 N.Y.2d 801, 802 (1990) (emphasis added). Plaintiff does not, and cannot, purport to bring a claim under the prior version of the law.[3]

Here, Plaintiff's claim challenges alleged retaliatory acts that occurred at the latest on January 14, 2022, twelve days *before* the effective date of the amended statute, which has no retroactive effect. *See Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020). While Plaintiff alleges that her employment at Better *ended* on February 4, 2022, Compl. ¶ 17, Plaintiff's effort to separate this single personnel action into two temporally distinct events in order to avail herself of the benefit of the amended statute is disingenuous. In *Dykstra v. Wyeth Pharmaceuticals, Inc.*, for example, the Second Circuit held that where an employee's ultimate termination "flows as an inevitable consequence" from an earlier notice of suspension, the two are "properly viewed as one personnel action" occurring on the earlier date. 454 F. App'x 20, 22–23 (2d Cir. 2012); *see also, e.g.*, *Thompson v. Jamaica Hosp. Med. Ctr.*, 2016 WL 4556905, at *3 (S.D.N.Y. Aug. 30, 2016). Because Plaintiff has alleged no adverse employment action occurring after the effective date of the amended statute, her § 740 claim should be dismissed as a matter of law.

## II. Plaintiff has failed to state a claim.

Even if the amended New York whistleblower statute applied—and it plainly does not—Plaintiff has failed to plausibly allege that she engaged in any activity protected by § 740. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Interpreted generously, Plaintiff's Complaint alleges that she disagreed with various actions taken by her supervisors, primarily with respect to the December reduction in force ("RIF") event. But § 740 does not confer a cause of action on every employee who complains about their boss. *See Dougherty v. Mem'l Sloan-Kettering Cancer Ctr.*, 2002 WL 1610916, at *4 (S.D.N.Y. July 22, 2002). Rather, Plaintiff must plead facts sufficient to plausibly show that she "disclose[d], or threaten[ed] to disclose" an activity that she reasonably believed was a "violation of law, rule or regulation." NYLL § 740(2)(a).

Plaintiff has failed to satisfy this demanding burden. Her Complaint consists entirely of boilerplate allegations that she "made internal complaints," "raised her concerns," and "[spoke] up," without providing sufficient detail to identify the content of the report or when, where, or to whom it was allegedly made. *See, e.g.*, Compl. ¶¶ 37, 39, 42, 75, 152. These are precisely the sorts of vague allegations that courts have found insufficient to sustain a whistleblower retaliation claim under New York law. *See, e.g.*, *Klein v. Brookhaven Health Care Facility*, 2019 WL 1459258, at *10 (E.D.N.Y. Mar. 11, 2019); *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 582 (2d Cir. 2020). Without more, the Court cannot reasonably infer that Plaintiff's "complaints" were protected under § 740. For example, Plaintiff fails to allege any facts sufficient to show that her alleged confrontations with the CEO concerning organic traffic revenue or the Company's profitability horizon were disclosures about violations of law, rather than good-faith disagreements between senior employees about performance projections and data analysis. Compl. ¶¶ 38-42.[4]

---

[3] As Plaintiff presumably would concede, it is well-settled that alleged violations of securities and employment laws are not matters creating a "danger to the public health and safety" within the meaning of the prior version of the statute. *See Remba*, 76 N.Y.2d at 802.

[4] Indeed, this allegation is particularly implausible, as it suggests that Plaintiff, the self-described "functional equivalent of Chief Operating Officer," Compl. ¶ 2, believed the Company and CEO made fraudulent misrepresentations, but nevertheless took no steps to correct those misstatements after they were made, as she would have been obligated to do. *Id.* ¶¶ 38-39. Equally implausible is Plaintiff's apparent

For similar reasons, Plaintiff has also failed to adequately allege the requisite causal connection between the alleged protected activity and the adverse employment action. A plaintiff in a § 740 suit must plead facts sufficient to "warrant the inference that . . . the adverse employment action *would not have been taken* absent the employee's protected [activity]." *Dougherty*, 2002 WL 1610916, at *6 (emphasis added). Here, Plaintiff's alleged protected activity falls into two categories: (1) concerns she purportedly raised in March and May 2021 about financial reporting and (2) concerns she purportedly raised after the RIF event on December 1, 2021.[5] Compl. ¶¶ 38-39, 43, 148. While Plaintiff alleges four adverse employment actions occurring on December 8, 2021 and January 6, January 15, and February 4, 2022, *id.* ¶ 148, she fails to plead any plausible connection between those employment actions and her alleged reporting months earlier.

The first category of alleged protected activity (in March and May 2021) occurred more than *nine months* before the first alleged retaliatory action (in December 2021). In the interim, as Plaintiff herself alleges, in October 2021, the Company gave her a $1 million bonus and the CEO praised her performance. *Id.* ¶ 90. Plaintiff's claim that the Company rewarded her generously six months after her alleged reporting but then decided to retaliate against her for it two months later is preposterous on its face and falls far short of the "high causation threshold" required in § 740 suits. *Beers v. Kaiser Permanente Ne. Div.*, 1999 WL 1269419, at *4 (N.D.N.Y. Dec. 16, 1999); *see also, e.g.*, *Duarte v. St. Barnabas Hosp.*, 265 F. Supp. 3d 325, 353 (S.D.N.Y. 2017) ("[D]istrict courts . . . have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.").

Not surprisingly, Plaintiff fares no better with respect to her second category of alleged protected activity. Although Plaintiff deceptively attributes the December 8, 2021 statements to the CEO, her own allegations make clear that the CEO's email simply "recapp[ed]" statements made by the Board, indicating that *the Board* viewed the Company's metrics as a "black box" and *the Board* wanted the Company to hire a "seasoned" "COO and President." Compl. ¶¶ 86-87. Plaintiff does not allege that the Board of Directors knew about her purported complaints before December 8. Her theory that the Board took these positions to retaliate against her for activity they knew nothing about (rather than, for example, because the company was "in a loss making state" and experiencing backlash from the RIF, Compl. ¶ 88) is implausible. *Id.* ¶ 88. And the remaining three alleged adverse employment actions took place *after* Plaintiff informed the Company that she would "like to begin transitioning out of my role and Better" and proposed outrageously high severance terms. *Id.* ¶ 112; Ex. A. In other words, Plaintiff's claim that the Company put her on leave and "processed" her resignation, because she complained about the RIF and not because she resigned, fails to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

---

claim that she disclosed or threatened to disclose violations of the WARN Act. Plaintiff alleges that the applicability of the WARN Act to the December RIF was the subject of extensive discussion by Legal, HR, and senior Better employees, both before and after the (very public) RIF event. *See, e.g.*, Compl. ¶¶ 51, 83. Even if Plaintiff plausibly alleged that she reasonably believed the RIF violated the WARN Act, which she does not, raising "generalized concerns . . . widely shared and voiced by others . . . is not itself conduct that rises to the level of protected activity." *New York ex rel. Khurana v. Spherion Corp.*, 511 F. Supp. 3d 455, 476 (S.D.N.Y. 2021) (analyzing retaliation claim under the FCA).

[5] Plaintiff also alleges she "confronted" the CEO about profitability projections, but does not offer even an approximate date, or any other specifics about the alleged occurrence. Compl. ¶¶ 41-42.

KAPLAN HECKER & FINK LLP

5

                                                    Respectfully submitted,

/s/ Roberta A. Kaplan

Roberta A. Kaplan
Timothy S. Martin
Kate L. Doniger
KAPLAN HECKER & FINK LLP
*Counsel for Defendant Better Holdco, Inc.*

cc:    All Counsel of Record