THE LAW OFFICES OF

# NEAL BRICKMAN, P.C.

420 LEXINGTON AVENUE, SUITE 2811
NEW YORK, NEW YORK 10170

| | |
|---|---:|
| NEAL BRICKMAN | **TELEPHONE:** |
| JUDITH L. GOLDSBOROUGH | **(212) 986-6840** |
| ETHAN Y. LEONARD | |
| VIRGINIA A. REILLY | **TELECOPIER:** |
| JASON A. STEWART | **(212) 986-7691** |

July 14, 2022

<u>Via ECF and Electronic Mail</u>
Honorable Analisa Torres, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007
Torres_NYSDChambers@nysd.uscourts.gov

              Re: *Pierce v. Better Holdco, Inc., et al.*
                 Case No: 22 CV 04748 (AT)

Dear Judge Torres:

    We represent the Plaintiff, Sarah J. Pierce ("Pierce") in the above-referenced matter. We write today pursuant to Section III.A of the Court's Individual Practices in response to the July 7, 2022 correspondence from Better Holdco, Inc. ("Better") setting forth its purported bases for its anticipated motion to dismiss. In its July 7, 2022 correspondence, Better dramatically misstates the relevant facts and mischaracterizes or ignores the allegations in the Complaint, while improperly resorting to demonstrably false *ad hominen* attacks on the Plaintiff. It should be noted that Better has specifically rejected Plaintiff's proposal to stay – by way of a tolling agreement -- the instant complaint until such time as Plaintiff's closely related Sarbanes Oxley ("SOX") whistleblower retaliation claims currently pending before OSHA could be consolidated into this action. (See Complaint fn 1 concerning the filing of the OSHA complaint).

    As set forth in detail below, the purported bases for Better's anticipated motion are completely without merit. The Complaint does not fail as a matter of law because (a) Pierce relies on the amended version of New York's Whistleblower Law, which was in effect, prior to her termination; and (b) the Complaint alleges, in great detail, that she engaged in protected activity which was, in fact, directly causally connected to her retaliatory discharge.[1]

---

[1] Although Better acknowledges that it is required, for purposes of its anticipated motion, to accept the Complaint's allegations as true (FRCP 12(b)(6)), it previews that it does not intend to adhere to that requirement. Better, for instance, ignores Pierce's outstanding performance and several promotions. Similarly, Better completely ignores the allegations of the Complaint wherein Pierce alleges that she explicitly told CFO Kevin Ryan that she was not resigning and that he requested that she submit the transition proposal that Better now

1

Contrary to Better's attempts to rewrite history, Pierce's contributions to Better and its phenomenal growth during the time in which she oversaw its sales and operations more than warranted the compensation that she received from Better. (Comp. ¶2). It is undisputed that during her 5.5 years at Better, she received four (4) promotions, outstanding performance reviews, large merit-based salary increases, significant annual bonuses, as well as stock option and equity grant awards. It is also undisputed that from at least 2020 she served as Better's functional COO and the number 2 executive (as per CEO Vishal Garg ("Garg")), who oversaw approximately 85% of Better's 10,000+ person workforce. (¶¶2,28-31). Better was not "overwhelmingly generous." Given the incredible value that Pierce contributed, she earned what she was paid. It was not until Pierce complained – and refused to back down in the face of direct retaliation and threats from Better through, *inter alia*, Garg and General Counsel Nicholas Calamari ("Calamari") – about her reasonable belief that Better and Garg had violated securities laws aimed at protecting shareholders and investors and violated, at least, the California WARN Act, that she was overnight deemed unfit. (¶¶90-2). Better's current position that Pierce resigned in the face of her disappointment that Better and Garg chose to seek out an individual to serve as the COO/President is unsupportable and directly controverted by the facts of this matter as specifically detailed in the Complaint.

While Pierce did raise, throughout 2021, concerns about the veracity of statements by Garg and Calamari in connection with the initial S-4 filing in August of 2021, the bulk of her complaints were made in Q4 2021 and after the December 1, 2021 termination of 900 employees by Garg over a zoom call. The specific complaints made by Pierce are detailed in several places in the Complaint (each tellingly ignored by Better in its July 7th correspondence. By way of example only: ¶¶4,13 setting forth the specific complaints made during her January 12, 2022 on the record employee interview with co-General Counsel Tuffin; Comp. ¶8 concerning complaints made to Tuffin and Garg about Garg's material misrepresentations as to profitability, available data, and the terminated 900; ¶36-7 reiterating complaints as to Garg's actions; ¶42 concerning complaints to Garg concerning his misrepresentations as to projected profitability; ¶44 concerning Pierce's complaint to the Board as to Garg's false statements concerning Better metrics and Pierce's performance; ¶¶49-52 concerning warnings and complaint by Pierce that Garg's actions would violate statutes, including, but potentially not limited to, California's WARN Act; ¶¶75-85 concerning Pierce's complaints to Better's General Counsels, Head of Communications, and Senior Leadership, as well as Garg directly, as to the need for corrective action concerning misrepresentations to shareholders and to the SEC, WARN Act violations, defamation of employees, additional falsehoods of Garg; ¶¶98-100 concerning complaints made by Pierce to the Executive Team concerning Garg's improper acts; ¶148 summarizing complaints; ¶¶149-53 summarizing cause of actions against Better.

Similarly unsustainable is Better's current misstatement that Pierce resigned. The actual circumstances as set forth in the Complaint, but again abjectly ignored by Better, can be summarized as follows: In Q4, after directing large-scale hiring on the basis of his belief that Biden was going to die of Covid, Garg did a 180 and directed large-scale lay-offs. (¶¶47-9). Garg initially

---

mischaracterizes as Pierce's "resignation." In addition, Better attempts to seize upon a typographical error in the Complaint regarding the false and misleading statements by it in its S-4 filings. The initial S-4 filing was dated August 3, 2021 and it and the three subsequent S-4 filings each contained the false information regarding Better's alleged organic traffic about which Pierce complained.

directed that such lay-offs occur by November 11, 2021 and include little or no compensation to laid off employees, much less that required by relevant statute. (¶¶49-50). Pierce opposed such a plan based on its illegality. (¶¶49,52). On December 1, 2021, Garg terminated 900 employees over zoom in an illegal manner and to near universal or world-wide disclaim and, in the process, improperly and knowingly falsely defamed those 900 employees. (¶¶55-57). Pierce complained further over the next week. (¶¶75-85). In retaliation, on December 8, 2021, during a meeting with the Board in a closed session, Garg orchestrated the decision to hire a "COO and President – a seasoned operator who can help manage and drive performance across business functions and help me and all of you learn how to build an inspirational leadership culture." Thereafter, fifteen senior leaders decided to write the Board and threaten resignation absent Garg taking a leave of absence: Pierce supported the right of these senior leaders to complain. (¶¶93-6). Calamari adamantly opposed such rights and actively sought to silence these individuals even through implicit threats. (¶97). Pierce continued to advocate for the rights of these individuals and for Better to take corrective action and ultimately persuaded the executive team and the Board to take some action. (¶¶98-102). As to the proposed search for a COO/President, even a member of the Board admitted that "of course Sarah is going to be upset, she is getting layered." (¶107). Contrary to Better's current assertions, on December 16, 2021, CFO Ryan directed Pierce to send him a proposal for the transitioning of her duties to the potential new COO/President. (¶¶109-11). Pierce and Ryan also discussed the potential parameters of her role after the new hire. It was clear that – again directly contrary to the lie now being pandered by Better – Pierce was not resigning. (¶111). The purported "resignation" attached as Exhibit A to Better's July 7 correspondence was known by Better to have been requested by Ryan and was also known explicitly not to be a resignation. The current representations to the contrary constitute a known falsehood.

Equally unsupportable is Better's assertion that the decision to terminate Pierce in February 2022 was part of an adverse employment action that began on, according to Better, "at the latest on January 14, 2022, twelve days before the effective date of the amended statute…" (Better July 7th correspondence at p.3). Again the Complaint clearly lays out the relevant facts which again are utterly ignored by Better. On January 3, 2022, for the first time, Better referred to the proposal requested by Ryan as Pierce's "resignation," a characterization that Pierce immediately corrected. (¶126). On January 6, 2022, Pearce was put on administrative leave. Up to that point she had continued to perform all of her job duties. Directly upon her administrative leave, Calamari directed the immediate cessation of her access to company systems. (¶¶139-42). When questioned about this, Ryan replied, "My plan was no comms until it is clear what long term plan is. No need for it, U agree?" (¶144). Clearly, Pierce had not been terminated or considered to have resigned at that juncture. On January 12, 2022, Pierce sat for an on the record employee interview with Tuffin. (¶145). During that interview, she reiterated many of the complaints that she had made previously. Within days, Better's outside counsel communicated to Pierce that Better was going to accept her "resignation" effective January 18, 2022, despite specific knowledge that Pierce had never submitted any "resignation" and one which Better had repeatedly demonstrated that it did not consider to be a resignation. (¶¶132,146). Tellingly, Better thereafter abandoned its created mythical "resignation" and propounded a paltry severance proposal. It was only after Better recognized that its ploy would not work and came to the conclusion on February 2, 2022 that it no longer wanted to keep Pierce, even in a demoted position or a position outside of New York. (¶148).

The newly amended New York Labor Law §740, effective as of January 26, 2022, prohibits retaliation against an employee who "discloses or threatens to disclose to a supervisor…an activity, policy, or practice of the employer that the employee reasonably believes is in violation of law, rule, or regulation." (¶¶150-2). The facts demonstrate that until February 2022, Pierce was an employee of Better who was on administrative leave – as stated by an officer of Better -- "because you are claiming you're being retaliated against." (¶139). In order for Better to even plausibly maintain that Pierce's February 2022 termination was part of the same employment action as her administrative leave, it needs to admit that her termination was also solely due to her complaints and her assertion that she was being retaliated against for her complaints as protected by, *inter alia*, both SOX and New York Labor Law §740. However, even then an administrative suspension is not considered part of the same employment action. The cases cited by Better do not support a contrary position. In *Dykstra*, the plaintiff's suspension automatically turned into a termination per the relevant governing agreement. *Dykstra v. Wyeth Pharmaceuticals*, 454 F.App'x 20, 22-3 (2nd Cir, 2012). In *Thompson*, when the employee was terminated with an effective date beyond the notice date, the statute was determined to run from the date of the termination decision not its later effective date. *Thompson v. Jamaica Hosp. Med. Ctr.,* 2016 WL 4556905, at *3 (SDNY Aug 30, 2016). In this case, Pierce's termination was determined and communicated on February 2, 2022, after the effective date of the amended statue. The only retaliatory act alleged in support of the NYLL §740 claim is the February decision to terminate Pierce: a decision made and enacted after the effective date of the revised statute.

Better's next contention, namely that Pierce merely alleges that she disagreed with her boss is either purposefully obtuse or downright disingenuous. Pierce specifically relates how she complained to Garg, Better's General Counsel, Better's Board of Directors, as well as other officers, about, *inter alia*, knowing false statements by Better in its S-4 filings, by Garg concerning Better's finances, metrics, potential profitability; and about violations of the California WARN Act[2]. These are not mere recitations of vague "health and safety issues" as found insufficient in *Klein*. *Klein v. Brookhaven Health Care Facility,* 2019 WL 1459258, at *10 (EDNY Mar. 11, 2019) (Decided under the old version of §740). Similarly, the plaintiff in *Wu* failed to identify either the date of any complaint or to whom any complaint was made. *Wu v. Good Samaritan Hosp. Med. Ctr*., 815 F.App'x 575 (2nd Cir. 2020). Pierce's specific allegations as to the improper acts are more than sufficient to state a claim, and her allegations as to the detailed sequence of events clearly demonstrate that her complaints and her refusal to abandon the same where the direct cause of her improper and retaliatory termination in February 2022.

For all of the foregoing reasons, the anticipated motion should not be allowed. It would constitute a waste of this Court's valuable resources. We thank the Court for its time, attention, and courtesies in this regard.

---

[2] Better's current contention that just because other individuals also recognized the clear statutory violation of the California Warn Act, while Garg abjectly ignored such concerns, makes Pierce's concerns inactionable generalized concerns or opinion, misconstrues the facts and the relevant law. The plaintiff in *New York ex rel. Khurana v. Spherion Corp.,* 511 F.Supp.3d 455 (SDNY 2021), a case decided on summary judgment and not a motion to dismiss, did not make such specific complaints or name any specific statute. In fact, the Court therein determined – contrary to the specific allegations herein – that Khurana had not actually asserted that false data had been transmitted, a far cry from Pierce's explicit allegations herein.

4

Respectfully submitted,

*Neal Brickman*

Neal Brickman

cc: Roberta A. Kaplan
Timothy S. Martin
Kate L. Doniger
Steven W. Perlstein
Steven G. Kobre
Michael Bahn