THE LAW OFFICES OF

# NEAL BRICKMAN, P.C.

420 LEXINGTON AVENUE, SUITE 2811
NEW YORK, NEW YORK 10170

NEAL BRICKMAN
JUDITH L. GOLDSBOROUGH
ETHAN Y. LEONARD
VIRGINIA A. REILLY
JASON A. STEWART

**TELEPHONE:**
**(212) 986-6840**

**TELECOPIER:**
**(212) 986-7691**

July 14, 2022

Via ECF and Electronic Mail
Honorable Analisa Torres, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007
Torres_NYSDChambers@nysd.uscourts.gov

Re: *Pierce v. Better Holdco, Inc., et al.*
Case No: 22 CV 04748 (AT)

Dear Judge Torres:

    We represent the Plaintiff, Sarah J. Pierce ("Pierce"), in the above-referenced matter. We write today pursuant to Section III.A of the Court's Individual Practices in response to the July 7, 2022 correspondence from Vishal Garg ("Garg"), Better's CEO, and Nicholas Calamari ("Calamari"), one of Better's General Counsels, setting forth their purported bases for their anticipated motion to dismiss. In their July 7, 2022 letter, Garg and Calamari dramatically misstate the relevant facts and mischaracterize or ignore the allegations in the Complaint, while improperly resorting to demonstrably false *ad hominen* attacks on the Plaintiff. Further, their misapplication of their "facts" to the relevant law is also inaccurate. Each of the causes of action pleaded in the Complaint should survive.

    As set forth in detail below, the purported bases for Garg's and Calamari's anticipated motion are without merit. The Complaint does not fail as a matter of law because (a) Pierce properly pleads a breach of fiduciary duty as owed by Garg to her individually and as a shareholder who was individually affected by his bad acts; (b) Pierce properly pleads that Calamari aided and abetted Garg in that breach; (c) Pierce properly pleads defamation against Garg; and (d) Pierce properly sets forth the necessary elements and supportive facts to make out a claim for Intentional Infliction of Emotion Distress. The Complaint is not properly subject to pre-Answer dismissal.[1]

---

[1] Like Better's pre-motion letter, Garg's and Calamari's letter acknowledges that, on a motion to dismiss, the Court must accept the allegations of the Complaint as true. However, they too preview that they do not feel constrained

1

New York courts employ a flexible approach in determining whether a fiduciary duty exists. "[A] fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another." *I.B. Trading, Inc. v. TriPoint Global Equities*, LLC, 280 F. Supp. 3d 524 (SDNY 2017) (quoting, *Penato v. George*, 52 A.D.2d 939, (App. Div. 1976). The existence of a fiduciary relationship constitutes a factual question. See *e.g., Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.,* 179 F. Supp. 2d 118, 151 (S.D.N.Y. 2000); see also, *Trimarco v. Data Treasury Corp.,* 42 Misc. 3d 1225(A) (Suffolk S.Ct. 2013) (finding COO owed duty to CEO to be honest as to business matters). Pierce as the Head of Sales, the acting COO, the #2 executive at Better (as per Garg), and a shareholder reposed trust and confidence in Garg; trust that was completely shattered by his false reporting; his condoning and active participation in the misrepresentations submitted with the four S-4 filings; his improper defamation of and termination in violation of WARN Act strictures of 900 employees; his attempts to rewrite history and blame Pierce for his bad acts; his knowingly false defamation of Pierce so as to attempt to pass blame for his bad acts to her; his attempts to silence other executives and make her complicit in the threatened retaliation and silencing of those 15 leaders; his excluding Pierce from meetings, denigrating her to subordinates, attempting to besmirch her reputation internally and externally, improperly placing her on administrative leave in a fashion to make it appear that she was being terminated, retaliating against her for calling attention to his improper and illegal activities, and, ultimately, terminating her in violation of SOX and NYLL §740. Cleary these acts are sufficient to show a violation under New York law, as well as direct actionable injury to Pierce as Garg's breaches to her were separate than those suffered by Better and its other shareholders. See *e.g., In re Multiplan Corp. Stockholders Litig*., 268 A.3d 784 (Del Chancery Court 2022).[2]

Moreover, it is unquestionable that officers and directors owe a fiduciary duty, including a duty of loyalty and a duty of care, to their corporation and its shareholders. See *e.g., Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255, 264 (2d Cir. 1984); *Alpert v. 28 Williams St. Corp.,* 63 N.Y.2d 557 (1984) (Recognizing that officers and directors must meet their duty of care with "conscientious fairness"). "Under New York law, '[d]irectors are self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally.'" *United States SBA v. Feinsod,* 347 F.

---

by that requirement. Instead, they peddle a false narrative -- that Pierce allegedly abandoned the Company for personal gain in spite of the "support" that they supposedly provided for her "professional growth" -- that is belied by the detailed factual allegations of the Complaint.

[2] Even if the Court were to ultimately determine that all or part of Pierce's fiduciary duty claim should be brought derivatively, Pierce should have leave to file an amended Complaint asserting such a claim – especially where, as herein, her Sarbanes Oxley ("SOX") claims are yet to be ripe for hearing before this Court. See *e.g., ICD Capital, LLC v. CodeSmart Holdings, Inc.,* 2020 U.S. Dist. LEXIS 28174, 2020 WL 815733 SDNY 2/19/2020 ; *Luce v. Edelstein,* 802 F.2d 49, 57 (2d Cir. 1986); *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123 (SDNY 2019); *Shemian v. Research In Motion Ltd*., 570 Fed. Appx. 32, 37 (2d Cir. 2014) (FRCP 15 instructs that courts should "freely give leave" to amend when justice warrants and even a base indication of meritorious amendment).

Supp. 3d 147 (EDNY 2018) (quoting, *Marx v. Akers,* 88 N.Y.2d 189 (1996). Under this standard, officers and directors, such as Garg, are required to "perform their duties 'in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances.' N.Y. Bus. Corp. Law §§ 715(h) (officers), 717(a) (directors)." *Id.* There can be no doubt that the Complaint more than demonstrates that Garg's improper actions breached his fiduciary duties owed to Better and all shareholders, and that they had a particularized impact on Pierce as she was the particular subject of several of his knowing false statements.  Similarly, as the Complaint makes clear that Calamari – having specifically been apprised of the various breaches by Garg – took active steps to not only protect Garg, but to specifically cause undue and unwarranted harm to Pierce, actively and knowingly participated in Garg's breaches. A claim for aiding and abetting a breach of fiduciary duty requires the plaintiff to allege: (i) a breach by a fiduciary of obligations to another, (ii) that the defendant knowingly induced or participated in the breach, and (iii) that plaintiff suffered damage as a result of the breach. *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dept. 2003) (citing *S & K Sales Co. v. Nike, Inc*., 816 F.2d 843, 847-848 (2d Cir 1987); *Whitney v Citibank, N.A.,* 782 F.2d 1106, 1115 (2d Cir 1986)).  To the extent that a derivative action is required, Calamari also breached his duties to Better in facilitating, condoning, and seeking to cover-up Garg's violations.

   To make out a claim for defamation, a plaintiff need set forth a false and defamatory statement concerning defendants, (2) publication by the defendant of such statement to a third party, and (3) injury. See, *e.g., Constantin Assoc. v. Kapetas*, 17 Misc. 3d 1137(A), 851 N.Y.S.2d 68 (S.Ct.  NY County 2007); *Christopher Lisa Matthew Policano, Inc. v. North American Precis Syndicate, Inc.,* 129 A.D.2d 488 (1st Dept 1987); *3P-733, LLC v. Davis*, 187 A.D.3d 626 (1st Dept 2020) (reversing lower court's granting of dismissal and reinstating claim for defamation).  As the Appellate Division First Department noted in *Stepanov v. Dow Jones & Co., Inc.,* 120 A.D.3d 28, 34 (1st Dept 2014), "[o]n a motion to dismiss a defamation claim, the court must decide whether the statements, considered in the context of the entire publication, are reasonably susceptible of a defamatory connotation;" see also, Armstrong v Simon & Schuster, 85 NY2d 373, 379 (1995) (if any view of allegations could support defamation, complaint survives motion to dismiss); *Frank v. National Broadcasting Co., Inc.,* 119 A.D.2d 252, 256 (2nd Dept 1986) (Denial of motion to dismiss warranted unless the court determines that the contested statements are incapable of a defamatory meaning as a matter of law); *Matchett v. Stark*, 2016 N.Y. Misc. LEXIS 2584, 6-8, 2016 NY Slip Op. 31302 (U) (SCt., NY Cty, 2016) (rejecting a motion to dismiss defamation claims and recognizing role of the jury); *Biro v. Conde Nast*, 883 F.Supp.2d 441 (S.D.N.Y. 2012) ("challenged statements are not to be read in isolation, but must be perused as the average reader would against the 'whole apparent scope and intent'" of the statement which must not be interpreted in "their mildest and most inoffensive form so as to hold them nonlibelous." (quoting, *November v. Time Inc.,* 13 N.Y.2d 175 (1963)). Notably, where the defamatory statement could cause harm to a plaintiff's trade or profession, the plaintiff need not plead or prove special damages. See *e.g., John Langenbacher Co. v. Tolksdorf*, 199 A.D.2d 64 (1st Dept 1993).  It is undisputed that the statements attributed to Garg are defamatory *per se*, and that Pierce has set forth a valid defamation claim more than sufficient to survive a motion to dismiss.

Garg's contention that the statements attributable to him constitute comments concerning Pierce's performance and are subject to a qualified privilege is inaccurate. The comments were not only made to the Board, but were circulated to at least 30 members of leadership that reported to (were subordinate to) Pierce; (¶¶86-92). For this reason alone, Garg's argument fails. See *e.g., Kasachkoff v. City of New York*, 485 N.Y.S.2d 992 (1st Dept 1996). In any event, even if the Court were to apply a qualified privilege, any one of several exceptions noted in the *Kasachkoff* case cited by Garg and Calamari would apply so as to avoid any form of summary dismissal. *Id.* ((a) "actual malice", see *e.g., Stillman v. Ford*, 22 N.Y.2d 48, 53 (1968); (b) "ill-will," see *e.g., Ashcroft v. Hammond*, 197 N.Y. 488, 495) (1910); or (c) "personal spite…or culpable recklessness or negligence," see *e.g., Hoeppner v. Dunkirk Print. Co.,* 254 N.Y. 95, 106 (1930)). Also, several of the claimed defamatory statement – particularly that Pierce had been "fudging the numbers" – occurred after her termination. No qualified privilege attaches to such statements. Dismissal of this claim is unwarranted.

Finally, in order to set forth a claim for intentional infliction of emotional distress, a plaintiff must allege (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. See *e.g., Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). In the instant case, Pierce has alleged that Garg and Calamari took actions to knowingly and falsely blame Pierce for Garg's improper defamation and termination of 900 employees over a zoom call – an incident that garnered national and international news coverage and condemnation. In addition, Garg and Calamari purposefully placed Pierce on administrative leave in specific fashion so as to make it appear to the entire workforce and the 8,500 employees for whom Pierce was responsible that Pierce had been terminated abruptly and in a fashion that suggested near criminal wrongdoing. In attempting to make Pierce the scapegoat for their own illegal, improper, and universally condemned actions, Garg and Calamari sought to ruin Pierce's reputation in the field and across the globe. Similarly, Garg's and Calamari's plan – including their characterization of Better's requested proposal as a "resignation" – to induce Pierce to resign was purely to cause her additional emotional distress. Moreover, their ultimate effectuation of a knowingly improper and retaliatory termination of Pierce and attempted enforcement of economic sanctions against her in pure retaliation for her legitimate and good faith complaints was extreme and outrageous and designed solely to impugn Pierce and cause her severe emotional distress. Courts have upheld claims for intentional infliction of emotional distress based on far less malevolent facts. See *e.g., Sherry Bender v. City of New York, et al.*, 78 F.3d 787 (2nd Cir. 1996); *Flatley v. Hartmann*, 138 A.D.2d 345, 346 (2nd Dept 1988) ("hang-up" telephone calls); *Halio v. Lurie*, 15 A.D.2d 62, 67 (2nd Dept 1961) (taunting letter from former boyfriend, boasting of marriage); *Flamm v. Van Nierop*, 56 Misc.2d 1059, 1061 (Westchester Cty. S.Ct.1968) (harassing plaintiff by driving too closely and making threatening looks); *Levine v. Gurney*, 149 A.D.2d 473, 473 (2nd Dept 1989). Dismissal of this claim is also unwarranted.

For all of the foregoing reasons, the anticipated motion should not be allowed. It would constitute a waste of this Court's valuable resources. We thank the Court for its time, attention, and courtesies in this regard.

Respectfully submitted,

*Neal Brickman*

Neal Brickman

cc: Roberta A. Kaplan
Timothy S. Martin
Kate L. Doniger
Steven W. Perlstein
Steven G. Kobre
Michael Bahn