**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SARAH J. PIERCE

                Plaintiff,

    v.

BETTER HOLDCO, INC., VISHAL
GARG, and NICHOLAS CALAMARI,

                Defendants

Case No. 1:22-cv-04748-AT

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS VISHAL GARG'S AND NICHOLAS CALAMARI'S**
**MOTION TO DISMISS**

Steven G. Kobre
Steven W. Perlstein
Michael Bahn
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.Kobre@kobrekim.com
Steven.Perlstein@kobrekim.com
Michael.Bahn@kobrekim.com

*Attorneys for Defendants Vishal Garg and*
*Nicholas Calamari.*

# Table of Contents

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS.................................................................................... 3

  I.   BACKGROUND ...................................................................................... 3

    A.  Second Cause of Action: Breach of Fiduciary Duty Against Mr. Garg......................... 5

    B.  Third Cause of Action: Defamation Against Mr. Garg.................................................. 5

    C.  Fourth Cause of Action: Intentional Infliction of Emotional Distress Against Mr. Garg and Mr. Calamari ................................................................................................... 6

    D.  Fifth Cause of Action: Aiding and Abetting Breach of Fiduciary Duty Against Mr. Calamari........................................................................................................ 6

ARGUMENT..................................................................................................... 6

  I.   PLAINTIFF HAS NOT PLED A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST MR. GARG (SECOND CAUSE OF ACTION)...................................................... 7

    A.  Plaintiff's Claim Fails as a Matter of Law Because It is Derivative, Not Direct............ 7

    B.  Plaintiff Has Not Pled Any Individual Duty Owed to Her. ........................................... 9

  II.  PLAINTIFF HAS NOT PLED A CLAIM FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY AGAINST MR. CALAMARI (FIFTH CAUSE OF ACTION)....... 12

  III.   PLAINTIFF HAS NOT PLED A DEFAMATION CLAIM AGAINST MR. GARG (THIRD CAUSE OF ACTION).............................................................................. 14

    A.  Plaintiff Has Not Asserted That Mr. Garg's Statements Were Defamatory. ................. 15

B.   Even If Plaintiff Has Successfully Pled That Mr. Garg's Statements Were Defamatory, She Has Not Asserted Facts to Overcome the Qualified Privilege That Protect Mr. Garg's Statements....................................................................................................................... 16

IV.   PLAINTIFF HAS NOT PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (FOURTH CAUSE OF ACTION)................................................. 18

**CONCLUSION** ................................................................................................................. **20**

Page(s)

Cases

*Angel v. Bank of Tokyo-Mitsubishi, Ltd.*,
   39 A.D.3d 368 (1st Dep't 2007) .................................................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 6

*Benjamin v. Kim*,
   1999 WL 249706 ................................................................................................ 7

*Clayton v. Best Buy Co., Inc.*,
   851 N.Y.S.2d 485 (1st Dep't 2008) ............................................................... 19

*Cortec Indus., Inc. v. Sum Holdings L.P.*,
   949 F.2d 42 (2d Cir. 1991) ............................................................................... 4

*Daniels v. Am. Airlines*,
   2020 WL 9816000 (E.D.N.Y. Sept. 4, 2020) ............................................... 11

*Dunson v. Tri-Maint. & Contractors, Inc.*,
   171 F. Supp. 2d 103 (E.D.N.Y. 2001) ..................................................... 17, 18

*Fernandez v. UBS AG*,
   222 F. Supp. 3d 358 (S.D.N.Y. 2016) ........................................................... 12

*Fox v. CDX Holdings, Inc.*,
   2015 WL 4571398 (Del. Ch. Jul. 28, 2015) .................................................... 9

*In re ICP Strategic Income Fund, Ltd.*,
   730 F. App'x 78 (2d Cir. 2018) ..................................................................... 12

*In re Michael Stapleton Assocs. Ltd.*, No. 17-CV-5468,
   2018 WL 3962931 (S.D.N.Y. Aug. 17, 2018) ................................................. 6

*In re MultiPlan Corp. S'holders Litig.*,
   268 A.3d 784 (Del. Ch. 2022) ......................................................................... 9

*Kasachkoff v. City of New York*,
   485 N.Y.S.2d 992 (1st Dep't 1985) ............................................................... 17

*Kirschner v. Bennett*,
   648 F. Supp. 2d 525 (S.D.N.Y. 2009) ........................................................... 13

*Kolbeck v. LIT Am., Inc.*,
   939 F. Supp. 240 (S.D.N.Y. 1996) ................................................................ 13

*Langenkamp v. New York Univ.*,
   2012 WL 12540277 (S.D.N.Y. Mar. 15, 2012) ............................................. 17

*Langenkamp v. Olson*,
   628 F. App'x 50 (2nd Cir. 2015) .................................................................... 17

*Lydeatte v. Bronx Overall Econ. Dev. Corp.*,
   2001 WL 180055 (S.D.N.Y. Feb. 22, 2001) ............................................. 18, 19

*Marino v. Grupo Mundial Tenedora, S.A.*,
   810 F. Supp. 2d 601 (S.D.N.Y. 2011) .................................................. 12, 13, 14

*Naughright v. Weiss*,
   826 F. Supp. 2d 676 (S.D.N.Y. 2011) ........................................................... 10

*Orenstein v. Figel*,
   677 F. Supp. 2d 706 (S.D.N.Y. 2009) ...................................................... 16, 17

*Realmuto v. Yellow Freight Sys., Inc.*,
  712 F. Supp. 287 (E.D.N.Y. 1989) ............................................................... 20

*Regions Bank v. Wieder & Mastroianni, P.C.*,
  423 F. Supp. 2d 265 (S.D.N.Y. 2006) ........................................................... 12

*Renxiong Huang v. Minghui.org*,
  2019 WL 2525416 (S.D.N.Y. Jun. 18, 2019) ............................................... 15

*Riscili v. Gibson Guitar Corp.*,
  2007 WL 2005555 (S.D.N.Y. Jul. 10, 2007) ................................................ 19

*Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*,
  2012 WL 1890388 (S.D.N.Y. May 23, 2012) ......................................... 10, 11

*Sigmon v. Parker Chapin Flattau & Klimpl*,
  901 F. Supp. 667 (S.D.N.Y. 1995) ............................................................... 19

*Thai v. Cayre Grp., Ltd.*,
  726 F. Supp. 2d 323 (S.D.N.Y. 2010) ........................................................... 19

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) .................................................................. 7, 8, 9

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006) ..................................................................... 12

*United Food & Com. Workers Union & Participating Food Indus. Emp'rs Tri-State Pension Fund v. Zuckerberg*,
  262 A.3d 1034 (Del. 2021) ............................................................................ 8

*Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon*,
  172 A.D.2d 254 (1st Dep't 1991) ................................................................. 14

Rules

Fed. R. Civ. P. 9(b) .................................................................................. 10, 11
Fed. R. Civ. P. 12(b)(6) ................................................................................... 1

Defendants Vishal Garg and Nicholas Calamari submit this memorandum of law in support of their motion to dismiss the complaint (the "<u>Complaint</u>," or "<u>Compl.</u>") of Plaintiff Sarah Pierce, pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

This lawsuit arises from the departure of Sarah Pierce ("<u>Plaintiff</u>"), a disgruntled employee, who after making millions of dollars, decided to leave Defendant Better Holdco, Inc. ("<u>Better</u>" or the "<u>Company</u>") after she no longer liked her role. She now wants to paint a picture about her exit as something nefarious in an effort to siphon more assets away from the Company when her exit negotiation did not go the way she hoped. This narrative and the claims against Mr. Garg, the founder and CEO of Better, and Mr. Calamari, its General Counsel, are untrue. But even as alleged, Plaintiff's Complaint fails to state a claim as a matter of law and should be dismissed.

Plaintiff claims breach of fiduciary duty, defamation, and intentional infliction of emotional distress against Mr. Garg (the Second, Third, and Fourth Causes of Action, respectively). Against Mr. Calamari, she claims intentional infliction of emotional distress, and aiding and abetting Mr. Garg's breach of fiduciary duty (the Fourth and Fifth Causes of Action, respectively). All of these claims fail as a matter of law and should be dismissed for the reasons discussed below.

The breach of fiduciary claim against Mr. Garg must be dismissed for several reasons. First, to the extent that Plaintiff's alleged injuries are based on her status as a shareholder, i.e., injuries to the Company as a whole, those claims are not direct claims and Plaintiff has no ability to sue directly on them. It is blackletter law that, to the extent a claim is based on the injuries to

---

[1] Mr. Garg and Mr. Calamari join the motion to dismiss by the Company. This motion addresses the unique arguments that they have related to the allegations and claims in the Complaint made against them.

1

the Company, Plaintiff would have to file a derivative suit, but Plaintiff never complied with the pre-suit demand requirement, among other deficiencies. Moreover, to the extent Plaintiff bases her claims on alleged injuries that would be considered direct, i.e., from her status as an employee, there are no facts in the Complaint which would support a finding that Mr. Garg owed her a fiduciary duty. *See* Compl. ¶ 156. Thus, this claim should be dismissed as a matter of law.

Consequently, the claim against Mr. Calamari for aiding and abetting Mr. Garg's breach of fiduciary duty must also fail because the Complaint has not adequately pled the underlying breach. Without an underlying breach, a claim for aiding and abetting breach of fiduciary duty cannot stand. Even if Plaintiff had adequately pled the underlying breach (and she has not), she still has not pled the elements of an aiding and abetting claim, i.e., that Mr. Calamari knowingly participated in the underlying breach or provided substantial assistance. Indeed, Mr. Calamari is hardly mentioned in the Complaint and Plaintiff's conclusory allegations in the Cause of Action section are no substitute for well-pled facts. *See* Compl. ¶ 177.

The defamation claim against Mr. Garg must also be dismissed because Plaintiff has not pled that Mr. Garg's statements were defamatory, and even assuming they were, those statements are protected by qualified privilege. It is a well-established principle that qualified privilege applies to statements made by an employer or supervisor to the management or co-workers about an employee's performance. Plaintiff has not pled facts to overcome that privilege.

Lastly, Plaintiff has not pled a claim for intentional infliction of emotional distress against Mr. Garg or Mr. Calamari. New York law sets an extremely high bar for a successful claim for intentional infliction of emotional distress. In the employment context, New York courts are very reluctant to accept a claim for intentional infliction of emotional distress unless the alleged conducts involved physical contact, i.e., battery, or something tantamount to it. The facts alleged

by Plaintiff come nowhere close to this extremely high threshold. Therefore, her claim for intentional infliction of emotional distress must be dismissed as well.

<u>**STATEMENT OF FACTS**</u>

**I.  BACKGROUND[2]**

Better is an online platform for mortgage origination and related services. Compl. ¶ 23. It was founded in 2014. Compl. ¶ 28. Plaintiff joined Better in 2016 as an entry-level salesperson. Compl. ¶ 29.

Plaintiff quickly climbed the corporate ladder. In less than six years, she received four promotions, ultimately rising to the position of Head of Sales, Operations and Customer Experience. Compl. ¶ 30. In that role, she oversaw a team of approximately 9,000 employees across the Company's mortgage, insurance, and real estate business lines. *Id*. She also received merit-based salary increases, annual bonus, stock option and equity grant awards. Compl. ¶ 29.

In May 2021, Better announced its plan to go public via a Special Purpose Acquisition Company transaction ("<u>SPAC Transaction</u>"). Compl. ¶ 33. The SPAC Transaction was expected to close in the fourth quarter of 2021 but was delayed due to the evolving market conditions. Compl. ¶ 34. In December 2021, the Company terminated 900 employees as part of its reduction in force ("<u>RIF</u>") plan. Compl. ¶ 55. The purpose of the RIF was to save costs. Compl. ¶ 49. Mr. Garg announced the RIF to the affected employees via a Zoom call on December 1, 2021. Compl. ¶ 55. The call was recorded and posted online. Compl. ¶ 6.

As CEO, Mr. Garg took steps to handle the situation surrounding the SPAC Transaction and the RIF. On December 8, 2021, he met with Better's Board to report the situation and discuss

---

[2] Mr. Garg and Mr. Calamari adopt the more detailed recitation of facts in the Company's memorandum and focus here on the facts pertinent to the claims against them.

strategies. Compl. ¶ 86. Later that day, he memorialized the Board's decisions in an email to be sent out to the Company's senior leadership. *Id.*[3] According to that email, the Board decided to hire a "COO and President," a position that did not exist at that time. Compl. ¶ 87. The email also said the Board feels the metrics of the company are a "black box" and need to be managed more carefully. Compl. ¶ 88.

On December 17, 2021, Plaintiff e-mailed her "transition proposal" to Kevin Ryan, the CFO of Better. Compl. ¶ 112. As the term "transition proposal" indicates, Plaintiff's email started out by stating that she wanted to "begin transitioning out of my role and Better."[4] It went on to state that her "replacement" would: "take over all responsibilities including: overseeing all businesses (mortgage, insurance, real estate), strategy and planning, exec team organization, all headcount under my remit (8,235)." She also notes: "I would assist in business continuity including transition of licenses in states where I am currently the Qualifying Individual." The email further states: "I will be paid a consulting or similar fee **as a non-employee, independent contractor** at a fixed per annum fee of $2 Million with one year to be guaranteed (i.e., to be paid monthly subject to lump sum payment for unpaid amount if arrangement is terminated sooner than 1 year)" (emphasis added). Plaintiff also notes she would "not affirmatively take action against the company with the information" in her possession and she would use it to be an advocate of the company and not an "adversary." Ex. B.; Compl. ¶ 113.

Paula Tuffin, another General Counsel of the Company, sought to talk to Plaintiff about the said "information" she allegedly had about the Company. Compl. ¶ 117. Plaintiff initially

---

[3] This document is attached to the motion of the Company at Exhibit A. A court can consider documents that are either attached to the complaint or incorporated into it by reference in a motion to dismiss. *Cortec Indus., Inc. v. Sum Holdings L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991)

[4] This document is attached to the motion of the Company at Exhibit B.

declined, but later agreed to talk to General Counsel Tuffin, after she was put on an administrative leave in January 2022. Compl. ¶¶ 117, 145. Furthermore, Plaintiff notes in the Complaint that her original draft of the above email stated that the proposal was "not a resignation," Compl. ¶ 114, but Plaintiff later decided to take that phrase out, not because it was untrue, but because she thought it was "unnecessary given her explicit conversation with CFO Ryan and her history of commitment to the Company." *Id.*

On January 6, 2022, Plaintiff was put on an administrative leave. Compl. ¶ 139. Subsequently, on February 4, 2022, Plaintiff left the Company. Compl. ¶ 148.d. At the time of her resignation, her base salary was $1 million, with a bonus of another $1 million and an equity grant of approximately 2 million company shares. Compl. ¶ 31.

### A. Second Cause of Action: Breach of Fiduciary Duty Against Mr. Garg

Plaintiff asserts that Mr. Garg, as an Officer, Director and Shareholder of Better, owed Plaintiff, also an Officer and Shareholder of Better, a fiduciary duty. Compl. ¶ 155. She claims that Mr. Garg breached this duty by: (i) making certain public misrepresentations that jeopardized the Company's continued viability, (ii) mishandling the December 1, 2021 RIF that brought financial and reputational harm to the Company, and (iii) taking various retaliatory actions against her, including prematurely calling a loan that the Company had provided to Plaintiff to purchase some of her options. Compl. ¶¶ 156-59.

### B. Third Cause of Action: Defamation Against Mr. Garg

Plaintiff asserts that Mr. Garg defamed her by stating, in essence, that: (i) he agreed with the Board to find a new COO and the Board thought the Company's metrics are a "black box," (ii) Plaintiff was the leader of a "coup" against him, (iii) Plaintiff abandoned the Company and sought to extort unentitled money from the Company, (iv) Plaintiff did not work and her title

should have been the "Cheerleader in Chief," and (v) Plaintiff had been "fudging the numbers" related to the Company's labor costs.  Compl. ¶¶ 162-69.

## C.  Fourth Cause of Action: Intentional Infliction of Emotional Distress Against Mr. Garg and Mr. Calamari

Plaintiff asserts that Mr. Garg and Mr. Calamari intentionally inflicted emotional distress on her by: (i) scapegoating her for the Company's financial and reputational damages, (ii) abruptly putting her on an administrative leave, (iii) characterizing her transition proposal as a resignation, and (iv) later terminating her employment.  Compl. ¶¶ 150, 173.

## D.  Fifth Cause of Action: Aiding and Abetting Breach of Fiduciary Duty Against Mr. Calamari

Plaintiff asserts that Mr. Calamari aided and abetted Mr. Garg's breach of fiduciary duty by providing substantial assistance to Mr. Garg's various retaliatory actions against Plaintiff.  This included orchestrating her leave of absence and departure, as well as supporting and defending Mr. Garg's missteps that caused financial and reputational damages to the Company, such as the Zoom RIF and making misstatements in the Company's public filings.  Compl. ¶ 177.

## ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *In re Michael Stapleton Assocs. Ltd.*, No. 17-CV-5468 AJN, 2018 WL 3962931, at *2 (S.D.N.Y. Aug. 17, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Mere "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Pleadings containing no more than mere conclusory statements are not entitled to the assumption of truth otherwise applicable in a motion to dismiss. *Id*.

## I. PLAINTIFF HAS NOT PLED A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST MR. GARG (SECOND CAUSE OF ACTION).

The claim for breach of fiduciary duty against Mr. Garg fails in its entirety. To the extent the claim is based on injuries to the Company, that is a derivative claim that Plaintiff may not bring. To the extent that the claim is based on direct injuries, Plaintiff has not alleged facts from which it could be demonstrated that Mr. Garg owed her a duty.

This conclusion is inescapable under Delaware law, which governs this cause of action. Under New York's choice of law rules, the law of the state of incorporation governs a claim for breach of the fiduciary duty owed to a corporation and its shareholders. *Benjamin v. Kim*, No. 95-civ-9597 LMM, 1999 WL 249706, at *13 n. 13 (S.D.N.Y. Apr. 28, 1999). Better is a corporation organized and existing under and pursuant to the laws of the State of Delaware. Compl. ¶ 23. As such, Delaware law governs the claim for breach of fiduciary duty owed to Plaintiff (Plaintiff appears to have wrongly applied New York law in her July 14, 2022 letter response to Defendants' July 7, 2022 pre-motion letter. ECF No. 24 at 2-3).

### A. Plaintiff's Claim Fails as a Matter of Law Because It is Derivative, Not Direct.

The Court should dismiss the claim for breach of fiduciary duty against Mr. Garg because this claim is derivative, not direct. Plaintiff cannot now assert a derivative claim because she has not complied with the pre-suit demand requirement.

Under Delaware law, a shareholder cannot normally assert a direct claim for breach of fiduciary duty against a corporate director. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1038-39 (Del. 2004). To bring a direct action, the shareholder must allege that his or her injury was "independent of any injury to the corporation." *Id*. at 1038-39 (internal quotation marks omitted). Additionally, the shareholder must demonstrate that the duty breached was "owed to the

stockholder and that he or she can prevail without showing an injury to the corporation." *Id*. at 1039.

Here, any injury to the value of Plaintiff's shares was part and parcel of the alleged injuries to Better. With respect to the harm caused by Mr. Garg's alleged breach of fiduciary duties, the Complaint asserts: "These misrepresentations put the <u>Company's</u> continued viability at risk…dramatically decreased the value…of the Company. In addition, CEO Garg's unseemly mishandling of the December 1, 2021 RIF…was a public relations nightmare, resulting in…irreparable reputational damage to the <u>Company</u>. His false and misleading comments…further exacerbated the financial and reputational harm that CEO Garg had inflicted on the <u>Company</u>." Compl. ¶ 156 (emphases added). These harms, even accepting them as true, are injuries to the Company, not to Plaintiff directly.

When Mr. Garg pointed out in his July 7, 2022 pre-motion letter that the claim for breach of fiduciary against him cannot be brought directly (ECF No. 22 at 2), Plaintiff only then stated in her July 14, 2022 letter response that she may amend the Complaint to assert a derivative claim ("Even if the Court were to ultimately determine that all or part of Pierce's fiduciary duty claim should be brought derivatively, Pierce should have leave to file an amended Complaint asserting such a claim"). ECF No. 24 at 2 n. 2.

However, Plaintiff cannot simply "assert" a derivative claim because she has not complied with the pre-suit demand requirement. Under Delaware law, a shareholder seeking to bring a derivative action must make a demand on the board in order to give the board an opportunity to decide whether the demanded litigation is in the best interests of the corporation or demonstrate that demand would be futile. *United Food & Com. Workers Union & Participating Food Indus. Emp'rs Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1047 (Del. 2021). Plaintiff made

no such demand, nor has pled that she made such a demand. And while Delaware law recognizes a limited exception to the pre-suit demand requirement based on futility, it is neither applicable to Plaintiff, nor has she pled it.

In limited circumstances where a shareholder could bring a direct claim, the plaintiff shareholder must assert an injury to the rights as a shareholder. *Tooley*, 845 A.2d at 1036 ("A stockholder who is directly injured, however, does retain the right to bring an individual action for injuries affecting his or her legal rights as a stockholder").[5] The injuries that Plaintiff has pled, i.e., lost wages, reputational damages and deprivation of her options, are not injuries to her rights as a shareholder and thus do not fall within an individual fiduciary duty owed to her. By definition, lost "wages" are harm to Plaintiff's right as an employee, not a shareholder. The deprivation of options (Compl. ¶ 159) is also not an injury to shareholder's rights, because options are not shares, and option holders are not shareholders. *Fox v. CDX Holdings, Inc.*, No. 8031-VCL, 2015 WL 4571398, at *35 (Del. Ch. Jul. 28, 2015). Similarly, reputational damages are not an injury to a shareholder's right, or at least, Plaintiff has not pled as such.

**B. Plaintiff Has Not Pled Any Individual Duty Owed to Her.**

Plaintiff has not pled any individual duty owed to her under Delaware law. At most, she confusingly states that Mr. Garg, as an "Officer, Director, and Shareholder of Better," owed Plaintiff, also an "Officer and Shareholder of Better," a fiduciary duty. Compl. ¶ 155. But she does not allege any facts from which a fiduciary duty could be found.

---

[5] In limited cases where direct claims have been accepted under Delaware law, the individual injuries usually involved the diminution of the plaintiff shareholder's voting rights. *See, e.g.*, *In re MultiPlan Corp. S'holders Litig.* 268 A.3d 784, 815 (Del. Ch. 2022) (holding that stockholders had a direct claim against corporate directors who breached their fiduciary duty by approving a merger for their own interests to the detriment of shareholders and by issuing an allegedly false and misleading proxy statement that impaired the stockholders' informed exercise of their redemption and voting rights).

Having realized the dead end facing the claim for breach of fiduciary duty against Mr. Garg, Plaintiff belatedly proposed an alternative theory in her July 14 letter response, that Mr. Garg owed a fiduciary duty to her individually because she reposed "trust and confidence" on him. ECF No. 24 at 2.

Plaintiff purportedly asserts this claim (again, in her letter response, not the Complaint) as an individual tort claim arising from Plaintiff's and Mr. Garg's individual capacities, rather than their respective positions at the Company. ECF No. 24 at 1 ("Pierce properly pleads a breach of fiduciary duty as owed by Garg to her individually *and* as a shareholder") (emphases added). As such, she applies New York law, rather than Delaware law. But she then conflates her position by stating that the trust and confidence reposed upon Mr. Garg arose from her position as an executive and shareholder of Better, rather than in her individual capacity. ECF No. 24 at 2 ("as the Head of Sales, the acting COO, the #2 executive at Better (as per Garg), and a shareholder reposed trust and confidence in Garg").

This ambiguity alone is enough to warrant the dismissal of Plaintiff's claim, even assuming New York law applied, and that Plaintiff had asserted this new argument in the Complaint. Plaintiff is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), because her breach of fiduciary duty claim is premised upon claims of fraud, i.e., misrepresentations about the Company and Plaintiff. Compl. ¶ 156 ("CEO Garg breached the duties that he owed to Pierce by making knowing public misrepresentations regarding her managerial competence, the Company's financial performance, financial projections and financial controls"); *see Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11-civ-4362 PKC, 2012 WL 1890388, at *8 (S.D.N.Y. May 23, 2012) (holding that if a breach of fiduciary duty claim is premised upon fraudulent misconduct, such a claim is subject to heightened pleading under Rule 9(b)); *see also Naughright v. Weiss*, 826

F. Supp. 2d 676, 695-96 (S.D.N.Y. 2011) (holding that the breach of fiduciary duty claim based on a claim of misrepresentation was subject to the heightened pleadings standard under Rule 9(b), and dismissing the claim based on inadequate pleading).

Plaintiff's pleading as to the basis of a fiduciary duty relationship falls way short of the heightened standard. To survive a motion to dismiss under the heightened standard, the complaint must "set forth specific facts constituting the alleged relationship with sufficient particularity to enable the Court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Sheppard*, 2012 WL 1890388, at *8. Other than a conclusory statement that she reposed trust and confidence on Mr. Garg, Plaintiff has not articulated with sufficient particularity as to how her position as an executive or shareholder of Better, or by virtue of which of those two capacities, Mr. Garg owed a fiduciary duty to her.

In addition, a fiduciary relationship based on trust and confidence is not as overreaching as Plaintiff claims. Under New York law, a fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. *Daniels v. Am. Airlines*, No. 19-CV-03110 MKB, 2020 WL 9816000, at *24 (E.D.N.Y. Sept. 4, 2020). It is well-established in New York law that employers do not owe a fiduciary duty to employees merely by virtue of the employment relationship. *See id.* at *25 (dismissing breach of fiduciary duty claim finding "employer-employee relationship does not, on its own, create a fiduciary relationship") (collecting cases); *see also Angel v. Bank of Tokyo-Mitsubishi, Ltd.*, 39 A.D.3d 368, 370 (1st Dep't 2007). To the extent Plaintiff is asserting that Mr. Garg owed her a fiduciary duty individually because he was her employer and she was an executive, she has not pled the existence of a fiduciary duty under New York law.

Also, a fiduciary relationship based on "trust and confidence" is only established when such trust and confidence is "accepted." *Regions Bank v. Wieder & Mastroianni, P.C.*, 423 F. Supp. 2d 265, 270 (S.D.N.Y. 2006) ("Simply because one reposes trust or confidence in another does not give rise to a fiduciary duty; the trust must be accepted as well"). Plaintiff omits this important element in her letter response and the Complaint is devoid of any facts suggesting that there was the kind of relationship between Plaintiff and Mr. Garg that would have created a fiduciary duty.

For the foregoing reasons, the claim for breach of fiduciary duty against Mr. Garg (Second Cause of Action) must be dismissed.

## II. PLAINTIFF HAS NOT PLED A CLAIM FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY AGAINST MR. CALAMARI (FIFTH CAUSE OF ACTION).

The Court must also dismiss the claim for aiding and abetting breach of fiduciary duty against Mr. Calamari because Plaintiff has not pled the underlying breach. Without an underlying breach, a claim for aiding and abetting breach of fiduciary duty cannot stand. *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 215 (Del. Ch. 2006); *Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 389 (S.D.N.Y. 2016).

Even if Plaintiff had adequately pled the underlying breach (and she has not), she still has not pled the elements of an aiding and abetting claim. Under both New York and Delaware law, a claim for aiding and abetting a breach of fiduciary duty requires the plaintiff to allege that a fiduciary duty was owed and breached, and that the defendant knowingly induced or participated in the breach.[6] *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 612-13

---

[6] While the underlying breach of fiduciary duty claim is governed by Delaware law, New York courts look at which state has "the most significant relationship" with the issue raised in the litigation." *In re ICP Strategic Income Fund, Ltd.*, 730 F. App'x 78, 81 (2d Cir. 2018). Regardless

(S.D.N.Y. 2011). These allegations must be pled with particularity, as Plaintiff's claim for the underlying breach of fiduciary duty sounds in fraud. *See id.*

The second prong of this test – "knowing" inducement or participation – is a significant one and a high bar to meet. New York law requires *actual* knowledge that the other's conducts constitute a breach of fiduciary duty. *See, e.g., Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 245-47 (S.D.N.Y. 1996) (emphasis added). Similarly, Delaware defines "knowing participation" as an "act with the knowledge that the conduct advocated or assisted constitutes such a breach." *See Marino*, 810 F. Supp. 2d at 613. Also, there must be actual knowledge of the underlying harm and substantial assistance to the breach that resulted in a harm. *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 544 (S.D.N.Y. 2009).

Plaintiff's pleadings fall far short of these standards. Plaintiff asserts seven specific acts of aiding and abetting by Mr. Calamari. Compl. ¶ 177. These conclusory allegations, which are generally not supported by the earlier factual recitation in the Complaint [7] simply fail to demonstrate that Mr. Calamari had actual knowledge he was participating in a breach of fiduciary duty. For example, Plaintiff claims that Mr. Calamari: (i) orchestrated and executed her leave and removal from the Company's IT system (Compl. ¶ 177.d.), (ii) supported and repeated a false narrative that Plaintiff resigned (Compl. ¶ 177.e.), (iii) erroneously advised the Board that the Company's poor financial performance was attributable to Plaintiff (Compl. ¶ 177.f.), and (iv) supported Mr. Garg's intention to get her out of the Company (Compl. ¶ 177.g). According to Plaintiff, these were all acts in support of Mr. Garg's retaliation against her. Compl. ¶ 178.

---

of whether New York or Delaware law is applied, Plaintiff here failed to allege facts sufficient to maintain a claim under either state's law.

[7] The allegations stated in Compl. ¶ 177.a., c., and d. are mere reiterations of the earlier factual recitations in ¶¶ 97, 39 and 12, respectively. Other allegations (Compl. ¶ 177.b., e., f., and g.) are not even covered in the earlier factual recitations.

Even accepting these alleged acts as true, Plaintiff has not alleged any facts supporting Mr. Calamari's actual knowledge of a breach of a fiduciary duty or the underlying harm. Putting aside the issue of whether Plaintiff resigned or was fired, even assuming Mr. Calamari took these acts, there is no allegation from which an inference could be drawn that he was aware of any falsity or was aware they were being done in violation of an obligation owed to an at-will employee and thus no knowledge of any harm. It is well settled in New York that no fiduciary duty is owed by an employer to an at-will employee. *See Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon*, 172 A.D.2d 254, 254 (1st Dep't 1991) (dismissing a breach of fiduciary duty claim brought by an at-will associate of a law firm based on termination of employment).

Moreover, Plaintiff essentially alleges that Mr. Calamari was involved in follow-up activities related to the decision to terminate her employment. But none of those activities "enabled [Garg's] alleged breach to occur." *See Marino*, 810 F. Supp. 2d at 614 (holding that the allegations of aiding and abetting were insufficient because there was no allegation that the actions enabled the underlying breach to occur). Thus, in addition to failing to satisfy the knowledge element, Plaintiff fails to allege he provided substantial assistance.

For these reasons, the claim for aiding and abetting breach of fiduciary duty against Mr. Calamari (Fifth Cause of Action) must be dismissed.

## III. PLAINTIFF HAS NOT PLED A DEFAMATION CLAIM AGAINST MR. GARG (THIRD CAUSE OF ACTION).

The Court should dismiss the defamation claim against Mr. Garg because Plaintiff has not pled that the statements were defamatory, and even if they were defamatory, they were protected by qualified privilege. Plaintiff has not pled facts to overcome that privilege.

### A. Plaintiff Has Not Asserted That Mr. Garg's Statements Were Defamatory.

To state a defamation claim under New York law, a plaintiff must allege: (i) a false statement of fact, (ii) about the plaintiff, (iii) published to a third party without authorization or privilege, (iv) through fault amounting to at least negligence, and (v) causing defamation per se or a special harm. *Renxiong Huang v. Minghui.org*, No. 17-civ-5582 ER, 2019 WL 2525416 at *3 (S.D.N.Y. Jun. 18, 2019).

For each allegedly defamatory statement, Plaintiff has not asserted either the first or fourth element of the above test (falsity of the statement and the defendant's fault). Mr. Garg's statements in the December 8, 2021 email to senior management of Better, which Plaintiff presents as critical evidence of Mr. Garg's retaliation against her throughout the Complaint, simply do not support a claim.[8] *See, e.g.*, Compl. ¶¶ 87-89, 162. In that email, Mr. Garg stated that he agreed with the Board to find a "COO," and that the Company needed a new set of metrics as the current metrics are a "black box." Compl. ¶¶ 87-89. Plaintiff claims that Mr. Garg knew these statements were false, because Mr. Garg knew she was competent as the "functional equivalent" of COO and she has reported the Company's metrics to Mr. Garg on a regular basis. Compl. ¶¶ 162-63.

But even on the face of the Complaint, nothing in Mr. Garg's statements is false. Better did not have a COO position at that time. For that reason, Plaintiff has referred to herself as the "functional equivalent of Chief Operating Officer" throughout the Complaint. *See, e.g.*, Compl. ¶¶ 2, 30. Mr. Garg and the Board feeling that the Company needed a COO and the Company's metrics are a "black box" are simply not false statements. They can feel that way even if Plaintiff had reported the Company's metrics on a regular basis.

---

[8] This email may be found as Exhibit A to the Company's motion.

Other claims of defamatory statements fail because Plaintiff has not asserted any facts supporting Mr. Garg's fault, i.e., that Mr. Garg knew of the falsity of the statements or was at least negligent in not knowing it. Plaintiff asserts that Mr. Garg further defamed her by stating to Better's Board and/or executives that she was the leader of a "a coup, that attempted to get rid of CEO Garg," that she had "resigned" and "abandoned" the Company and sought to "extort" money from the Company, and that her title should have been the "Cheerleader in Chief." Compl. ¶ 165. She also claims that Mr. Garg knowingly made a false statement that she has been "fudging the numbers" related to the Company's labor costs. Compl. ¶ 168.

In the Complaint, Plaintiff simply asserts that these statements *were* false, but is silent on whether Mr. Garg *knew them to be false*. For example, she claims that Mr. Garg's statements were false because she did not intend to overthrow Mr. Garg or extort unentitled compensation from the Company, but she has not asserted whether Mr. Garg *knew* or even should have known of her intentions. *See* Compl. ¶ 166 (emphasis added). Similarly, she has not asserted Mr. Garg's knowledge of the falsity of his statement that her title should have been (as opposed to *was* or *is*) the "Cheerleader in Chief," if this statement is at all a statement of fact and not opinion. Likewise, other than conclusory asserting that she had reported the correct labor costs to Mr. Garg, she has not asserted why Mr. Garg was wrong to believe her reports were incorrect, which led him to say she had been "fudging the numbers."

## B. Even If Plaintiff Has Successfully Pled That Mr. Garg's Statements Were Defamatory, She Has Not Asserted Facts to Overcome the Qualified Privilege That Protect Mr. Garg's Statements.

Under New York law, qualified privilege protects defamatory communications made by one person to another upon a subject in which both have an interest. *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009). In the employment context, it is a well-established principle that qualified privilege protects statements made by an employer/supervisor to management and

coworkers in connection with an employee's performance, unless the defendants were motived by "actual malice." *Kasachkoff v. City of New York*, 485 N.Y.S.2d 992, 995-96 (1st Dep't 1985) (finding that the plaintiff did not meet her burden of showing actual malice). "Actual malice" refers to publication of false material with knowledge of its falsity, or a high degree of its falsity. *Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp. 2d 103, 117 (E.D.N.Y. 2001). Mere surmise, conjecture, suspicion, conclusions, expressions of hope or unsubstantiated allegations or assertions are not enough to prove actual malice. *See Kasachkoff*, 485 N.Y.S.2d at 996.

Under New York law, defendants can succeed on a qualified privilege defense at the motion to dismiss stage. *See Orenstein*, 677 F. Supp. 2d at 710-11; *see also Langenkamp v. Olson*, 628 F. App'x 50, 53 (2nd Cir. 2015) (affirming the district court's grant of motion to dismiss the defamations claims due to the lack of pleading of malice to overcome qualified privilege). The key question is whether the plaintiff has adequately pled actual malice of the defendant. *See Langenkamp v. New York Univ.*, No. 10-civ-8883 AKH, 2012 WL 12540277, at *3 (S.D.N.Y. Mar. 15, 2012); *see also Orenstein*, 677 F. Supp. 2d at 711.

Here, qualified privilege protects Mr. Garg's statements. On the face of the Complaint, Mr. Garg made the statements to the Company's Board members and executives. Compl. ¶ 162 (asserting that Mr. Garg's email about finding a COO and the Company's metrics being a "black box" was distributed to "some of the Company's senior managers and, some of its Board Members"); Compl. ¶ 165 (asserting that Mr. Garg's comments about Plaintiff's recent behaviors were distributed to "other executives in the Company"); Compl. ¶ 168 (asserting that Mr. Garg stated to "Better's senior leadership" and "Board of Directors" that Plaintiff was "fudging the numbers"). The statements – if at all true – were concerning Plaintiff's performance, which the Board members and executives had a common interest in.

That said, the burden is on Plaintiff to plead Mr. Garg's actual malice – i.e., that Mr. Garg knew his statements were false – to overcome the qualified privilege. *See Dunson*, 171 F. Supp. 2d at 117. As explained above, Plaintiff has failed to assert that Mr. Garg knew his statements to be false. Therefore, Plaintiff has not asserted actual malice.

For these reasons, the claim for defamation against Mr. Garg (Third Cause of Action) must be dismissed.

## IV. PLAINTIFF HAS NOT PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (FOURTH CAUSE OF ACTION).

The Court should dismiss Plaintiff's claim for intentional infliction of emotional distress against Mr. Garg and Mr. Calamari because the facts alleged in her Complaint, even if true, would not reach the extremely high threshold behavior required to state a claim for relief.

To state a claim for intentional infliction of emotional distress under New York law, the plaintiff must show: (i) extreme and outrageous conduct, (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (iii) a causal relationship between the conduct and injury, and (iv) severe emotional distress. *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, No. 00-civ-5433 GBD, 2001 WL 180055, at *1 (S.D.N.Y. Feb. 22, 2001). This standard is very rigorous and difficult to satisfy. *Id.*

"It is particularly difficult to withstand a motion to dismiss claims for intentional infliction of emotional distress in the employment law context," such as the case here. *Id.* at *2. New York courts have noted that a "plaintiff cannot avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." *Id.* Thus, "[a]s a result, New York courts routinely dismiss claims for intentional infliction of emotional distress in the employment context, except where such claims were accompanied by allegations of sex discrimination and, more significantly, or battery." *Id.*

Applying these well-established principles, the retaliatory actions alleged by Plaintiff cannot meet the threshold level for a claim of intentional infliction of emotional distress under New York law. Plaintiff asserts that Mr. Garg and Mr. Calamari intentionally inflicted emotional distress on her by: (i) scapegoating her for the Company's financial and reputational damages, (ii) abruptly putting her on an administrative leave, (iii) characterizing her transition proposal as a resignation, and (iv) later terminating her employment. Compl. ¶¶ 150, 173.

These acts, even if true, fall far short of the strict standard adopted by the New York courts, which have routinely dismissed claims for intentional infliction of emotional distress in an employment context based on harassment, threats, disrespectful or disparate treatment, hostile environment, discriminatory comments, poor performance reviews, insults and slurs, being humiliated in front of coworkers, or being terminated. *Lydeatte,* 2001 WL 180055 at *2 (holding that the employer's racial discrimination and retaliation fall far short of the strict standard for an intentional infliction of emotional distress claim); *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667, 681-82 (S.D.N.Y. 1995) (holding that "[b]ased upon the evidence presented, the Court does not find that defendant's conduct towards plaintiff, even if unlawful, was 'utterly intolerable in a civilized community'"); *Riscili v. Gibson Guitar Corp.*, No. 06-civ--7596 RJH, 2007 WL 2005555, at *5 (S.D.N.Y. Jul. 10, 2007) (holding "these allegations do not amount to 'extreme and outrageous conduct' sufficient to meet the strict standard established under New York law"); *Clayton v. Best Buy Co., Inc.,* 851 N.Y.S.2d 485, 487 (1st Dep't 2008) (holding that allegations of sexual and inappropriate remarks did not support a claim of intentional infliction of emotional distress); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 336-37 (S.D.N.Y. 2010) (holding that allegations that "plaintiff was humiliated in front of her co-workers" did not meet the standard for intentional infliction of emotional distress, and that a discrimination dispute cannot

be transformed into a claim for intentional infliction of emotional distress unless the conducts at issue were "atrocious," "outrageous" or "utterly intolerable"); *Realmuto v. Yellow Freight Sys., Inc.*, 712 F. Supp. 287, 289 (E.D.N.Y. 1989) (holding that termination of the plaintiff's employment based on the defendant's discriminatory intent does not establish a claim for intentional infliction of emotional distress).

Therefore, the claim for intentional infliction of emotional distress against Mr. Garg and Mr. Calamari (Fourth Cause of Action) must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants Vishal Garg and Nicholas Calamari respectfully request that the Court dismiss Plaintiff's Complaint in its entirety as against them with prejudice.


Dated: New York, New York
      September 16, 2022

 

Respectfully submitted,

KOBRE & KIM LLP

/s/ Steven W. Perlstein
Steven G. Kobre
Steven W. Perlstein
Michael Bahn
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.Kobre@kobrekim.com
Steven.Perlstein@kobrekim.com
Michael.Bahn@kobrekim.com


*Attorneys for Defendants Vishal Garg and Nicholas Calamari.*