| | |
|---|---|
| SARAH J. PIERCE<br><br>                Plaintiff,<br><br>    v.<br><br>BETTER HOLDCO, INC., VISHAL<br>GARG, and NICHOLAS CALAMARI,<br><br><br>                Defendants. | Case No. 1:22-cv-04748-AT |

**MEMORANDUM OF LAW IN SUPPORT OF VISHAL GARG'S AND NICHOLAS CALAMARI'S MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT AND JURY DEMAND**

Steven G. Kobre
Steven W. Perlstein
Michael Bahn

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.kobre@kobrekim.com
Steven.perlstein@kobrekim.com
Michael.bahn@kobrekim.com

*Attorneys for Defendants Vishal Garg and Nicholas Calamari.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

PROCEDURAL HISTORY ......................................................................................................... 4

STATEMENT OF FACTS ........................................................................................................... 5

ARGUMENT ............................................................................................................................... 7

I.  PLAINTIFF HAS NOT PLED A DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST INDIVIDUAL DEFENDANTS. ..................................................... 7

  A.  The Derivative Claim Fails Because Plaintiff Has Not Pled Demand Futility on a Director-By-Director Basis ................................................................................................. 8

  B.  Even If a Board-Wide Pleading Were Permissible, Plaintiff Still Has Not Alleged Facts to Show Demand Futility Under a Heightened Pleading Standard. ........................................ 9

  C.  Plaintiff Has Not Asserted Any Facts Related to Mr. Calamari That Support His Principal Liability for Breach of Fiduciary Duty. .................................................................. 11

II.  PLAINTIFF HAS NOT PLED A DEFAMATION CLAIM AGAINST MR. GARG. .. 12

  A.  Plaintiff Has Not Pled That the Black Box Statements Were False or Defamatory. ..... 13

  B.  Plaintiff Has Not Pled That the Other Statements Were False or Defamatory. ............. 14

  C.  Even If Plaintiff Has Successfully Pled That Mr. Garg's Statements Were Defamatory, She Has Not Asserted Facts to Overcome the Qualified Privilege That Protects Those Statements ................................................................................................................. 15

III.  PLAINTIFF HAS NOT PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST INDIVIDUAL DEFENDANTS. ....................................... 16

IV.  PLAINTIFF HAS NOT PLED A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT AGAINST INDIVIDUAL DEFENDANTS. ........................................................... 19

  A.  The Claim Fails Because Plaintiff's Employment Contract with Better Was Terminable at Will and Therefore Cannot Be Tortiously Interfered With. .............................................. 19

  B.  The Claim Further Fails Because Individual Defendants Were Not Third Parties to Plaintiff's Employment Contract with Better ....................................................................... 20

  C.  The Claim Further Fails as Against Mr. Garg Because It is Duplicative of the Defamation Claim Against Him. .............................................................................................. 23

V.  TO THE EXTENT THAT A VIOLATION OF SOX IS ALSO ALLEGED AGAINST MR. GARG, PLAINTIFF HAS FAILED TO PLEAD THAT CLAIM. ....................................... 24

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allred v. Walker*,
  18-cv-10641 (LJL), 19-cv-10876 (LJL), 2021 WL 5847405 (S.D.N.Y. Dec. 9, 2021) ........... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 7

*Balderman v. Am. Broad. Cos.*,
  292 A.D.2d 67 (4th Dep't 2002) ...................................................................... 23

*Bechtel v. Admin. Review Bd.*,
  710 F.3d 443 (2d Cir. 2013) ............................................................................ 25

*Benjamin v. Kim*,
  No. 95-CIV-9597 LMM, 1999 WL 24706 (S.D.N.Y. Apr. 28, 1999) ....................... 8

*Brautigam v. Rubin*,
  55 F. Supp. 3d 499 (2014) ........................................................................... 8, 9

*Clayton v. Best Buy Co.*,
  851 N.Y.S.2d 485 (1st Dep't 2008) ................................................................. 18

*Colodney v. Continuum Health Partners, Inc.*,
  No. 03 Ci. 7276 (DLC), 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004) .................... 11

*Cortec Indus., Inc. v. Sum Holdings L.P.*,
  949 F.2d 42 (2d Cir. 1991) .......................................................................... 6, 20

*DeBlasio v. Merril Lynch*,
  No. 07-Civ-318 (RJS), 2009 WL 2242605 (S.D.N.Y. Jul. 27, 2009) ..................... 10

*Discover Grp, Inc. v. Lexmark Intern., Inc.*,
  333 F. Supp. 2d 78 (E.D.N.Y. Sep. 2, 2004) .................................................... 19

*Dunson v. Tri-Maint. & Contractors, Inc.*,
  171 F. Supp. 2d 103 (E.D.N.Y. Nov. 1, 2001) ................................................. 15

*Finley v. Giacobbe*,
  79 F.3d 1285 (E.D.N.Y. Jan. 5, 1996) ................................................ 19, 20, 21

*Fisk v. Letterman*,
   401 F. Supp. 2d 362 (S.D.N.Y. Nov. 17, 2005) .................................................. 11

*Fraser v. Fiduciary Tr. Co. Int'l*,
   No. 04-CV-6958 (PAC), 2009 WL 2601389 (S.D.N.Y. Aug. 25, 2009) ............................... 24

*Ganske v. Mensch*,
   480 F. Supp. 3d 542 (S.D.N.Y. Aug. 20, 2020) .................................................. 23

*In re Kraft Heinz Co. Deriv. Litig.*,
   No. 2019-0587-LWW, 2021 WL 6012632 (Del. Ch. 2021) ............................................. 9

*In re Michael Stapleton Assoc. Ltd.*,
   No. 17-CV-5468, 2018 WL 3962931 (S.D.N.Y. Aug. 17, 2018) ................................... 7, 15

*Kasachkoff v. City of New York*,
   485 N.Y.S.2d 992 (1st Dep't 1996).......................................................... 15, 16

*Langenkamp v. New York Univ.*,
   10 Civ. 8883 (AKH) 2012 WL 12540277 (S.D.N.Y. Mar. 15, 2012).................................. 16

*Langenkamp v. Olson*,
   628 Fed. Appx. 50 (2d Cir. 2015)............................................................ 16

*La Luna Enters., Inc. v. CBS Corp.*,
   74 F. Supp. 2d 384 (S.D.N.Y. Oct. 20, 1999) ................................................. 23

*Lawson v. FMR LLC*,
   571 U.S. 429 (2014) ........................................................................ 24

*Lydeatte v. Bronx Overall Econ. Dev. Corp.*,
   No. 00CIV5433 (GBD) 2001 WL 180055 (S.D.N.Y. Feb. 22, 2001)......................... 16, 17, 18

*Marino v. Vunk*,
   39 A.D.3d 339 (1st Dep't 2007) .......................................................... 21, 22

*Miller v. Richman*,
   184 A.D.2d 191 (4th Dep't 1992) ............................................................ 20

*Morrison v. Nat'l Broad. Co.*,
   19 N.Y.2d 453 (N.Y. Ct. App. 1967) ......................................................... 23

*Okoi v. El Al Israel Airlines*,
   378 F.App'x.9 (2d Cir. 2010) ............................................................... 20

*Orenstein v. Figel*,
677 F. Supp. 2d 706 (S.D.N.Y. Dec. 30, 2009) .................................................. 15, 16

*Realmuto v. Yellow Freight Sys., Inc.*,
712 F. Supp. 287 (E.D.N.Y. Apr. 24, 1989) ............................................................ 18

*Renxiong Huang v. Minghui.org*,
17 Civ. 5582 (ER), 2019 WL 2525416 (S.D.N.Y. Jun. 18, 2019) ........................... 13

*Thai v. Cayre Grp., Ltd.*,
726 F. Supp. 2d 323 (S.D.N.Y. Jul. 8, 2010) .......................................................... 18

*United Food & Com. Workers Union v. Zuckerberg*,
262 A.3d 1034 (Del. 2021) .................................................................................... 8, 9

**Statutes**

18 U.S.C. §1514 ............................................................................................................ 22

**Rules**

Fed. R. Civ. P. 23.1 ...................................................................................................... 10

Defendants Vishal Garg and Nicholas Calamari ("Individual Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff Sarah J. Pierce's ("Plaintiff") Consolidated Amended Complaint and Jury Demand (ECF No. 52) ("Consolidated Complaint" or "Cons. Compl.").

## PRELIMINARY STATEMENT

This lawsuit arises from the departure of Plaintiff, a disgruntled employee, who after making millions of dollars, decided to leave Defendant Better Holdco, Inc. ("Better" or the "Company") after she no longer liked her role. She now wants to paint a picture about her exit as something nefarious in an effort to siphon more assets away from the Company when her exit negotiation did not go the way she hoped. This narrative and the claims against Mr. Garg, the founder and CEO of Better, and Mr. Calamari, its former General Counsel and current Chief Administrative Officer, are untrue. But even as alleged, the Consolidated Complaint fails to state a claim as a matter of law and should be dismissed.

In the Original Complaint and Jury Demand ("Original Complaint" or "Compl.") (ECF No. 1), Plaintiff had asserted four claims against Individual Defendants: (i) direct claim for breach of fiduciary duty against Mr. Garg (Compl. ¶¶ 154-60), (ii) against Mr. Calamari for aiding and abetting Mr. Garg's breach (*Id*. ¶¶ 176-79), (iii) defamation claim against Mr. Garg (*Id*. ¶¶ 161-71), and (iv) claim for intentional infliction of emotional distress against Individual Defendants (*Id*. ¶¶ 172-75). Individual Defendants moved to dismiss, detailing the deficiencies in these claims that warrant their dismissal ("Original Motion to Dismiss" or "MTD.") (ECF No. 34, 35).

Having realized that her original claims would not survive a motion to dismiss, Plaintiff rewrote her claims in the Consolidated Complaint, effectively making it a completely new complaint. Specifically, Plaintiff: (i) withdrew the direct claim for breach of fiduciary duty against

Mr. Garg and replaced it with a derivative claim as against both Mr. Garg and Mr. Calamari (Cons. Compl. ¶¶ 202-15), (ii) withdrew the aiding and abetting claim against Mr. Calamari and added him under the derivative claim (*Id*.), (iii) rephrased the defamation and intentional infliction of emotional distress claims, but not in any legally significant way (*Id*. ¶¶ 216-26, 234-45), and (iv) brought an additional tortious interference with a contract claim against Individual Defendants "in the alternative," but without specifying in the alternative to which claim or claims (*Id*. ¶¶ 246-55). Plaintiff also alleges a violation of Sarbanes-Oxley Act ("SOX") in her second cause of action, but does not state who it is against. In the wherefore clause, after paragraph 195 of the Consolidated Complaint, Plaintiff requests a judgement against Mr. Garg and Better. Moreover, while Plaintiff added Mr. Calamari to several claims, he is largely an afterthought in the alleged facts of the Consolidated Complaint. Plaintiff primarily alleges in a conclusory manner that Mr. Calamari assisted Mr. Garg, but provides no factual support for that. And the few times Mr. Calamari is mentioned, he is not alleged to have taken any action or inaction that would allow a claim to survive against him.

The dramatic changes in the Consolidated Complaint represent Plaintiff's near complete acceptance of Individual Defendants' Original Motion to Dismiss, and attest to the baseless nature of her claims against them. But instead of withdrawing her claims, which she should have done, Plaintiff has now made the pleading a moving target, throwing everything at the wall to see if anything sticks. Notwithstanding her desperate attempts to salvage the failing claims, the Consolidated Complaint does no better than the Original Complaint, and must be dismissed in its entirety.

First, the derivative claim for breach of fiduciary duty against Individual Defendants fails because Plaintiff has not pled demand futility on a director-by-director basis, as required under

Delaware law. Stuck with the fact that she has not made a pre-suit demand, Plaintiff now asserts that the demand would have been futile because the Company's board of directors ("Board") knowingly condoned or joined Mr. Garg's wrongdoings. Cons. Compl. ¶¶ 212-14. In support of this position, Plaintiff asserts how the Board in one unit aided or condoned Individual Defendants' wrongdoings. *Id.* ¶¶ 207-13. Plaintiff's failure to plead demand futility for each director alone is sufficient to warrant dismissal of the derivative claim. Even if the Board-wide pleading were permissible (it is not), the derivative claim still fails because Plaintiff has not alleged any facts related to her demand futility arguments that satisfy the heightened pleading standard for demand futility. Furthermore, Plaintiff has added Mr. Calamari under the derivative claim in lieu of the original aiding and abetting claim against him, but without any factual basis for Mr. Calamari's principal liability. Therefore, the derivative claim as against both Individual Defendants fails.

Second, the amended defamation claim against Mr. Garg fails because it still attacks statements without alleging a factual predicate for the inference that they are false. Simply adding a conclusory allegation that the statements were false or that Mr. Garg was aware of their falsity is insufficient to plead the elements of a defamation claim. The defamation claim also fails because Plaintiff has not pled actual malice to overcome the qualified privilege that protects Mr. Garg's statements, even if they were defamatory.

Third, the claim for intentional infliction of emotional distress fails because the amended pleading is essentially a rephrased version of the deficient original pleading. Even as amended, the pleading falls far short of the extremely high standard in New York for sustaining a claim for intentional infliction of emotional distress, especially in the employment context where these claims are routinely dismissed.

Lastly, the new claim for tortious interference with Plaintiff's alleged employment contract with Better fails for several reasons. First, the alleged employment contract was terminable at will which bars any tortious interference. Second, a tortious interference claim can only be asserted against third parties, but Individual Defendants are co-employees and therefore are not third parties to Plaintiff's alleged employment contract with Better. Third, Plaintiff has failed to plead that Individual Defendants acted outside the scope of their authority, which is necessary to establish that Individual Defendants should be considered third parties despite their co-employee status.

For these reasons, the Consolidated Complaint must be dismissed in its entirety with prejudice.

## **PROCEDURAL HISTORY**

On June 7, 2022, Plaintiff filed the Original Complaint (ECF No. 1) alleging a direct claim for breach of fiduciary duty against Mr. Garg, a claim against Mr. Calamari for aiding and abetting Mr. Garg's breach, a defamation claim against Mr. Garg, and an intentional infliction of emotional distress against both Mr. Garg and Mr. Calamari. On September 16, 2022, Individual Defendants moved to dismiss all of the counts against them (Original Motion to Dismiss) (ECF No. 34, 35). On November 1, 2022, Plaintiff opposed the Original Motion to Dismiss and moved for leave of the Court to amend the Original Complaint ("Opposition") (ECF No. 44, 45). In those papers, Plaintiff withdrew the direct claim for breach of fiduciary duty against Mr. Garg and replaced it with a derivative claim. ECF No. 44 at 25-27. She also withdrew the aiding and abetting claim against Mr. Calamari. *Id*.

In the Opposition, Plaintiff stated that she would file yet another amended complaint. *Id*. at 2. Therefore, Parties agreed, and this Court approved, that the Original Motion to Dismiss and the Opposition shall be deemed withdrawn, and that Plaintiff would file a final complaint

consolidating all her known claims. ECF No. 49 at 2. Accordingly, on December 8, 2022, Plaintiff filed the Consolidated Complaint (ECF No. 52). Individual Defendants respectfully move this Court to dismiss the Consolidated Complaint in its entirety as against them.

## STATEMENT OF FACTS[1]

Better is an online platform for mortgage origination and related services. Cons. Compl. ¶ 27. It was founded in 2014. *Id*. ¶ 32. Plaintiff joined Better in or about August 2016 as a salesperson. *Id*. ¶ 33.

Plaintiff quickly climbed the corporate ladder. In less than six years, she received four promotions, ultimately rising to the position of Head of Sales, Operations and Customer Experience. *Id*. ¶¶ 33-34. In that role, she oversaw a team of approximately 9,000 employees across the Company's mortgage, insurance, and real estate business lines. *Id*. She also received merit-based salary increases, annual bonus, stock option and equity grant awards. *Id*. ¶ 35.

In May 2021, Better announced its plan to go public via a Special Purpose Acquisition Company transaction ("SPAC Transaction"). *Id*. ¶ 37. The SPAC Transaction was expected to close in the fourth quarter of 2021 but was delayed due to the evolving market conditions. *Id*. ¶ 38. In December 2021, the Company terminated 900 employees as part of its reduction in force ("RIF") plan. *Id*. ¶¶ 45-54. The purpose of the RIF was to save costs. *Id*. ¶ 48. Mr. Garg announced the RIF to the affected employees via a Zoom call on December 1, 2021. *Id*. ¶ 54. The call was recorded and posted online. *Id*. ¶ 55.

As CEO, Mr. Garg took steps to handle the situation surrounding the SPAC Transaction and the RIF. On December 8, 2021, he met with Better's Board to report the situation and discuss

---

[1] Individual Defendants adopt the more detailed recitation of facts in the Company's memorandum in support of its motion to dismiss the claims against the Company, and focus here on the facts pertinent to the claims against them.

strategies.  *Id.* ¶ 85.  Later that day, he memorialized the Board's decisions in an email to be sent out to the Company's senior leadership.  *Id.*[2]  According to that email, they decided to hire a "COO and President," a position that did not exist at that time.  *Id.* ¶¶ 34, 86 (Plaintiff calling herself the "functional equivalent" of a COO.  The email also said that the Board feels the metrics of the company are a "black box" and need to be managed more carefully.  *Id.* ¶ 87.

On December 17, 2021, Plaintiff e-mailed her "transition proposal"[3] to Kevin Ryan, the CFO of Better.  *Id.* ¶ 118.  As the term "transition proposal" indicates, Plaintiff's email started out by stating that she wanted to "begin transitioning out of my role and Better."  Ex. B.  It went on to state that her "replacement" would: "take over all responsibilities including: overseeing all businesses (mortgage, insurance, real estate), strategy and planning, exec team organization, all headcount under my remit (8,235)."  *Id.*  She also notes: "I would assist in business continuity including transition of licenses in states where I am currently the Qualifying Individual."  *Id.*  The email further states: "I will be paid a consulting or similar fee **as a non-employee, independent contractor** at a fixed per annum fee of $2 Million with one year to be guaranteed (i.e., to be paid monthly subject to lump sum payment for unpaid amount if arrangement is terminated sooner than 1 year)" (emphasis added).  *Id.*  Plaintiff also notes she would "not affirmatively take action against the company with the information" in her possession and she would use it to be an advocate of the company and not an "adversary."  *Id.*; Cons. Compl. ¶ 119.

Paula Tuffin, another General Counsel of the Company, sought to talk to Plaintiff about the said "information" she allegedly had about the Company.  Cons. Compl. ¶ 123.  Plaintiff

---

[2] This document is attached to the Company's motion to dismiss the Consolidated Complaint as against them at Exhibit A.  A court can consider documents that are either attached to the complaint or incorporated into it by reference in a motion to dismiss.  *Cortec Indus., Inc. v. Sum Holdings L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991)

[3] This document is attached to Company's motion to dismiss at Exhibit B.

initially declined, but later agreed to talk to General Counsel Tuffin, after she was put on an administrative leave in January 2022. *Id*. ¶¶ 123, 151. Furthermore, Plaintiff notes in the Complaint that her original draft of the above email stated that the proposal was "not a resignation," Compl. ¶ 120, but Plaintiff later decided to take that phrase out, not because it was untrue, but because she thought it was "unnecessary given her explicit conversation with CFO Ryan and her history of commitment to the Company." *Id*.

On January 6, 2022, Plaintiff was put on an administrative leave. Cons. Compl. ¶ 145. Subsequently, on February 4, 2022, Plaintiff left the Company. *Id*. ¶ 154.d. At the time of her resignation, her base salary was $1 million, with a bonus of another $1 million and an equity grant of approximately 2 million company shares. *Id*. ¶ 35.

## ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *In re Michael Stapleton Assocs. Ltd.*, No. 17-CV-5468 AJN, 2018 WL 3962931, at *2 (S.D.N.Y. Aug. 17, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Mere "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Pleadings containing no more than mere conclusory statements are not entitled to the assumption of truth otherwise applicable in a motion to dismiss. *Id*.

## I. PLAINTIFF HAS NOT PLED A DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST INDIVIDUAL DEFENDANTS.

Plaintiff had originally brought a direct claim against Mr. Garg for breach of fiduciary duty. After reviewing the Original Motion to Dismiss, Plaintiff realized that she does not have a direct claim against Mr. Garg. As such, she now tries to recast it as a derivative claim (and this time, against both Mr. Garg and Mr. Calamari). A derivative claim can be brought only after a pre-suit

demand has been made to the board or a demonstration that such demand is futile. Stuck with the fact that she has not made any such demand, Plaintiff asserts that a demand would have been futile. But Plaintiff asserts no facts that would come close to supporting that inference. Therefore, the derivative claim fails just like the direct one.

### A. The Derivative Claim Fails Because Plaintiff Has Not Pled Demand Futility on a Director-By-Director Basis.

Under New York's choice of law rules, the law of the state of incorporation governs a claim for breach of fiduciary duty owed to a corporation and its shareholders. *Benjamin v. Kim*, No. 95-civ-9597 LMM, 1999 WL 249706, at \*13 (S.D.N.Y. Apr. 28, 1999); MTD. At 7. This also applies to the issue of whether demand is excused in a derivative claim. *Brautigam v. Rubin*, 55 F.Supp.3d 499, 505 (S.D.N.Y. Sep. 24, 2014). Better is a company incorporated in Delaware. Cons. Compl. ¶ 27. Therefore, Delaware law applies to Plaintiff's derivative claim.

Under Delaware law, a shareholder seeking to bring a derivative action must make a demand on the board, or demonstrate that demand would be futile. *United Food & Com. Wokers Union v. Zuckerberg*, 262 A.3d 1034, 1047 (Del. 2021).

A plaintiff claiming demand futility must plead facts establishing that at least half of the members of the demand board: (i) received material personal benefit from the alleged misconduct that is the subject of the litigation demand, (ii) faced a substantial likelihood of liability on any of the claims that would be subject of the litigation demand, or (iii) lacked independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand. *Id*. at 1058-59.

Importantly, courts ask whether each of the three factors apply for <u>each</u> director. *Id.* at 1059 ("Accordingly, from this point forward, courts should ask the following three questions on a

director-by-director basis when evaluating allegations of demand futility") (emphases added). The court counts heads of the members of a demand board to determine whether a majority of its members are disinterested and independent for demand futility purposes. *In re Kraft Heinz Co. Deriv. Litig*, No. 2019-0587-LWW, 2021 WL 6012632 at *5 (Del. Ch. 2021). Thus, post-*Zuckerberg* courts have consistently analyzed, for each director, whether any of *Zuckerberg's* three factors was applicable. *See, e.g.*, *Zuckerberg*, 262 A.3d at 1059-64; *see also In re Kraft Heinz*, 2021 WL 6012632 at *8-13.

Contrary to these well-established principles, Plaintiff comes forward with mere Board-wide allegations that Better's Board was not disinterested and therefore a demand would have been futile. In the Consolidated Complaint, Plaintiff purports to allege how the Board as one unit either aided or condoned Mr. Garg's wrongdoings. *See* Cons. Compl. ¶ 207 ("Similarly, the Board participated in, *inter alia*, CEO Garg's scheme to mislead investors"); *Id*. ¶ 208 ("The Board also allowed itself to be part of the scheme…"); *Id*. ¶ 209 ("The Board abjectly shirked its duty…"); *Id*. ¶ 211 ("The Board, in condoning and joining, the actions of CEO Garg and General Counsel Calamari…"); *Id*. ¶ 212 ("The Board which acted as one,…"); *Id*. ¶ 213 ("Given the Board's close relationship with CEO Garg,…") (emphases added). Plaintiff has not pled any facts for each director – as required under *Zuckerberg* and its progenies – supporting an inference that a demand would have been futile. For this reason alone, the derivative claim should fail.

### B. Even If a Board-Wide Pleading Were Permissible, Plaintiff Still Has Not Alleged Facts to Show Demand Futility Under a Heightened Pleading Standard.

Even if Plaintiff's Board-wide allegation were permissible, the derivative claim still fails because Plaintiff has not particularized facts that would satisfy the heightened pleading standard for demand futility. New York federal courts have applied the heighted pleading standard for demand futility under Fed. R. Civ. P. 23.1. *See, e.g.*, *Brautigam*, 55 F. Supp. 3d at 505 ("Thus,

plaintiff is held to "a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)"). This is a very onerous standard for Plaintiff to meet. *See Allred v. Walker*, 18-cv-10641 (LJL), 19-cv-10876 (LJL), 2021 WL 5847405 at *4 (S.D.N.Y. Dec. 9, 2021) ("The doctrine of demand futility, the business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs").

Plaintiff's threadbare allegations regarding demand futility are not enough to satisfy this stringent pleading standard. In the Consolidated Complaint, Plaintiff merely states that any demand would have been futile because the Board failed to take any action despite her warnings about Mr. Garg's misrepresentations "in each instance of those misrepresentations." Cons. Compl. ¶¶ 1, 5, 154, 207-14. She does not detail when and what information she provided to the Board in each of those instances that would have made the Board at least question the credibility of Mr. Garg's representations that Plaintiff claims to be false. *Id*.

Worse yet, the allegations are plagued with internal inconsistencies which are fatal to Plaintiff's arguments on demand futility. Where an allegation in the complaint conflicts with other allegations, the court is not obligated to accept the allegation in the pleadings as true. *DeBlasio v. Merrill Lynch*, No. 07-Civ-318 (RJS), 2009 WL 2242605 at *26 (S.D.N.Y. Jul. 27, 2009). Plaintiff claims that Better's Board knowingly condoned or joined Mr. Garg's misrepresentations despite her warnings. Cons. Compl. ¶ 214. Apart from the threadbare allegations that she warned the Board in each instance of Mr. Garg's misrepresentations, the only substantive description of her interaction with the Board in this regard comes at paragraph 105 of the Consolidated Complaint. *Id*. ¶ 105. There, she mentions that she and several other Better executives spoke to several (not all) Board members about Mr. Garg's (and not Mr. Calamari's) misrepresentations about the

Company's financial projections and performance.  *Id*.  She then goes on to state that the Board "did not wish to silence the leaders" and "wanted to ensure it had properly addressed" Plaintiff's concerns.  *Id*. ¶¶ 108.  She further states that the Board followed up and "heavily edited" the script for the Townhall where Mr. Garg would address the employees about the Company's next steps. *Id*. ¶ 111.

Even on the face of the Consolidated Complaint, therefore, Plaintiff's factual assertions that the Board was taking her concerns seriously run counter to her threadbare allegations elsewhere that the Board ignored her warnings.  Such internal inconsistency within the Consolidated Complaint again warrants the dismissal of the claim.  *See, e.g., Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. Nov. 17, 2005); *see also Colodney v. Continuum Health Partners, Inc.*, No. 03 Civ. 7276 (DLC), 2004 WL 829158 at *7 (S.D.N.Y. Apr. 15, 2004).  It is only clear that Plaintiff added assertions about the Board's inaction just for the sake of trying to save her claim for breach of fiduciary duty, but she does not have sufficient facts to do so.

### C. Plaintiff Has Not Asserted Any Facts Related to Mr. Calamari That Support His Principal Liability for Breach of Fiduciary Duty.

Notably, the breach of fiduciary duty claim is now against Mr. Calamari too in lieu of the previous aiding and abetting claim against him, but the Consolidated Complaint contains no additional assertions as to Mr. Calamari's actions that amounted to his principal liability for the breach.  Throughout the Consolidated Complaint, Plaintiff still only asserts Mr. Calamari's assistance to Mr. Garg's actions.  *See* Cons. Compl. ¶ 19 ("CEO Garg finally effected his self-serving desire [] <u>with the help of</u> General Counsel Calamari, to terminate Pierce's employment"); *Id*. ¶39 ("[Mr. Garg's conduct], <u>aided by</u> General Counsel Calamari"); *Id*. ¶ 179 ("CEO Garg, <u>with the assistance of</u> General Counsel Calamari, finally succeeded in persuading Better to terminate Pierce") (emphases added).  Even then, these statements are conclusory and do not support the

inference even of an aiding and abetting liability, let alone a principal liability for breach of fiduciary duty.

Both in the Original and Consolidated Complaints, Plaintiff purports to describe two things that Mr. Calamari did to support Mr. Garg's alleged retaliation, none of which sustains a breach of fiduciary claim. The two actions are that Mr. Calamari: (i) attempted to stop certain Better executives from resigning, out of concern that the resignations might impact the SPAC Transaction (Cons. Compl. ¶¶ 101-03), and (ii) executed Plaintiff's leave of absence (Cons. Compl. ¶ 154.b.).

On the face of the Consolidated Complaint, Plaintiff does not assert how trying to stop an event that might affect the SPAC Transaction, a critical objective of the Company at that time, amounted to a breach of fiduciary duty owed to the Company. Indeed, the allegations support the inference that this was the proper course of action taken by a responsible executive based on reasonable judgment. Similarly, Plaintiff does not assert how putting an <u>employee</u> on administrative leave, an action that is routinely taken at any corporation, amounted to a breach of fiduciary duty against the Company. This is an employee doing his job.

Such lack of factual basis for the claim against Mr. Calamari is clear evidence that Plaintiff's breach of fiduciary duty claim against him is stretched beyond the breaking point and was simply a new attempt at what was an otherwise defective aiding and abetting claim. Plaintiff cannot simply engage in this type of claims shopping.

For these reasons, the derivative claim against Individual Defendants must fail.

## II. PLAINTIFF HAS NOT PLED A DEFAMATION CLAIM AGAINST MR. GARG.

In the Original Complaint, Plaintiff had asserted that the following statements by Mr. Garg were defamatory: (i) Mr. Garg's email to the Board and Company executives on December 9, 2021 memorializing the Board's agreement that the Company needed a COO and that the Company's

current metrics are a black box (the "Black Box Statements"), (ii) that Plaintiff was the leader of a coup, attempted to get rid of Mr. Garg, had resigned, abandoned the Company and sought to extort money from the Company, that her title should have been the Cheerleader in Chief, and that she has been fudging the numbers related to the Company's labor costs (collectively, "Other Statements"). Compl. ¶¶ 86-89.

In the Original Motion to Dismiss, Mr. Garg explained that the Black Box Statements were a summary of the Board's discussions and therefore were not false, and that Plaintiff has failed to plead that Mr. Garg knew the Other Statements were false. *See* MTD. At 15-16. In the Consolidated Complaint, Plaintiff claims that the Black Box Statements were false when considered in context. Cons. Compl. ¶ 218. With regards to the Other Statements, Plaintiff simply adds an umbrella conclusory statement that Mr. Garg knew those statements to be false. *Id*. ¶ 221. Plaintiff's efforts do not cure the pleading deficiencies in the Original Complaint.

**A. Plaintiff Has Not Pled That the Black Box Statements Were False or Defamatory.**

To state a defamation claim under New York law, a plaintiff must first allege a false statement of fact. *Renxiong Huang v. Minghui.org.*, No. 17-civ-5582 ER, 2019 WL 2525416 at *3 (S.D.N.Y. Jun. 18, 2019). The Black Box Statements were part of Mr. Garg's email memorializing a December 8, 2021 Board meeting. The Black Box Statements comprise two parts: (i) that Mr. Garg and the Board decided that the Company needed a seasoned COO, and (ii) that the Board currently feels the metrics are a black box. Cons. Compl. ¶¶ 86-87.

By nature, these statements are a summary of a meeting and cannot be false or defamatory. Even considered in the context and in substance, assuming Plaintiff alleged that Mr. Garg told the Board or other executives that the Company needed a COO, this is not a statement of false. It is an opinion, one the Board agreed with. Plaintiff appears to be claiming that the Black Box Statements were false because she was that good COO and Mr. Garg knew it. But on the face of

that pleading, nothing in Mr. Garg's statement was false, nor was Plaintiff even referenced anywhere in the Black Box Statements. The undisputed fact here is, that Better did not have a COO position at that time. Cons. Compl. ¶¶ 2, 26, 34 (Plaintiff calling herself the "functional equivalent" of a COO).

### B. Plaintiff Has Not Pled That the Other Statements Were False or Defamatory.

A defamation claim based on the Other Statements must also fail because Plaintiff has not asserted any facts showing Mr. Garg's specific knowledge of the falsity of those statements. The Other Statements are that: (i) Plaintiff was the leader of a coup and attempted to get rid of Mr. Garg, (ii) she had resigned and abandoned the Company, (iii) she sought to extort money from the Company, (iv) that her title should have been the Cheerleader in Chief, and (vi) that she has been fudging the numbers related to the Company's labor costs. Cons. Comp. ¶¶ 21, 23, 171, 220.

Plaintiff's conclusory statements that these statements were false and Mr. Garg knew they were false cannot save her defamation claim from a motion to dismiss, because she has not asserted any facts supporting those inferences. What she has done is merely put all the allegedly defamatory statements in one place and add an umbrella conclusory statement that those statements were false and Mr. Garg knew it. *Id*. ¶ 21 ("In addition to these acts of retaliation, CEO Garg repeatedly defamed Pierce…by repeatedly and publicly questioning Pierce's aptitude…with knowledge of the falsity of the [Other Statements]…"); *Id*. ¶ 221 ("Each of these statements – particularly viewed in context and considered with the totality of the circumstances – was false when made and CEO Garg knew they were false at the time he made them").

For example, Plaintiff alleges that the statement that she was the leader of a "coup" was false because she never sought to undermine CEO Garg. *Id*. ¶ 221. This is simply saying that she was not the leader of a coup because she was not, which adds no value to the pleading. Likewise,

she claims that the statements that she had resigned and tried to extort money from the Company were false because she did not resign, which similarly adds no value to the pleading. *Id.* Moreover, this allegation is actually belied by her own email which was referenced in the Consolidated Complaint. In her December 17, 2021 email to Better's CFO Kevin Ryan, she announced her voluntary resignation using plain language that she would like to begin "transitioning out" of my role at Better. Ex. B. Similarly, the alleged falsity of the statement that her title "should have been Cheerleader in Chief," if this statement is at all a statement of fact and not opinion, is unsupported by any facts other than a rephrased conclusory statement that she had contributed great value to the Company (emphasis added). *Id.* It is well-established principle that pleadings containing no more than mere conclusory statements, as here, are not entitled to the assumption of truth. *In re Michael Stapleton*, 2018 WL 3962931, at \*2. Therefore, the defamation claim against Mr. Garg must fail.

### C. Even If Plaintiff Has Successfully Pled That Mr. Garg's Statements Were Defamatory, She Has Not Asserted Facts to Overcome the Qualified Privilege That Protects Those Statements.

Under New York law, qualified privilege protects defamatory communications made by one person to another upon a subject in which both have an interest. *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. Dec. 30, 2009). In the employment context, it is a well-established principle that qualified privilege protects statements made by an employer/supervisor to management and coworkers in connection with an employee's performance, unless the defendants were motived by "actual malice." *Kasachkoff v. City of New York*, 485 N.Y.S.2d 992, 995-96 (1st Dep't 1985) (finding that the plaintiff did not meet her burden of showing actual malice). "Actual malice" refers to publication of false material with spite, knowledge of its falsity, or a high degree of its falsity. *Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp. 2d 103, 116-17 (E.D.N.Y. Nov. 1, 2001). Mere surmise, conjecture, suspicion, conclusions, expressions of hope or

unsubstantiated allegations or assertions are not enough to prove actual malice. *See Kasachkoff*, 485 N.Y.S.2d at 996.

Moreover, this issue is appropriately addressed at the motion to dismiss stage. *See Orenstein*, 677 F. Supp. 2d at 710-11; *see also Langenkamp v. Olson*, 628 F. App'x 50, 53 (2d Cir. 2015) (affirming the district court's grant of motion to dismiss the defamations claims due to the lack of pleading of malice to overcome qualified privilege). The key question is whether the plaintiff has adequately pled actual malice of the defendant. *See Langenkamp v. New York Univ.*, No. 10-civ-8883 AKH, 2012 WL 12540277, at *3 (S.D.N.Y. Mar. 15, 2012); *see also Orenstein*, 677 F. Supp. 2d at 711.

Here, qualified privilege protects Mr. Garg's statements. On the face of the Consolidated Complaint, Mr. Garg made the allegedly defamatory statements to the Company's Board members and executives. Cons. Compl. ¶¶ 217, 220, 223. These statements – if at all true – were concerning Plaintiff's performance, which the Board members and executives had a common interest in. Accordingly, the burden is on Plaintiff to plead Mr. Garg's actual malice – i.e., that Mr. Garg knew his statements were false – to overcome the qualified privilege. *See Dunson*, 171 F. Supp. 2d at 117. As explained previously, Plaintiff has failed to assert facts that support an inference that Mr. Garg's statements were false or that he knew them to be false. Therefore, Plaintiff has not asserted actual malice to overcome the qualified privilege.

For these reasons, the defamation claim against Mr. Garg must fail.

## III. PLAINTIFF HAS NOT PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST INDIVIDUAL DEFENDANTS.

It is well-established in New York that an extremely strict standard applies for sustaining a claim for intentional infliction of emotional distress. *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, No. 00-civ-5433 GBD, 2001 WL 180055, at *1 (S.D.N.Y. Feb. 22, 2001). To state a claim

for intentional infliction of emotional distress, the plaintiff must show: (i) extreme and outrageous conduct, (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (iii) a causal relationship between the conduct and injury, and (iv) severe emotional distress. *Id*.

This standard is very rigorous and difficult to satisfy, especially in the employment law context, such as the case here. *Id*. at *2. New York courts have noted that a "plaintiff cannot avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." *Id*. Thus, "[a]s a result, New York courts routinely dismiss claims for intentional infliction of emotional distress in the employment context, except where such claims were accompanied by allegations of sex discrimination and, more significantly, or battery." *Id*.

Having realized that her original pleadings came nowhere close to this high standard, Plaintiff now rephrases her pleading, trying to demonstrate the egregiousness of Individual Defendants' actions, but the actions have not changed. Plaintiff's reworded new allegations are as deficient as the old ones.

In the Original Complaint, Plaintiff had asserted that Individual Defendants' retaliation against Plaintiff, especially orchestrating her leave of absence and termination, collectively inflicted emotional distress on her. *See* Compl. ¶¶ 172-75. In the Consolidated Complaint, Plaintiff further pleads that: (i) Mr. Garg embarked on a campaign of harassment and abuse when Plaintiff raised complaints about his misconducts (Cons. Compl. ¶ 235); (ii) Mr. Garg was not satisfied with just replacing Plaintiff but wanted to destroy her legacy and destroy her reputation in the industry (*Id*. ¶ 236); (iii) Mr. Garg and Mr. Calamari's orchestrating Plaintiff's abrupt leave of absence was only an example of their retaliation (*Id*. ¶ 237); (iv) Individual Defendants brought about Plaintiff's termination and continued their campaign of harassment and defamation,

including Mr. Garg potentially playing a role in the Company's decision to file a public lawsuit against Plaintiff (*Id*. ¶¶ 239-42).

These assertions do not substantively modify the original pleading. They are merely a rephrased version of Plaintiff's overall claim of retaliation. At best, they try to allege Mr. Garg's motive (and not Mr. Calamari's) in retaliating against Plaintiff, but mere pleading of motive is nowhere close to New York's strict standard that requires outrageous conducts (akin to battery).

New York courts have routinely dismissed employee retaliation claims brought as a claim for intentional infliction of emotional distress where the conduct involved was similar or even far more outrageous than the retaliation that Plaintiff claims. *Lydeatte*, 2001 WL 180055 at *1 (holding that the employer's racial discrimination and retaliation fall far short of the strict standard for an intentional infliction of emotional distress claim); *Realmuto v. Yellow Freight Sys., Inc.*, 712 F. Supp. 287, 289 (E.D.N.Y. Apr. 24, 1989) (holding that termination of the plaintiff's employment based on the defendant's discriminatory intent does not establish a claim for intentional infliction of emotional distress); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 336-67 (S.D.N.Y. Jul. 8, 2010) (holding that allegations that "plaintiff was humiliated in front of her co-workers" did not meet the standard for intentional infliction of emotional distress, and that a discrimination dispute cannot be transformed into a claim for intentional infliction of emotional distress); *Clayton v. Best Buy Co., Inc.*, 851 N.Y.S.2d 485, 487 (1st Dep't 2008) (holding that allegations of sexual and inappropriate remarks targeting an employee did not support a claim of intentional infliction of emotional distress)). Mr. Garg's alleged retaliation, even if true (it is not), falls way short of the more egregious conducts that New York courts have easily dismissed in other cases.

The claim as against Mr. Calamari can be dismissed even more easily. Other than simply grouping Mr. Calamari together with Mr. Garg when essentially describing Mr. Garg's conducts

(*see, e.g.*, Cons. Compl. ¶¶ 237, 238, 239), Plaintiff does not assert any independent action by Mr. Calamari that would amount to something even remotely close to an intentional infliction of emotional distress. The only purported action by Mr. Calamari is that he cut off Plaintiff's work access. Cons. Compl. ¶ 237. If this is at all some type of wrongdoing (it is not) and not Mr. Calamari simply carrying out the standard procedure for putting an employee on leave, Plaintiff has not asserted how cutting off her work access was extreme or outrageous, or intended to inflict severe emotional distress on her.

Therefore, the amended claim for intentional infliction of emotional distress against Individual Defendants must fail.

## IV. PLAINTIFF HAS NOT PLED A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT AGAINST INDIVIDUAL DEFENDANTS.

Knowing that the aiding and abetting claim against Mr. Calamari could not survive the Original Motion to Dismiss, Plaintiff drops it but now asserts a claim for tortious interference with a contract against both Individual Defendants. This new claim fails for several reasons.

### A. The Claim Fails Because Plaintiff's Employment Contract with Better Was Terminable at Will and Therefore Cannot Be Tortiously Interfered With.

Under New York law, the elements of a tortious interference claim are: (i) that a valid contract exists, (b) that a "third party" had knowledge of the contract, (c) that the third party intentionally and improperly procured the breach of the contract, and (d) that the breach resulted in damage to the plaintiff. *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (E.D.N.Y. Jan. 5, 1996).

It is well-settled in New York that a contract terminable at will cannot be the basis for a tortious interference with a contract claim because there can be no breach of contract, a necessary element for tortious interference with contract, when the contract may be terminated at will. *Discover Grp, Inc. v. Lexmark Intern., Inc.*, 333 F. Supp. 2d 78, 84 (E.D.N.Y. Sep. 2, 2004).

Plaintiff does not dispute that she was an at-will employee of Better. Plaintiff's offer letter, which Plaintiff vaguely referenced in the Consolidated Complaint as her "employment agreement with Better,"[4] expressly states that Plaintiff's employment is terminable at will. Plaintiff does not dispute this or that she was an at-will employee of Better.

Therefore, her tortious interference claim cannot stand. She cannot be "allowed to evade the employment at-will rule and relationship by recasting her cause of action in the garb of a tortious interference with her employment." *Miller v. Richman*, 184 A.D.2d 191, 194 (4th Dep't 1992).

### B. The Claim Further Fails Because Individual Defendants Were Not Third Parties to Plaintiff's Employment Contract with Better.

It is true that an at-will employee may maintain a tortious interference claim in "certain limited situations" (*Finley*, 79 F.3d at 1295), but Plaintiff has not pled that the limited situation applies here. To sustain a claim for tortious interference with a contract terminable at will, the plaintiff must establish that a "third party" used wrongful means to effect the termination. *Okoi v. El Al Israel Airlines*, 378 F.App'x.9, 11 (2d Cir. 2010). Co-employees are normally not considered third parties for the purposes of a claim for tortious interference with an employment contract. *Finley*, 79 F.3d at 1295. It is undisputed that both Mr. Garg and Mr. Calamari, at all times relevant to this action, have been employed at Better. Cons. Compl. ¶¶ 28-29. As such, they are not "third parties" to Plaintiff's employment agreement with Better, and therefore the tortious interference claim cannot stand.

---

[4] Cons. Compl. ¶ 247. Individual Defendants submit this offer letter as Exhibit C. A court can consider documents that are either attached to the complaint or incorporated into it by reference in a motion to dismiss. *Cortec*, 949 F.2d at 46-48.

It Is also true that in certain limited situations, a defendant co-employee can be considered a third party (*Finley*, 79 F.3d at 1295), but that too does not apply here. To establish that a defendant co-employee should be considered a third party, a plaintiff must show that the defendant-employee has exceeded the bounds of his or her authority. *Id*. Plaintiff simply failed to make this showing.

Even accepting as true that the nature of her departure from Better was termination and not resignation (which Individual Defendants dispute), Plaintiff has not pled any facts to support an inference that Mr. Garg and Mr. Calamari, as CEO and General Counsel of Better respectively, were acting outside the scope of their authority when they allegedly procured Plaintiff's leave of absence and termination. Plaintiff simply does not assert that either Mr. Garg or Mr. Calamari lacked the authority to put her on leave or fire her (and that assumes for the purpose of this argument that Plaintiff was fired, as opposed to resigned). In *Finley*, the Second Circuit affirmed the district court's dismissal of the tortious interference claim for similar reasons. *See id*. at 1295 ("The evidence [] leaves no question that Giacobbe, as Commissioner of Hospitals, had the authority to hire and fire the Medical Director. Giacobbe *hired* Dr. Finely [] During this period Giacobbe had direct supervisory authority over Dr. Finley. The record reflects that at no time did Dr. Finley challenge Giacobbe's supervisory powers").

Plaintiff attempts to create an inference that Individual Defendants were not acting within the scope of their authority because they made misrepresentations about her to procure her termination. But her threadbare allegations on this point are insufficient to survive a motion to dismiss. In *Marino v. Vunk* (39 A.D.3d 339 ([1st] Dep't 2007)), the First Department affirmed the Supreme Court's dismissal of the tortious interference claim for failure to sufficiently plead actual malice. *See Id*. at 340. There, the plaintiff asserted that the malicious acts of the defendants

included assertions "that plaintiff engaged in conduct that was treacherous and unethical, including the unethical and unauthorized transfer of sales representatives," "that plaintiff violated explicit directions of her superior," "that plaintiff lied about how she intended to proceed during the redistricting," "that plaintiff did not communicate and was not supportive," and that "plaintiff was negative and unprofessional." Am. Verified Compl., ¶ 20, *Marino*, 39 A.D.3d 339. The plaintiff further claimed that one of the defendants "maliciously accused plaintiff of executing a well thought out plan to increase her earnings, override the redistricting process and undermine [the defendant's] authority." *Id*. The First Department held that these allegations were "conclusory" and "insufficient to place [the defendants'] actions outside of scope of their employment." *Marino*, 39 A.D.3d at 340.

Plaintiff's allegations here that Mr. Garg "acted intentionally to improperly bring about Pierce's termination" by "lying as to Pierce's performance" and about the "truthful statements that Pierce made about CEO Garg" are even more barebones and cannot survive a motion to dismiss. Cons. Compl. ¶¶ 250-51.

Likewise, Plaintiff's barebones allegations that Mr. Calamari aided Mr. Garg cannot survive. Mr. Calamari's actions that are asserted under the tortious interference claim were originally the basis for the aiding and abetting claim against him. Compl. ¶ 177. Having withdrawn the aiding and abetting claim, Plaintiff now adopts the same assertions <u>as is</u> under the tortious interference claim for the purposes of her claims shopping. Cons. Compl. ¶ 253. However, the conclusory statements there that Mr. Calamari "support[ed]" or "repeat[ed]" Mr. Garg's alleged misconducts (*Id*. ¶¶ 253.b.c.e.g.) do not create an inference that Mr. Calamari was acting outside the scope of his authority, just as her assertions about Mr. Garg's actions do not create such an inference. The rest of the conclusory assertions fail for the same reason. *Id*. ¶ 253.a.

d. Plaintiff simply has not asserted that Mr. Calamari was acting outside the scope of his authority and not duly performing his duties as General Counsel by trying to keep the SPAC Transaction afloat and routinely administering an employee's leave.

### C. The Claim Further Fails as Against Mr. Garg Because It is Duplicative of the Defamation Claim Against Him.

Lastly, the tortious interference claim further fails at least as against Mr. Garg because it is duplicative of the defamation claim against him. A defamation cause of action has "broad reach" because, "unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished." *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 458 (N.Y. Ct. App. 1967). Causes of action that are "indistinguishable from a defamation cause of action" have been dismissed as duplicative. *See Ganske v. Mensch*, 480 F. Supp. 3d 542, 556 (S.D.N.Y. Aug. 20, 2020); *see also Balderman v. Am. Broad. Cos.*, 292 A.D.2d 67, 76 (4th Dep't 2002). As such, New York law considers a claim sounding in tort to be a defamation claim if the claim is based on the same alleged injury to the plaintiff's reputation as her defamation claim. *La Luna Enters., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 392 (S.D.N.Y. Oct. 20, 1999).

The underlying factual allegations for the tortious interference claim overlap with the allegations of misrepresentations that underlie the defamation claim. Cons. Compl. ¶ 249 ("CEO Garg and General Counsel Calamari misrepresented that Pierce had resigned from Better); *Id*. ¶ 251 ("CEO Garg acted…by lying as to Pierce's performance and lying about the truthful statements that Pierce made about CEO Garg"); *Id*. ¶ 252 ("CEO Garg acted… to ensure that she would serve as a scape-goat for his improper actions, and to distract from his own bad acts"). These allegations are indistinguishable from the allegations underlying the defamation claim against Mr. Garg. Plaintiff has only alleged a harm that flows from the effect on her reputation,

and therefore the claim is duplicative of her defamation claim against Mr. Garg, and must be dismissed.

## V. TO THE EXTENT THAT A VIOLATION OF SOX IS ALSO ALLEGED AGAINST MR. GARG, PLAINTIFF HAS FAILED TO PLEAD THAT CLAIM.

Lastly, Plaintiff also alleges a "violation of SOX" as the second cause of action in the Consolidated Complaint, but does not state who it is against. In the wherefore clause, after paragraph 195, she requests a judgement against Mr. Garg and Better. To the extent that she is asserting this claim against Mr. Garg too, the claim fails for the same reasons stated in the Company's memorandum of law in support of its motion to dismiss and Mr. Garg incorporates that be reference. In addition, Plaintiff uses this same language as to Mr. Garg in nearly every wherefore clause at the end of each cause of action in the Consolidated Complaint, even when the cause of action is not directed against him. To the extent that Plaintiff seeks relief from Mr. Garg related to these claims, he incorporates by reference the arguments made in Better's motion to dismiss.

As for the SOX claim. the SOX whistleblower claim fails because: (i) as confirmed by the OSHA and the SEC that have already reviewed this claim, liability under the SOX whistleblower protection clause is limited to publicly traded companies and, *inter alia*, its officer, but Better is not a public company (*see Lawson v. FMR LLC*, 571 U.S. 429, 433 (2014); 18 U.S.C. §1514A(a)), (ii) even if SOX did apply to a private company such as Better (it does not), Plaintiff has failed to allege that her purported whistleblowing relate to any of the six categories of misconduct stipulated in SOX that would trigger protection (*see, e.g., Fraser v. Fiduciary Tr. Co. Int'l*, No. 04-CV-6958 (PAC), 2009 WL 2601389, at *5 (S.D.N.Y. Aug. 25, 2009)), (iii) and lastly, even if Plaintiff made whistleblower complaint protected by SOX (she did not), Company and Mr. Garg are not liable for alleged acts of retaliation if they can show that they would have taken the same unfavorable

employment action in the absence of Plaintiff's protected conduct.  *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013).  Plaintiff has not asserted facts supporting an inference otherwise.  Therefore, the SOX claim against Mr. Garg must fail to the extent that it is also asserted against him.

## **CONCLUSION**

For the foregoing reasons, Individual Defendants respectfully request that the Court dismiss the Consolidated Complaint in its entirety as against them with prejudice.

Dated:  New York, New York
       January 17, 2023

Respectfully submitted,

KOBRE & KIM LLP

/s/ Steven W. Perlstein
Steven G. Kobre
Steven W. Perlstein
Michael Bahn

800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.kobre@kobrekim.com
Steven.perlstein@kobrekim.com
Michael.bahn@kobrekim.com

*Attorneys for Defendants Vishal Garg and Nicholas Calamari.*