UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH J. PIERCE<br><br>                    Plaintiff,<br><br>          v.<br><br>BETTER HOLDCO, INC.,<br>VISHAL GARG, and NICHOLAS CALAMARI,<br><br><br>                    Defendants. | Case No. 1:22-cv-04748 (AT)<br><br>**Oral Argument Requested** |

**INDIVIDUAL DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED
<u>COMPLAINT AND JURY DEMAND</u>**

Steven G. Kobre
Steven W. Perlstein
Michael Bahn

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.kobre@kobrekim.com
Steven.perlstein@kobrekim.com
Michael.bahn@kobrekim.com

*Attorneys for Defendants Vishal Garg and
Nicholas Calamari*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 2

I.   THE OPPOSITION DOES NOT SAVE THE DERIVATIVE CLAIM FOR BREACH OF
     FIDUCIARY DUTY .................................................................................... 3

     A.   Plaintiff Attacks a Mischaracterized Version of Individual Defendants' First
          Argument on the Derivative Claim .................................................... 4

     B.   Plaintiff Appears to Misunderstand Individual Defendants' Second Argument ......... 4

     C.   Plaintiff Did Not Plead Facts to Support a Claim Against Mr. Calamari .................. 5

II.  THE OPPOSITION DOES NOT SAVE THE DEFAMATION CLAIM ........................... 6

     A.   Mr. Garg Has Not Selectively Addressed the Allegedly Defamatory Statements ...... 6

     B.   It is Plaintiff, Not Mr. Garg, Who Selectively Addresses Opposing Arguments ........ 7

     C.   Even if Mr. Garg's Statements Were Defamatory, Plaintiff Has Not Overcome the
          Qualified Privilege That Protects Them ................................................ 8

III. THE OPPOSITION DOES NOT SAVE THE CLAIM FOR INTENTIONAL
     INFLICTION OF EMOTIONAL DISTRESS ................................................... 9

     A.   The Cases on which Plaintiff Relies Do Not Support Her Claim .............................. 9

     B.   It is Extremely Difficult to Sustain an Intentional Infliction of Emotional Distress
          Claim in the Employment Context ..................................................... 10

     C.   The Recent New York Case That Plaintiff Submitted (ECF No. 64) is Irrelevant ... 11

IV.  THE OPPOSITION DOES NOT SAVE THE CLAIM FOR TORTIOUS
     INTERFERENCE WITH A CONTRACT ....................................................... 12

     A.   Plaintiff Does Not Address Individual Defendants' Main Arguments .................... 12

B.   Plaintiff Actually Agrees with Individual Defendants That They Were Acting in the Scope of Their Authorities ........................................................................................ 13

C.   Plaintiff Ignores Mr. Garg's Argument That the Tortious Interference Claim is Duplicative of the Defamation Claim against Him .................................................... 14

**CONCLUSION** ................................................................................................................. 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allred on behalf of Aclaris Therapeutics, Inc. v. Walker*,
   No. 19-cv-10641 (LJL), 19-cv-10876 (LJL), 2021 WL 5847405 (S.D.N.Y. Dec. 9, 2021) ...... 4

*Am. Protein Corp. v. AB Volvo*,
   844 F.2d 56 (2d Cir. 1988) ..................................................................................... 13

*Amadsau v. Bronx Lebanon Hosp. Center*,
   No. 3-cv-6450 (LAK) (AJP), 2005 WL 121746 (S.D.N.Y. Jan. 21, 2005)................................ 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 2

*Balderman v. Am. Broad. Cos.*,
   292 A.D.2d 67 (4th Dep't 2002) ............................................................................. 15

*Bank of New York v. Berisford Int'l*,
   190 A.D. 2d 622 (1st Dep't 1993) .......................................................................... 13

*Bender v. City of New York,*
   78 F.3d 787 (2d Cir. 1996) ...................................................................................... 9

*BIB Constr. Co. Inc. v. City of Poughkeepsie*,
   612 N.Y.S. 2d 283 (3d Dep't 1994) ....................................................................... 13

*Brautigam v. Rubin*,
   55 F. Supp. 3d 499 (S.D.N.Y. 2014) ................................................................... 3, 4

*Brown v. New York Design Center, Inc.*,
   No. 2022-01472, 2023 WL 2417772 (1st Dep't 2023) ........................................... 11

*Clayton v. Best Buy Co.*,
   851 N.Y.S.2d 485 (1st Dep't 2008) ...................................................................... 11

*Cohen v. Davis*,
   926 F. Supp. 399 (S.D.N.Y. 1996) ....................................................................... 13

*Colodney v. Continuum Health Partners, Inc.*,
   No. 3-cv-7276 (DLC), 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004) ........................ 5

*DeBlasio v. Merrill Lynch & Co., Inc.*,
   No. 7-cv-318 (RJS), 2009 WL 2242605 (S.D.N.Y. Jul. 27, 2009) ........................... 5

*Finley v. Giacobbe,*
   79 F.3d 1285 (E.D.N.Y. 1996) ................................................................. 12, 14

*Fisk v. Letterman,*
   401 F. Supp. 2d 362 (S.D.N.Y. 2005) ...................................................... 5

*Flamm v. Van Nierop,*
   56 Misc.2d 1059 (Westchester Cty. S.Ct. 1968) .................................... 9, 10

*Flatley v. Hartmann,*
   138 A.D.2d 345 (2d Dep't 1998) .............................................................. 9, 10

*Ganske v. Mensch,*
   480 F. Supp. 3d 542 (S.D.N.Y. 2020) ..................................................... 15

*G.D. Searle & Co. v. Medicore Comm., Inc.,*
   843 F. Supp. 895 (S.D.N.Y. 1994) .......................................................... 13

*Guard-Life Crop. v. S. Parker Hardware Mfg. Corp.,*
   50 N.Y. 2d 183 (N.Y. Ct. App. 1980).................................................... 13

*Halio v. Lurie,*
   15 A.D.2d 62 (2d Dep't 1961) ................................................................. 9, 10

*Holmes v. Gary Goldberg & Co., Inc.,*
   40 A.D.3d 1033 (2d Dep't 2007) .............................................................. 14

*In re Michael Stapleton Assocs. Ltd.,*
   No. 17-cv-5468 (AJN), 2018 WL 3962931 (S.D.N.Y. Aug. 17, 2018) ...................................... 2

*Kasachkoff v. City of New York,*
   485 N.Y.S.2d 992 (1st Dep't 1985)......................................................... 8

*Kelly v. Chase Manhattan Bank,*
   717 F. Supp. 277 (S.D.N.Y. 1989) .......................................................... 11

*Levine v. Gurney*
   149 A.D.2d 473 (2d Dep't 1989)............................................................. 9

*Lydeatte v. Bronx Overall Econ. Dev. Corp.,*
   No. 00-civ-5433 (GBD) 2001 WL 180055 (S.D.N.Y. Feb. 22, 2001)....................................... 11

*Marino v. Vunk,*
   39 A.D.3d 339 (1st Dep't 2007) .............................................................. 13

*Meadows v. Planet Aid, Inc.*,
  676 F. Supp. 2d 83 (E.D.N.Y. 2009) ........................................................................ 11

*Okoi v. El Al Israel Airlines*,
  378 F.App'x 9 (2d Cir. 2010) ........................................................................ 12, 14

*Orenstein v. Figel*,
  677 F. Supp. 2d 706 (S.D.N.Y. 2009) ........................................................................ 8

*Realmuto v. Yellow Freight Sys., Inc.*,
  712 F. Supp. 287 (E.D.N.Y. 1989) ........................................................................ 11

*Riddell Sports Inc. v. Brooks*,
  872 F. Supp. 73 (S.D.N.Y. 1995) ........................................................................ 13

*Rodriguez v. Dickard Widder Indus.*,
  56 N.Y.S.3d 328 (2d Dep't 2017) ........................................................................ 12

*Thai v. Cayre Grp., Ltd.*,
  726 F. Supp. 2d 323 (S.D.N.Y. 2010) ........................................................................ 11

*United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund
  v. Zuckerberg*,
  262 A.3d 1034 (Del. 2021) ........................................................................ 3

Defendants Vishal Garg and Nicholas Calamari ("Individual Defendants"), by and through their undersigned counsel, respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss ("Motion to Dismiss" or "MTD.")[1] the Consolidated Amended Complaint and Jury Demand (ECF No. 52) ("Consolidated Complaint" or "Cons. Compl.").

## PRELIMINARY STATEMENT

In her opposition ("Opposition" or "Opp.") (ECF No. 63), Plaintiff fails to address key arguments made in Individual Defendants' Motion to Dismiss, and ignores arguments that are by themselves sufficient to warrant dismissal of the claims against Individual Defendants. Even where Plaintiff purports to address Individual Defendants' arguments, Plaintiff attacks strawmen, either deliberately or mistakenly misconstruing Individual Defendants' arguments.

For example, Plaintiff never addresses the argument that demand futility must be pled for each director for a derivative claim. Opp. at 29-31. Plaintiff also ignores that she has not pled any facts to support a breach of fiduciary claim against Mr. Calamari. *Id*. These deficiencies are plain on the face of the Consolidated Complaint and Opposition and require dismissal of this claim.

Plaintiff's other claims against Individual Defendants, which she finally clarified in the Opposition (*see* Opp. at 3-4), fare no better. Plaintiff selectively addresses Mr. Garg's arguments against the defamation claim and still makes only conclusory assertions. What is fatal to Plaintiff's argument is the complete lack of facts, both in the Consolidated Complaint and Opposition, supporting an inference that Mr. Garg believed or had a reason to believe that her reports were correct. Moreover, even assuming a defamation claim was pled, qualified privilege protects the alleged statements and nothing Plaintiff argues in the Opposition changes that.

---

[1] All citations to the Motion to Dismiss in this Reply are citing the Memorandum of Law in Support of Individual Defendants' Motion to Dismiss (ECF No. 56).

For the intentional infliction of emotional distress claim, Plaintiff relies on cases that do not support her position.  The extremely strict standard that New York courts apply to sustain an emotional distress claim is clear: and Plaintiff does not dispute Individual Defendants' recitation of the standard.  Although she attempts to apply it in a manner inconsistent with New York law, she cannot get around the fact that her alleged facts, even assuming the truth of the Consolidated Complaint, are not sufficient to state a claim in the employment context.

Lastly, Plaintiff ignores Individual Defendants' arguments against the claim for tortious interference with a contract, instead providing a laundry list of cases without applying them.  Strikingly, she agrees with Individual Defendants that they were acting within the scope of their employment, in which case a tortious interference claim cannot stand.  Plaintiff argues in the Opposition, in an attempt to hold Better liable, that "the complained of statements are those of a company's CEO speaking -- albeit falsely -- about the professional competence of an employee of the same company who reported directly to him. **This is clearly within the scope of his employment**, and it is not relevant whether such statements are in the best interest of Better or not."  Opp. at 39 (emphasis added).  This is fatal to her claim.

For these reasons and as more fully described below, the Opposition fails to save the claims against Individual Defendants, and the claims should be dismissed with prejudice.

## **ARGUMENT**

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  MTD. at 7 (quoting *In re Michael Stapleton Assocs. Ltd.*, No. 17-cv-5468 (AJN), 2018 WL 3962931, at *2 (S.D.N.Y. Aug. 17, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Mere "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Pleadings containing no more than mere

2

conclusory statements are not entitled to the assumption of truth otherwise applicable in a motion to dismiss. *Id*. As explained below, the Opposition does not establish that the Consolidated Complaint meets this standard for any of the claims against Individual Defendants.

## I.   THE OPPOSITION DOES NOT SAVE THE DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY

Plaintiff either misunderstands or completely ignores Individual Defendants' three important arguments requiring dismissal of this claim.

In the Motion to Dismiss, Individual Defendants argued that the derivative claim must fail because: (a) **Plaintiff has not pled demand futility on a director-by-director basis** (MTD. at 8-9) (citing *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021) ("[c]ourts should ask the following three questions on a director-by-director basis when evaluating allegations of demand futility") (emphasis added), (b) **even if a board-wide pleading of demand futility was permissible, Plaintiff has not pled demand futility with particularized facts** (MTD. at 9-11) (citing *Brautigam v. Rubin*, 55 F. Supp. 3d 499, 505 (S.D.N.Y. 2014) ("[a] plaintiff must make specific, particularized allegations showing that [demand] would have been futile")) (emphasis added), and (c) **she has not pled any facts to support Mr. Calamari's principal liability for the breach** (MTD. at 11-12) (emphasis added).

Plaintiff deliberately reframes the arguments as follows: "Defendant Garg submits two [not three] bases for his motion to dismiss: (1) **Plaintiff has allegedly failed to demonstrate demand futility**; and (2) **Plaintiff has failed to meet a heightened pleading standard**" Opp. at 30 (emphases added). Putting aside that Plaintiff failed to even address the argument put for by Mr. Calamari, Plaintiff's framing of the arguments misses their point entirely.

3

### A. Plaintiff Attacks a Mischaracterized Version of Individual Defendants' First Argument on the Derivative Claim

Individual Defendants' first argument is that Plaintiff has failed to plead demand futility *because* she has not pled it on a director-by-director basis. *See* MTD. at 8-9 (emphasis added). Plaintiff does not dispute that a director-by-director pleading is required. Nor does she dispute that the Consolidated Complaint lacks such allegations. She ignores this point completely.

Instead, she takes her strawman version of Individual Defendants' first argument and attacks it by simply repeating her Board-wide allegations on demand futility. Opp. at 30-31. Indeed, her recitation in the Opposition of the actions and inactions by the Board *in one unit* is almost identical to her pleading in the Consolidated Complaint on demand futility. *See* Opp. at 30; *see* Cons. Compl. ¶¶ 208-13 (emphasis added). Plaintiff then references the *Zuckerberg* factors (*see* Opp. at 31), but does not apply them on a director-by-director basis as required.

### B. Plaintiff Appears to Misunderstand Individual Defendants' Second Argument

Individual Defendants' second argument on the derivative claim is that Plaintiff has not satisfied New York's heightened standard for pleading demand futility, even if a Board-wide allegation were to be held permissible. MTD. at 9-11. Plaintiff's response to this is not only far more barebones, but also completely off point. She simply calls the argument a "red herring" and claims that she has pled "Garg's self-serving breach of duty" with more than sufficient specificity. Opp. at 31-32. Individual Defendants have not argued that she must plead the *breach* with particularity. It is the *demand futility* that must be pled with particularity under New York law. *See* MTD. at 9-11 (citing *Brautigam*, 55 F. Supp. 3d at 505; citing *Allred on behalf of Aclaris Therapeutics, Inc. v. Walker*, No. 19-cv-10641 (LJL), 19-cv-10876 (LJL), 2021 WL 5847405 at *4 (S.D.N.Y. Dec. 9, 2021)). Plaintiff's threadbare opposition completely misses the point.

She also turns blind eye to the internal inconsistency in her pleadings that Individual Defendants have identified as fatal to the derivative claim. In the Motion to Dismiss, Individual Defendants have pointed out how Plaintiff states in the Consolidated Complaint that the Board tried to properly address her concerns about Mr. Garg's actions (MTD. at 10-11 (citing Cons. Compl. ¶¶ 105, 108, 111)), then suddenly accuses it of condoning and joining Mr. Garg's actions (MTD. at 11 (citing Cons. Compl. ¶ 214)). A court is not obligated to accept conflicting allegations in the pleadings as true. MTD. at 10 (citing *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 7-cv-318 (RJS), 2009 WL 2242605 at *26 (S.D.N.Y. Jul. 27, 2009)). Internal inconsistencies within the pleading are fatal to a claim (*see, e.g., Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); *see also Colodney v. Continuum Health Partners, Inc.*, No. 3-cv-7276 (DLC), 2004 WL 829158 at *7 (S.D.N.Y. Apr. 15, 2004)), and the derivative claim must fail.

### C. Plaintiff Did Not Plead Facts to Support a Claim Against Mr. Calamari

Finally, Plaintiff ignores Individual Defendants' third argument that she has not pled any facts to support Mr. Calamari's principal liability for breach of his fiduciary duty. As Individual Defendants have explained in the Motion to Dismiss, Plaintiff's allegations against Mr. Calamari are mostly conclusory, rhetorically tagging him to allegations on Mr. Garg. *See* MTD. at 11 (citing Cons. Compl. ¶ 19 ("CEO Garg finally effected his self-serving desire [] with the help of General Counsel Calamari"); *Id.* at ¶ 39 ("[Mr. Garg's conduct], aided by General Counsel Calamari"); *Id.* at ¶ 179 ("CEO Garg, with the assistance of General Counsel Calamari")). In places where Plaintiff purports to elaborate on Mr. Calamari's actions, she has not asserted how those actions amounted to a breach of any duty and were not an employee doing his job. *See* MTD. at 12 (arguing that Plaintiff has not asserted how Mr. Calamari attempting to dissuade mass executive resignations amidst an imminent going public transaction and putting an employee on an

administrative leave were a breach of fiduciary duty and not Mr. Calamari performing his job duties). Plaintiff ignores these arguments completely.

For these reasons, the Opposition does not save the derivative claim from dismissal.

## II. THE OPPOSITION DOES NOT SAVE THE DEFAMATION CLAIM

Plaintiff's reliance in the Opposition on inapplicable law and conclusory assertions to save her defamation claim against Mr. Garg is similarly misplaced and lacks substance. It represents Plaintiff's continuous pattern of ignoring arguments that she does not know how to address.[2]

### A. Mr. Garg Has Not Selectively Addressed the Allegedly Defamatory Statements

First, Plaintiff erroneously asserts that Mr. Garg "only addresses certain of the alleged defamatory statements." Opp. at 34. This is simply untrue. In the Motion to Dismiss, Mr. Garg starts his argument by gathering all the allegedly defamatory statements and grouping them into the "Black Box Statements" or the "Other Statements." MTD. at 12-13 ("Plaintiff had asserted that the following statements by Mr. Garg were defamatory: (i) Mr. Garg's email to the Board and Company executives on December 9, 2021 memorializing the Board's agreement that the Company needed a COO and that the Company's current metrics are a black box (the "Black Box Statements"), (ii) that Plaintiff was the leader of a coup, attempted to get rid of Mr. Garg, had resigned, abandoned the Company and sought to extort money from the Company, that her title should have been the Cheerleader in Chief, and that she has been fudging the numbers related to the Company's labor costs (collectively, "Other Statements")). Mr. Garg then explains why Plaintiff has failed to plead that each of these statements were defamatory. *Id.* at 13-15.

---

[2] In footnote seven (Opp. at 4), Plaintiff confirms that this claim is only against Mr. Garg, and not Mr. Calamari.

To the extent that Plaintiff is asserting that Mr. Garg has only addressed his December 9, 2021 "email" to the Board and not the statements that he made to the Board at the meeting that was memorialized in that email, Plaintiff is wrong there too.  Mr. Garg has clearly addressed that point in the Motion to Dismiss, arguing that "[E]ven considered in the context and in substance, assuming Plaintiff alleged that Mr. Garg told the Board or other executives that the Company needed a COO, this is not a statement of false.  It is an opinion, one the Board agreed with."  MTD. at 13.  It is Plaintiff who failed to respond to this crucial point; that the statement was an opinion.

**B.  It is Plaintiff, Not Mr. Garg, Who Selectively Addresses Opposing Arguments**

Second, it is Plaintiff, not Mr. Garg, who selectively addresses opposing arguments.  In the Motion to Dismiss, Mr. Garg went on at length to refute each of the "Other Statements."  *See* MTD. at 14-15.  Mr. Garg asserted how each of those statements were conclusory or otherwise a statement of opinion.  *See id*.  Plaintiff ignores all of this and addresses only one of the Other Statements, which is that Plaintiff had been "fudging the numbers."  Opp. at 35.  She extensively repeats her earlier pleadings that Mr. Garg knew of the falsity of this statement because she had consistently reported the correct numbers to him.  *Id*.

What is fatal to her argument is the complete lack of facts, both in the Consolidated Complaint and Opposition, supporting an inference that Mr. Garg believed or had a reason to believe that her figures were correct.  *See* Opp. at 35; *see* Cons. Compl. ¶ 224.  Contrary to Plaintiff's argument in the Opposition that she is not required to plead such a belief, those facts are central to her claim that Mr. Garg knew he was speaking false when he allegedly said Plaintiff was fudging the numbers.  Having realized this fatal flaw in her argument, Plaintiff belatedly states in the Opposition that "the CAC relates – as it is true – that Garg knew that Pierce's reports were wholly correct, but intentionally chose to lie about them."  Opp. at 35.  But Plaintiff has not made any such assertion in the Consolidated Complaint and she does not include a cite for this

proposition in the Opposition.  Opp. at 35.  At best, Plaintiff only alleges that she reported correct numbers, not whether Mr. Garg believed those to be true.  *See* Cons. Compl. ¶ 224.  This is a much different allegation and does not save her claim.

### C.   Even if Mr. Garg's Statements Were Defamatory, Plaintiff Has Not Overcome the Qualified Privilege That Protects Them

In the employment context, it is a well-established principle that qualified privilege protects statements made by an employer/supervisor to management and coworkers in connection with an employee's performance, unless the defendants were motived by "actual malice."  MTD. at 15 (citing *Kasachkoff v. City of New York*, 485 N.Y.S.2d 992, 995-96 (1st Dep't 1985)).  Plaintiff claims that Mr. Garg was motivated by actual malice because he had specific knowledge of the falsity of his statements.  *See* Opp. at 36.  But both in the Consolidated Complaint and Opposition, she has not pled any facts supporting such knowledge, other than conclusorily asserting it.  *See* MTD. at 14 (citing Cons. Compl. ¶¶ 21, 221).

Plaintiff also claims that "post-termination statements […] do not fall under any of the asserted bases for a qualified privilege."  Opp. at 36.  She does not cite any law for this proposition. *Id*.  Nothing in New York law carves out post-termination statements from qualified privilege that otherwise applies to communications regarding the character of an employee.  New York law is clear that qualified privilege applies to communication made between persons upon a subject in which both have interest.  *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009).  Indeed, New York courts have found that qualified privilege extends to communications made post-termination between former and prospective employers about the character of a former employee. *See, e.g.*, *Amadsau v. Bronx Lebanon Hosp. Center*, No. 03-Civ-6450 (LAK) (AJP), 2005 WL 121746, *13 (S.D.N.Y. Jan. 21, 2005).  Plaintiff has not overcome qualified privilege.

For these reasons, Plaintiff's opposition to Individual Defendants' Motion to Dismiss the defamation claim is insufficient to save the claim from dismissal.

## III.   THE OPPOSITION DOES NOT SAVE THE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The extremely strict standard that New York courts apply to sustain a claim for intentional infliction of emotional distress is clear and Plaintiff did not dispute Individual Defendants' recitation of the standard, although she attempts to apply it in a manner inconsistent with New York law.  *See* MTD. at 16-17; *see* Opp. at 44.

### A.   The Cases on which Plaintiff Relies Do Not Support Her Claim

In the Opposition, Plaintiff cites several cases (*Bender*, *Levine*, *Flatley*, *Halio*, *Flamm*) to argue that the applicable standard for an emotional distress claim is not as strict as Individual Defendants claim, and therefore Individual Defendants' alleged retaliatory acts against her are sufficient to meet this standard.  Opp. at 44-45.  However, none of these cases were in the employment context, and Plaintiff mischaracterizes them.

In *Bender*, the plaintiff there filed a claim against the City of New York for police misconduct.  She claimed that the defendant officer, among others, hit her in the mouth.  *See Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996).  In other words, the conduct involved was *battery*, which New York courts typically require to sustain an emotional distress claim.

*Levine* is similar.  There, the claim was against a police officer who maliciously charged the plaintiff with an offense that could have resulted in the plaintiff's imprisonment.  *See Levine v. Gurney*, 149 A.D.2d 473, 473 (2d Dep't 1989).  The *Levine* court held that, given the gravity of the consequence of the malicious charge (imprisonment), such a charge *may* rise to the level of outrageous conduct *if* the officer was guilty of falsely accusing the plaintiff.  *Id.* (emphases added).

Turning to *Flatley*, Plaintiff misrepresents the case as if the court there held that mere "hang-up" telephone calls were sufficient to sustain an emotional distress claim.  Opp. at 34.  The conducts in *Flatley* were far more outrageous.  Specifically, the defendant there made repeated phone calls to the plaintiff's house only to hang up as soon as someone answered, and as a consequence, *pleaded guilty* to harassment.  *See Flatley v. Hartmann*, 138 A.D.2d 345, 346 (2d Dep't 1998) (emphasis added).  *Notwithstanding the conviction* for harassment, the defendant continued to make the same type of hang up calls.  *Id.* (emphasis added).  The *Flatley* court considered all these circumstances to hold that the emotional distress claim was actionable.  *Id.*

Similarly, Plaintiff oversimplifies the conduct involved in *Halio* as mere "taunting letter from former boyfriend, boasting of marriage."  Opp. at 34.  There, the defendant kept company with the plaintiff for two years with a view to their marriage.  *Halio v. Lurie*, 15 A.D.2d 62, 63-64 (2d Dep't 1961).  The defendant then married another woman without the plaintiff's knowledge, who discovered it by accident.  *Id.*  The defendant then started sending derogatory, insulting and intimidating mails to the plaintiff.  *Id.*  The *Halio* court weighed the damages caused by the insult and indignity, the hurt to the feeling, mental suffering, and the fright amplified by the intimacy of the relationship between the parties, not just "taunting letters."  *Id.* at 66-67.

Lastly, Plaintiff mischaracterizes the conduct in *Flamm* as mere "driving too closely and making threatening looks."  Opp. at 34.  In fact, the plaintiff there was "perpetually haunted"; "greeted at every turn by baleful looks [] and derisive laughter"; could not drive his car without the imminent threat of a collision; and was troubled at all hours by telephone calls followed only by silence.  *Flamm v. Van Nierop*, 56 Misc.2d 1059, 1061 (Westchester Cty. S.Ct. 1968).

**B.  It is Extremely Difficult to Sustain an Intentional Infliction of Emotional Distress Claim in the Employment Context**

Furthermore, none of the above cases were in the employment context.  In the employment context, New York courts have routinely dismissed claims for intentional infliction of emotional distress based on harassment, disrespectful or disparate treatment, hostile environment, discriminatory comments, poor performance reviews, insults and slurs, being humiliated in front of coworkers, or being terminated, as Plaintiff claims here.  MTD. at 18-19 (citing *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, No. 00-civ-5433 (GBD), 2001 WL 180055, at *1 (S.D.N.Y. Feb. 22, 2001); citing *Realmuto v. Yellow Freight Sys., Inc.*, 712 F. Supp. 287, 289 (E.D.N.Y. 1989) (dismissing an emotional distress claim based on termination and discrimination as insufficient); citing *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 336-67 (S.D.N.Y. 2010) (dismissing an emotional distress claim based on humiliation and discrimination as insufficient); citing *Clayton v. Best Buy Co., Inc.*, 851 N.Y.S.2d 485, 487 (1st Dep't 2008) (dismissing an emotional distress claim based on sexual remarks as insufficient)).

### C.  The Recent New York Case That Plaintiff Submitted (ECF No. 64) is Irrelevant

On March 14, 2023, Plaintiff wrote a letter to this Court submitting a recent New York state court decision.  ECF No. 64 (submitting *Brown v. New York Design Center, Inc.*, No. 2022-01472, 2023 WL 2417772 (1st Dep't 2023)).  In that letter, Plaintiff stated that the decision confirms that "extreme and outrageous conduct" is not an element for a claim for negligent infliction of emotional distress, and shows "liberal strictures for amendments and conforming the pleadings to the facts." *Id*.

The decision is utterly unhelpful.  First, it is irrelevant, because it concerns "negligent" infliction of emotional distress, which is not a cause of action here.  Second, even if it was, the claim would still fail, because Plaintiff has not pled a "special duty" of Individual Defendants directly owed to her, which is a necessary element of the claim. *See, e.g., Meadows v. Planet Aid, Inc.*, 676 F. Supp. 2d 83, 98 (E.D.N.Y. 2009); *see Kelly v. Chase Manhattan Bank*, 717 F. Supp.

277, 235 (S.D.N.Y. 1989).  Furthermore, New York courts rarely accept a claim for negligent infliction of emotional distress in the employment context, usually finding it to be barred by New York's workers' compensation law.  *See, e.g., Rodriguez v. Dickard Widder Indus.*, 56 N.Y.S.3d 328, 331 (2d Dep't 2017).

For these reasons, Plaintiff's opposition to the Motion to Dismiss the claim for intentional infliction of emotional distress is insufficient to save the claim from dismissal.

## IV.   THE OPPOSITION DOES NOT SAVE THE CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT

As detailed below, Plaintiff's opposition to the Motion to Dismiss the tortious interference claim is inadequate, ambiguous and confusing.  It does not substantively address, let alone "oppose," Individual Defendants' arguments.

### A.  Plaintiff Does Not Address Individual Defendants' Main Arguments

In the Motion to Dismiss, Individual Defendants have argued that Plaintiff must plead layers of exceptions to avoid dismissal of the tortious interference claim.  MTD. at 19-21.  The exceptions were that: (a) at-will employees such as Plaintiff cannot maintain a claim for tortious interference with their employment contracts unless they can establish that a "third-party" used wrongful means to effect the termination (MTD. at 20) (citing *Okoi v. El Al Israel Airlines*, 378 F.App'x 9, 11 (2d Cir. 2010)), (b) co-employees of the terminated employee, such as Individual Defendants, are not considered a "third-party" unless the plaintiff has shown that the co-employee has "exceeded the bounds of his or her authority" (MTD. at 21) (quoting *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (E.D.N.Y. 1996).

Individual Defendants have argued that Plaintiff has not pled these exceptions.  MTD. at 19-21.  She has not pled that they were acting outside the scope of their authorities when they allegedly procured Plaintiff's termination, and therefore, she has not pled that Individual

Defendants could be considered a "third-party."  MTD. at 21.  As such, she cannot maintain a claim for tortious interference with her at-will employment contract with Better.  MTD. 19-21.

Plaintiff addresses none of these points.  Instead, she provides a laundry list of cases that purportedly supports her position, but does not apply those cases in any way.  *See* Opp. at 42-43 (citing *Cohen v. Davis*, 926 F. Supp. 399, 403 (S.D.N.Y. 1996); *Guard-Life Crop. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y. 2d 183, 196 (N.Y. Ct. App. 1980); *BIB Constr. Co. Inc. v. City of Poughkeepsie*, 612 N.Y.S. 2d 283, 285 (3d Dep't 1994); *Bank of New York v. Berisford Int'l*, 190 A.D. 2d 622, 622 (1st Dep't 1993); *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 78 (S.D.N.Y. 1995); *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 63 (2d Cir. 1988); *G.D. Searle & Co. v. Medicore Comm., Inc.*, 843 F. Supp. 895, 910-11 (S.D.N.Y. 1994)).[3]  Her extensive citation of cases ends with a conclusory statement: "Just as the defendants in *Cohen*, Garg and Calamari made numerous false and misleading reports, statements, and characterizations concerning Pierce: all so as to result in her unwarranted termination."  Opp. at 43.

By contrast, Individual Defendants have demonstrated Plaintiff's inadequate pleading by closely examining it against the pleading in a comparable New York case where the court found that the pleading was insufficient to survive a motion to dismiss.  *See* MTD. at 21-22 (comparing Plaintiff's pleading with *Marino v. Vunk* (39. A.D.3d 399, 340 (1st Dep't 2007)), where the First Department found that the plaintiff's pleading of the defendants' malicious acts against her were conclusory and insufficient to place the defendant's actions outside of scope of their employment).

### B.  Plaintiff Actually Agrees with Individual Defendants That They Were Acting in the Scope of Their Authorities

---

[3] Courts in these cases have held that the "third party" element was satisfied because the plaintiffs there had adequately pled that the defendants were acting outside their authority.  Here, Plaintiff has not made that showing.

The key issue regarding the tortious interference claim is whether Individual Defendants were acting within the scope of authorities when they allegedly effected her termination.  If they were, they would not be considered "third parties" who could tortiously interfere with an at-will employment contract.  *See Okoi*, 378 F.App'x at 11; *see Finley*, 79 F.3d at 1295.

Individual Defendants have argued that the Consolidated Complaint does not allege that they were acting outside the scope of their employment (MTD. at 21-23), and Plaintiff apparently agrees.  *See* Opp. at 39.  In the context of trying to hold Better liable, Plaintiff argues extensively that Mr. Garg's statements are within the scope of his employment:

> "In making this argument, Better fatally ignores the fact that Garg is Better's CEO.  He speaks for Better as a matter of fact and law.  In this case, the complained of statements are those of a company's CEO speaking -- albeit falsely -- about the professional competence of an employee of the same company who reported directly to him, and it is not relevant whether such statements are in the best interest of Better or not.  **This is clearly within the scope of his employment**."

*Id.* (emphasis added)*; see also id.* at 36, n. 21 ("In addition, as Garg 'may be said to have made the allegedly false statements **within the scope of his employment**[,]") (emphasis added); *Id*. at 38 ("[a]n act is considered to be within the scope of employment if it is performed while the employee is engaged generally in the business of his employer, or if his act may be reasonably said to be necessary or incidental to such employment") (quoting *Holmes v. Gary Goldberg & Co., Inc.*, 40 A.D.3d 1033, 1034 (2d Dep't 2007).  Thus, it appears there is no disagreement between Individual Defendants and Plaintiff that Individual Defendants were not third parties for the purpose of the tortious interference claim, and so the claim must fail.

### C.  Plaintiff Ignores Mr. Garg's Argument That the Tortious Interference Claim is Duplicative of the Defamation Claim against Him

Finally, Plaintiff completely ignores another important argument in Individual Defendants' Motion to Dismiss: that the tortious interference claim as against Mr. Garg is duplicative of the defamation claim against him.  As Mr. Garg has argued in the Motion to Dismiss, the underlying

factual allegations for the tortious interference claim against him are identical to those underlying the defamation claim against him.  MTD. at 23 (citing Cons. Compl. ¶¶ 249, 251-52).  New York courts dismiss causes of action that are "indistinguishable from a defamation cause of action."  MTD. at 23 (citing *Ganske v. Mensch*, 480 F. Supp. 3d 542, 556 (S.D.N.Y. 2020); *Balderman v. Am. Broad. Cos.*, 292 A.D.2d 67, 76 (4th Dep't 2002)).  Plaintiff ignores this point.

As such, Plaintiff's opposition to Individual Defendants' Motion to Dismiss the tortious interference claim is insufficient to save the claim from dismissal.

## **CONCLUSION**

For the foregoing reasons, Individual Defendants respectfully request that the Court dismiss the Consolidated Complaint in its entirety as against them with prejudice.


Dated:  New York, New York
March 28, 2023

Respectfully submitted,

KOBRE & KIM LLP

/s/ Steven W. Perlstein
Steven G. Kobre
Steven W. Perlstein
Michael Bahn

800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.kobre@kobrekim.com
Steven.perlstein@kobrekim.com
Michael.bahn@kobrekim.com

*Attorneys for Defendants Vishal Garg and Nicholas Calamari.*