UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARAH J. PIERCE, Individually, and on Behalf
of Better Holdco, Inc., and all Shareholders of
Better Holdco, Inc.,

                         Plaintiff,

          -against-

BETTER HOLDCO, INC., VISHAL GARG,
and NICHOLAS CALAMARI,

                       Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  09/29/2023

22 Civ. 4748 (AT)

**ORDER**

ANALISA TORRES, District Judge:

     Plaintiff, Sarah J. Pierce, formerly an employee of Defendant Better Holdco, Inc.

("Better"), brings this action against Better, Vishal Garg, Better's founder and chief executive

officer, and Nicholas Calamari, one of Better's two general counsels, alleging that Defendants

retaliated against her for accusing them of violating securities and employment laws.  Am.

Compl. ¶ 1, ECF No. 52.  Pierce asserts retaliation claims against Better pursuant to New York

Labor Law § 740, the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), and the Dodd-Frank

Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), together with

claims of defamation and breach of contract.  *Id.* ¶¶ 1, 25.  Against Garg and Calamari, Pierce

asserts defamation, intentional infliction of emotional distress, and tortious interference with

contract causes of action, and—on behalf of Better and its shareholders—a derivative breach of

fiduciary duty claim.  *Id.* ¶ 25.  Defendants move to dismiss Plaintiff's amended complaint for

failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Garg & Calamari

Mot., ECF No. 55; Better Mot., ECF No. 58.  For the reasons stated below, Defendants'

motions are GRANTED in part and DENIED in part.

## BACKGROUND[1]

Better is a "digital mortgage company which operates an online platform for mortgage originations and related services."  Am. Compl. ¶ 27.  Garg is the founder and CEO of Better.  *Id.* ¶ 28.  Calamari is one of Better's two general counsels.  *Id.* ¶ 29.

Around August 2016, Pierce was employed by Better as a salesperson.  *Id.* ¶ 33.  In August 2020, she was promoted to executive vice president of sales, operations, and customer experience.  *Id.* ¶ 34.  This was the "functional equivalent of [Better]'s [c]hief [o]perating [o]fficer."  *Id.*  Pierce reported directly to Garg.  *Id.*

In May 2021, Better announced that it planned to go public by the fourth quarter of 2021 through a special purpose acquisition company ("SPAC") transaction[2] and filed a Form S-4 with the Securities and Exchange Commission describing its plan.  *Id.* ¶ 37.  Better was to merge with a shell company called Aurora Acquisition Corporation.  *Id.*  A SoftBank Group subsidiary and Novatar Capital committed to invest a total of $1.7 billion in the merged company.  *Id.*

In November 2021, Better was "losing money and was in a dire, and worsening, financial condition."  *Id.* ¶ 47.  Garg, who had earlier that year instructed executives to "hire hundreds of additional personnel," directed Pierce "to develop a plan to reduce the company's workforce."  *Id.* ¶¶ 45, 48.  Garg told Pierce that he wanted to cut twenty percent of Better's workforce by November 19, 2021.  *Id.* ¶ 48.  Pierce responded that a two-week timeframe was

---

[1] The following facts are taken from the amended complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 398 (2d Cir. 2015).

[2] In lieu of a traditional initial public offering, a company can go public through what is formally known as a "de-SPAC transaction."  *See Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 365 (E.D.N.Y. 2022).  The SPAC is a shell company that goes public through an initial public offering, and the company's sole purpose is to raise funds.  *Id.*  Then, the SPAC acquires the private company, issuing shares to the private company's shareholders, after which the SPAC "assumes the private company's name and operations."  *Id.*  The result leaves behind "a single publicly traded company."  *Vogel v. Boris*, No. 20 Civ. 9301, 2023 WL 5471400, at *2 (S.D.N.Y. Aug. 24, 2023).

insufficient to "complete critical steps required by law." *Id.*  Better's human resources and legal teams informed Garg that a mass termination would trigger the California Worker Adjustment and Retraining Notification Act ("WARN"), Cal. Lab. Code § 1400 *et seq.*, and the federal WARN Act, 29 U.S.C. § 2100 *et seq.*, requiring the company to give sixty days' notice or pay sixty days of compensation. *Id.* ¶ 50.  Garg disregarded the advice, insisting on a faster termination and refusing to pay the required compensation. *Id.* ¶ 51.

On December 1, 2021, Garg held a Zoom call in which he fired over 900 employees (the "Layoff"). *Id.* ¶ 54.  Before the video conference, Garg had rehearsed with a script that did not mention performance as a reason for the termination. *Id.* ¶ 53.  But, on the call Garg claimed that the now-terminated employees "stole from the company." *Id.* ¶ 54.  His allegation provoked significant backlash from Better employees and the public. *Id.* ¶¶ 55, 61. Although Garg had been involved in the process of reducing the workforce and knew that employee performance had not factored into the Layoff decision, *id.* ¶ 68, he claimed that it did and that he was unaware that "middle performers" had been fired, *id.* ¶ 62.  Pierce objected to these claims in internal meetings following the Zoom call and, on December 6, 2021, said to Garg, "You made the decision to violate the WARN Act.  You made the decision to fire everyone [three] weeks before Christmas." *Id.* ¶¶ 80, 84.  The next day, Pierce reiterated the comments during a town hall with senior leadership. *Id.* ¶¶ 81–83.

Pierce also objected to other misrepresentations by Garg.  According to Pierce, Garg told Better's board of directors (the "Board") around December 1, 2021, that Better "would achieve profitability by the end of the first quarter 2022." *Id.* ¶ 95.  Pierce's analysis, presented to Garg and Better's senior leadership team, suggested that Better could not meet that goal "until, at the earliest, the third quarter of 2022," and likely not in 2022 at all. *Id.*  Pierce "confronted" Garg about this, and he "dismissed her concerns." *Id.* ¶ 96.  In addition, Pierce

alleges that Garg also made false statements to the Board about the efficacy of Better's "proprietary electronic origination platform." *Id.* ¶¶ 97–98.  Finally, Pierce "expressly raised her concerns about . . . misrepresentations" in an amended Form S-4 filed in August 2021 with the SEC.  *Id.* ¶ 43.  In that form, Better claimed that  "approximately 30% of our [direct-to-consumer] funded loans were generated from organic internet traffic," in other words, from persons who visited Better's website without paid marketing.  *Id.* ¶ 42.  Pierce had provided data to Garg and Calamari suggesting that the actual figure did not exceed twelve percent, and raised this misrepresentation with them weekly beginning in November 2021.  *Id.* ¶ 43.

After a December 8, 2021 Board meeting, Garg emailed senior leadership, except Pierce, stating that the Board planned to hire a new chief operating officer and president.  *Id.* ¶ 86.  Garg also wrote that "[t]he [B]oard currently feels the metrics of the company are a black box and need to be managed more carefully."  *Id.* ¶ 87.  Pierce was forwarded the email, *id.* ¶ 85, and interpreted these statements to signal that she was being replaced.  *Id.* ¶¶ 86, 90.

Around the same time, fifteen senior employees informed Pierce, Calamari, and two other members of Better's executive team that they had "decided to write a letter to the Board" stating their intent to resign if Garg did not take an immediate leave of absence.  *Id.* ¶ 100.  Pierce was supportive of the letter.  *Id.* ¶ 102.  Calamari was concerned that the letter, if sent to the Board, "could threaten . . . Garg's position as the CEO and could give Softbank a reason to withdraw their capital commitment to the SPAC [t]ransaction" and urged the letter writers to not send the letter.  *Id.* ¶ 103.

On December 9, 2021, Pierce met directly with at least four of Better's Board members, informing them that Garg was responsible for the "business decisions that got the company into the loss-making position it was in," recommending that he take an immediate step back and that the chief financial officer, Kevin Ryan, step in.  *Id.* ¶¶ 105–06.  Other executives, including

4

Calamari, agreed. *Id.* ¶ 107. By email dated December 10, 2021, Paula Tuffin, Better's other general counsel, informed employees that "Garg would be taking time off" and that Ryan would be leading the company in the interim. *Id.* ¶ 109.

Following the change, Pierce spoke with Ryan, who confirmed that the search for a chief operating officer and president would continue, that Garg had "thrown her under the bus," and that Pierce was being "layered." *Id.* ¶¶ 111, 113. Pierce was upset but agreed to be helpful to Better in the transition. *Id.* ¶ 115. In a December 16, 2021 conversation, Pierce told Ryan that she was "not resigning," but wanted to establish a role within the company after she was replaced. *Id.* ¶ 117. Ryan acknowledged this and suggested that Pierce send him a transition proposal. *Id.* ¶ 118.

By email dated December 17, 2021, Pierce sent a transition proposal to Ryan in which she stated that she would "use the information in [her] possession to be an advocate of the company and not an adversary." *Id.* ¶ 119. Upon receipt, Ryan informed Pierce that Tuffin would respond to her about the proposal. *Id.* ¶ 122. On December 19, 2021, Tuffin told Pierce that she wished to interview her about the "information" she referenced in the email. *Id.* ¶ 123. Tuffin connected Pierce with Better's outside counsel to discuss the terms of her transition. *Id.* ¶¶ 126–27. In a conversation with Pierce's attorney on January 3, 2022, Better's outside counsel referred to Pierce's transition proposal as a "resignation." *Id.* ¶ 132. Pierce "immediately" responded that she "did not resign and did not intend to resign." *Id.*

Garg returned to work on January 3, 2022. *Id.* ¶ 133. Ryan told Pierce that Garg wanted to "get her out." *Id.* ¶ 134. Garg, in a one-on-one meeting with Pierce, asked her if she wanted "to stay or leave." *Id.* ¶ 138. Garg also asked Pierce if she had "led" the fifteen employees who threatened to write the letter and whether she hoped to be "put in charge if [he] was gone." *Id.* ¶ 139. Although Pierce continued working after that meeting, *id.* ¶ 144, Pierce, through her

attorney, informed Better's outside counsel that she believed "she was being retaliated against due to her repeatedly speaking up." *Id.* ¶ 143.

In a January 6, 2022 phone conversation, Ryan informed Pierce that she was being placed on administrative leave because she had raised claims of retaliation. *Id.* ¶ 145. Pierce was immediately locked out of her computer and email. *Id.* ¶ 146. In subsequent text messages, Ryan told Pierce that Calamari made the decision to put her on leave. *Id.* ¶ 148. Ryan recommended that Pierce hold off on "comms until it is clear what [the] long-term plan is." *Id.* ¶ 150.

Tuffin interviewed Pierce on January 12, 2022. *Id.* ¶ 151. During the interview, Pierce stated that Garg's handling of the Zoom layoff was consistent with how he had misled the Board about Better's profitability. *Id.*

By email dated January 15, 2022, Better's outside counsel informed Pierce that Better would "process[] . . . her resignation" and that her last day would be January 18, 2022. *Id.* ¶¶ 15, 152, 154(c)–(d). Pierce "immediately" emailed Tuffin, explaining that she had not tendered her resignation. *Id.* ¶¶ 16–17. Pierce states that Tuffin then extended Pierce's leave by two weeks to February 4, 2022. *Id.* ¶¶ 18, 154(d). On February 4, 2022, Pierce was fired. *Id.* ¶¶ 19, 154(d).

Following Pierce's firing, both Pierce and Better have taken action against each other. By email dated March 30, 2022, Better prematurely informed Pierce that her loans had come due, although the loans would not in fact be due for sixty-five more days. *Id.* ¶ 160. In the same email, Better proposed repurchasing Pierce's shares to settle the loan. *Id.* ¶ 161. Pierce claims that she "ultimately" accepted Better's proposal. *Id.* ¶ 163. But, by letter dated July 29, 2022, Better formally demanded full payment of the notes. *Id.* ¶ 165. These loans are the subject of a related lawsuit that Better commenced on October 11, 2022 (the "Loan Litigation").

*Better Holdco Corp. v. Pierce*, No. 22 Civ. 9580 (S.D.N.Y.); *see* Am. Compl. ¶ 170.  Better did not take such steps with respect to most former employees.  *Id.* ¶ 166.  On November 9, 2022, a Better press spokesperson stated that Better was "simply seeking to enforce the notes in accordance with their terms" and that Pierce "had no trouble buying and maintaining a $11.5M ski chalet in Aspen at the same time she was unable to pay the company back the loan she owes."  *Id.* ¶ 228.  Since Pierce's firing, Garg has stated to the Board and Better's senior leadership that Pierce had been "cooking the books" and "fudging the numbers" by misrepresenting the cost of loan processing.  *Id.* ¶¶ 171, 223.

On May 28, 2022, Pierce filed a Form TCR with the SEC in order to register as a whistleblower.  *Id.* ¶ 164.  On June 1, 2022, Pierce filed a complaint with the Occupational Safety and Health Administration.  *Id.* ¶ 1 n.1.  On June 7, 2022, Pierce filed the instant action, Compl., ECF No. 1, and amended her complaint on December 9, 2022, Am. Compl.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  The Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  That tenet, however, does not apply to legal conclusions.  *Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

I.    <u>New York Labor Law § 740 Retaliation</u>

Pierce brings a claim against Better under Labor Law § 740, which prohibits an employer from retaliating against an employee for certain practices.  The law was amended on January 26, 2022, to alter the definition of retaliation and to expand the scope of the prohibition.  *See* Act of Oct. 28, 2021, 2021 Sess. Law News of N.Y. Ch. 522 (S. 4394-A) (McKinney's) (amending the labor law in relation to retaliatory actions by employers).  Prior to the amendment, the subsection only prohibited retaliation if the employee disclosed an actual violation of law that "presents a substantial and specific danger to the public health or safety." *Id.* § 2(a); *see New York ex rel. James v. Amazon.com, Inc.*, 550 F. Supp. 3d 122, 129 (S.D.N.Y. 2021).  The amended law prohibits an employer from "tak[ing] any retaliatory action against an employee . . . because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee *reasonably believes* is in violation of law, rule or regulation," whether or not the violation relates to public health or safety.  N.Y. Lab. Law § 740(2)(a) (emphasis added).  Labor Law § 740 requires, therefore, that Pierce show (1) retaliatory action, (2) activity protected by the statute, and (3) a causal link between the two.  *See Thacker v. HSBC Bank USA, N.A.*, No. 22 Civ. 7120, 2023 WL 3061336, at *6 (S.D.N.Y. Apr. 24, 2023).

A.    Retaliatory Action

Better contends that its termination of Pierce's employment is governed by the old version of Labor Law § 740 and is, therefore, not actionable.  Better Mem. at 16–18, ECF No. 59.  Better argues that because it informed Pierce that it would "process[] . . . her resignation"

on January 15, 2022, she was fired on that date for the purposes of her claim.  Am. Compl.

¶¶ 15–16, 154(c); *see* Better Mem. at 17.  If the employee's "actual termination . . . flows as an

inevitable consequence" from the earlier notification, then a cause of action for wrongful

termination accrues on the date of notification, not the date of termination.  *Dykstra v. Wyeth*

*Pharm., Inc.*, 454 F. App'x 20, 22–23 (2d Cir. 2012) (summary order).[3]  But, Pierce claims that,

in response to Better's January 15, 2022 email, she "immediately" informed the company that

she was not resigning and that her leave was extended by two weeks as a result.  Am. Compl.

¶¶ 17–18.  Pierce further alleges that she was not notified of her actual termination until

February 4, 2022.[4]  *Id.* ¶ 19.  Drawing all inferences in Pierce's favor, Pierce's firing did not

"flow[] as an inevitable consequence" of the January 15, 2022 email because Pierce explicitly

refuted Tuffin's claim that Pierce had resigned.  Pierce, therefore, has plausibly alleged that

Better terminated her employment on February 4, 2022, after the amended Labor Law § 740

took effect.

Better next argues that its post-termination retaliatory actions—namely, Garg's

statements that Pierce incorrectly reported internal numbers, the premature calling of the loans

that Better made to Pierce, and the Loan Litigation—are not covered by the statute.  Better

Mem. at 18–20.  Labor Law § 740 defines "retaliatory action" to include "actions or threats to

take such actions that would adversely impact a former employee's current or future

---

[3] This case law presumes that the plaintiff has a cause of action at both notification and termination.  The Court shall not now decide whether a cause of action that did not exist at notification can accrue at termination.

[4] Better argues that Pierce's original complaint conceded that the January 15, 2022 email was a notice of termination and characterizes Pierce's amendment as "strategic gamesmanship."  Better Mem. at 17.  The Court is unconvinced.  Generally, "a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true."  *Palm Beach Strategic Income, LP v. Salzman*, No. 10 Civ. 261, 2011 WL 1655575, at *6 (E.D.N.Y. May 2, 2011).  Some courts have referenced the original complaint where a plaintiff "directly contradicts facts set forth in his original complaint."  *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ. 400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (citation omitted).  Pierce's omission of certain email text and addition of allegations to clarify her position that she was not terminated on January 15, 2022, is not a direct contradiction.  *See Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 266 (S.D.N.Y. 2008).

employment." N.Y. Lab. Law § 740(1)(e).  Better argues that, pursuant to Second Circuit

precedent interpreting federal civil-rights law,[5] an employer's post-employment action can

constitute retaliation only if it affects "tangible *future* employment objectives," and Pierce had

not alleged such an effect.  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.

1997); *see* Better Mem. at 19.

      In *Wanamaker*, the Circuit held that a plaintiff could state a claim for retaliation if the

company "blacklists the former employee . . . or sullies the plaintiff's reputation," because a

"wholesome reputation" is relevant to any future employment objectives.  108 F.3d at 466

(quotation marks omitted).  The Circuit did not require the plaintiff to show a specific

employment objective affected by the retaliation.  Pierce has pleaded that Better's CEO

"publicly and repeatedly assert[ed]" that Pierce was "cooking the books" and misrepresented

the price of a loan.[6]  Am. Compl. ¶¶ 171–72.  At the motion-to-dismiss stage, it is reasonable to

infer that such alleged misconduct by a former employer "would adversely impact" future job

prospects under Labor Law § 740(1)(e)(ii).

      By contrast, Better's email informing Pierce that it intended to collect on the loans and

the filing of the Loan Litigation do not raise the same inference.  Pierce admits that Better's

request for repayment of the loans in March 2022 was made by private email.  Am. Compl.

¶ 160.  And, on the facts pleaded, the Loan Litigation "does not impugn her professional

reputation in any way."  *Fehn v. Grp. Long Term Disability Plan for Emps. of JP Morgan

Chase Bank*, No. 07 Civ. 8321, 2008 WL 2754069, at *6 (S.D.N.Y. June 30, 2008).  Therefore,

---

[5] This section of the Labor Law has not yet been construed by the New York state courts.  Although it is not
decided that federal case law should govern, Pierce does not contest Better's appeal to federal law.  Pl. Opp. at 17–
18.  Courts have examined case law interpreting federal statutes when interpreting similarly worded state statutes.
*See, e.g.*, *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 98–99 (S.D.N.Y. 2020).

[6] Better asserts that Pierce has found employment.  Better Mem. at 19 n.16.  This allegation, which is not in
Pierce's complaint, would not vitiate all negative employment effects on Pierce's reputation by Better's alleged
conduct.

Better's statements as to Pierce's purported misconduct are potentially actionable post-termination retaliation, but its efforts to collect on her loans are not.

### B.  Protected Activity

Better next argues that Pierce did not engage in the "kind of whistleblowing protected" under Labor Law § 740.  Better Mem. at 20–26.  The Labor Law protects employees from retaliation for "disclos[ing] or threaten[ing] to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation."  N.Y. Lab. Law § 740(2)(a).  An employee's complaint "need not specify the actual law, rule or regulation violated, although it must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct."  *Webb-Weber v. Cmty. Action for Human Servs., Inc.*, 23 N.Y.3d 448, 453 (2014).

Pierce alleges five separate acts of whistleblowing: (1) she informed Garg that the Layoff was about to violate and did violate the California and federal WARN Acts (the "WARN Acts Violation"), Pl. Opp. at 19–20; (2) she informed Garg that he had misrepresented to the public the functionality of the company's proprietary electronic platform (the "Platform Misrepresentation"), Am. Compl. ¶ 40; (3) she informed Garg that he stated in an email that the Board called Better's metrics a "black box" (the "Black Box Statement"), *id.*; (4) she informed Garg and Calamari that Better had exaggerated the "organic traffic" to Better's website in an SEC filing (the "SEC Filing Misrepresentation"), *id.*; and (5) she informed Garg that he had misrepresented to the Board and investors that Better would be profitable in the first quarter of 2022 (the "Profitability Misrepresentation"), *id*.  The Court shall address each act in turn.

### 1. The WARN Acts Violation

Better contends that Pierce did not allege that Better "intended to, or actually did, violate the WARN Acts." Better Mem. at 24. But, Pierce need only demonstrate reasonable belief, not an actual violation of law, N.Y. Lab. Law § 740(2)(a), and the amended complaint easily passes that bar. Pierce has pleaded that before the Layoff, Garg expressed his intent to violate the WARN Acts on multiple occasions. *See, e.g.*, Am. Compl. ¶ 51 ("Garg said, 'who cares, these people will never sue us.'"); *id.* ¶¶ 49–50 ("[Garg] instructed Pierce to ignore the advice of in-house and outside attorneys regarding the legal requirements."). Pierce also alleges that following the Layoff, she believed that the WARN Act was or would be violated. *See id.* ¶¶ 54, 62, 65, 70–71, 80 (alleging that Garg attempted to recast the Layoff as a performance decision and that Pierce expressed repeated concern about that decision); *id.* ¶ 82 (alleging that a finance executive "wanted to provide the full 60 days' pay mandated by the WARN Act"); *see also id.* ¶¶ 74, 77.

Better also argues that Pierce does not claim that "*she*, as opposed to others" raised these concerns. Better Mem. at 24 (emphasis in original). This is a selective reading of the amended complaint, which alleges that Pierce repeatedly informed Garg of the potential WARN Act Violations. *See* Am. Compl. ¶¶ 48–49, 51, 77, 80, 82–83.[7]

### 2. The Platform Misrepresentation

Pierce has not plausibly alleged that she reasonably believed that the Platform Misrepresentation was a violation of law. Pierce does not describe what the Platform Misrepresentation was, to whom it was made, or why it would be material. *Id.* ¶¶ 44, 97–98; *see Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 589–90 (S.D.N.Y. 2019).

---

[7] Pierce also has pleaded that she told the two general counsels of Better and members of Better's board of directors about the WARN Acts Violation. *See* Am. Compl. ¶¶ 74, 105, 151.

### 3.   *The Black Box Statement*

The Court reaches the same conclusion with respect to the Black Box Statement.  Pierce

may have thought that Garg's email contained a false statement, but the complaint is devoid of

facts indicating why she would believe that the email violated the law.  Am. Compl. ¶¶ 85–87,

90–92.

### 4.   *The SEC Filing Misrepresentation*

Pierce alleges that, beginning in November 2021 and weekly until she was fired, she

complained to Garg and Calamari about the SEC Filing Misrepresentation.  *Id.* ¶¶ 42–43.  She

also claims that Garg and Calamari "proceeded to publish the false and misleading data" and

"tout[ed] these misrepresentations" to the Board, potential investors, and the press.  *Id.* ¶ 43.

But, Pierce does not explain why the SEC Filing Misrepresentation was material, when the

misstatements to the Board and public occurred, and how these misstatements violated the law.

Even so, Labor Law § 740 protects employees who disclose a reasonable belief of a violation of

law to their supervisor.  Taking all facts in the complaint as true, Pierce's weekly complaints to

Garg and Calamari about the SEC Filing Misrepresentation constitute a course of conduct that

evinces a belief that Better violated the law.[8]

### 5.   *The Profitability Misrepresentation*

The Profitability Misrepresentation,[9] combined with Pierce's allegations that she and

Better's chief financial officer had provided Garg with data indicating that such a projection

was untrue, *id.* ¶ 95, and that Garg felt pressure not to jeopardize Better's plan to go public, *id.*

---

[8] Pierce's belief was reasonable:  "[K]nowingly misrepresent[ing] historical facts" can in certain circumstances give rise to a violation of the Securities Exchange Act of 1934.  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 97 (2d Cir. 2004).

[9] Pierce does not specifically allege when Garg made the Profitability Misrepresentation.  *See* Better Mem. at 23. But Pierce's specific allegations about her conduct in response to the Profitability Misrepresentation are sufficient, at the motion-to-dismiss stage, to give rise to the inference that he made those statements.  *See* Am. Compl. ¶¶ 84(3), 95, 105, 151, 153.

¶¶ 38, 47, 103, justify Pierce's reasonable belief that Garg's projection was knowingly false. And, Pierce's warnings to Garg, *id.* ¶¶ 84, 95–96, the Board, *id.* ¶ 105, and one of Better's general counsels, *id.* ¶ 153–54, support her claim that she believed that the Profitability Misrepresentation violated the law.

Therefore, Pierce has plausibly alleged that she engaged in protected activity by telling her supervisor about the WARN Acts Violation, the SEC Filing Misrepresentation, and the Profitability Misrepresentation.

### C.  Causation

Better argues that Pierce has failed to show that the retaliatory actions were related to her whistleblowing.  Better Mem. at 26–29.  Labor Law § 740 only bars an employer from taking retaliatory action "because" of protected activity; an employer can defend an action by demonstrating "that the retaliatory action was predicated upon grounds other than the employee's exercise of any rights protected by [the law]."  N.Y. Lab. Law § 740(4)(c).

Pierce has established a causal connection between her whistleblowing and Better's retaliatory acts, namely the termination and Garg's statements about her purported misconduct. Pierce alleges that she was a high-performing employee, Am. Compl. ¶¶ 33–35, 89; that she was outspoken about the misconduct at the company in the two months leading up to her firing, *see id.* ¶¶ 49, 51, 57, 77, 80, 83–84; that Garg admitted that he was trying to shift blame from himself, *id.* ¶¶ 70–71; that other executives in the company perceived that Garg had "thrown her under the bus," *see id.* ¶ 113; that Garg said that he needed to "get her out," *id.* ¶ 134; that Better placed her on administrative leave after she alleged retaliation, *id.* ¶ 145; that Better attempted to "process[] . . . her resignation" days after an interview where she raised additional concerns with Garg's performance, *id.* ¶ 152; that, despite the fact that she informed the company that she had not resigned, Better claimed that she had and, on that pretext, terminated

her employment, *id.* ¶ 154(c); and that, in the months after her termination, Garg specifically accused Pierce of misconduct, *id.* ¶ 171.  Garg's statements expressing his desire to fire Pierce, combined with the "close temporal connection between the protected activity and the allegedly retaliatory act[s]," are sufficient to show causation at the pleading stage.  *Forest v. N.Y. State Off. of Mental Health*, No. 13 Civ. 1762, 2015 WL 6965149, at *8 (S.D.N.Y. Nov. 10, 2015) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015)).

Accordingly, Better's motion to dismiss Pierce's Labor Law § 740 claim is DENIED.

II.    Sarbanes-Oxley Retaliation

Better moves to dismiss Pierce's claim that Better retaliated against her in violation of Section 806 of Sarbanes-Oxley, 18 U.S.C. § 1514A(a).  Better Mem. at 30.  This statute prohibits any company "with a class of securities registered under section 12" of the Securities Exchange Act of 1934 ("Securities Act"), or any company "that is required to file reports under section 15(d)" of the Securities Act from retaliating against an employee for six categories of lawful whistleblowing activity.  18 U.S.C. § 1514A(a); *see Murray v. UBS Sec., LLC*, 43 F.4th 254, 259 (2d Cir. 2022).

Pierce has not shown that Better is subject to the restrictions of Sarbanes-Oxley. Although Pierce alleges that Better had begun the process of going public through its SPAC transaction and was required to file a Form S-4 with the SEC, Am. Compl. ¶ 187; Pl. Opp. at 25–27, she does not claim that this filing was required pursuant to section 15(d) of the Securities Act.  Nor does Pierce allege that Better is somehow otherwise subject to 18 U.S.C. § 1514A(a), either as a contractor of a publicly traded company or as a company whose financial information was included in the consolidated financial statements of a public company.

Accordingly, Better's motion to dismiss Pierce's Sarbanes-Oxley claim is GRANTED.

III.     Dodd-Frank Retaliation

Pierce's Dodd-Frank claim also fails.  To state a claim under Dodd-Frank, Pierce must establish that she provided information about violations of the securities laws to the SEC and that Better, "aware of [her] protected activity," retaliated against her.  *Celucci v. O'Leary*, No. 19 Civ. 2752, 2020 WL 977986, at *10 (S.D.N.Y. Feb. 28, 2020).  On May 28, 2022, Pierce filed a Form TCR with the SEC to register as a whistleblower.  Am. Compl. ¶ 164.  Pierce does not allege, however, that Better was aware that she provided information to the SEC.[10]

Accordingly, Better's motion to dismiss Pierce's Dodd-Frank claim is GRANTED.

IV.     Breach of Fiduciary Duty

Garg and Calamari move to dismiss Pierce's derivative claim for breach of fiduciary duty on the ground that Pierce failed to serve the prerequisite demand on the Board under Delaware law.[11]  Garg & Calamari Mem. at 8, ECF No. 56.  Although Pierce concedes that the demand requirement applies and that she did not comply, she argues that it should be excused as futile.  Pl. Opp. at 31.  The Court disagrees.

Demand futility is only established if a majority of the Board (1) received a material personal benefit from the alleged misconduct; (2) faced a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; or (3) lacked independence from someone who either received a material benefit from the alleged misconduct or faced a substantial likelihood of liability related to the litigation demand. *United Food & Com. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021). Courts must ask these questions "on a director-by-director basis," and only if the answer is

---

[10] Pierce's only response is to state that the SEC commenced an investigation of Better as a result of her Form TCR.  Pl. Opp. at 29.  This allegation does not appear in the complaint and, therefore, shall not be considered on a motion to dismiss.  *Feldman v. Sanders Legal Grp.*, 914 F. Supp. 2d 595, 600 n.5 (S.D.N.Y. 2012).

[11] Better is a Delaware corporation.  Am. Compl. ¶ 27.

16

yes to any of the three questions for at least half of the demand board would demand be excused as futile. *Id.* Pierce has not included allegations on a director-by-director basis, and instead pleads in a conclusory fashion that the Board as an entity was compromised by a lack of independence and a risk of liability. *See* Am. Compl. ¶¶ 207–13. These broad statements are insufficient to demonstrate demand futility, particularly because Pierce alleges that Board members were responsive to her concerns about Garg. *See id.* ¶¶ 105–08.

Accordingly, Garg and Calamari's motion to dismiss Pierce's claim for breach of fiduciary duty is GRANTED.

## V. Defamation

Garg and Better each move to dismiss Pierce's defamation claims. Garg & Calamari Mem. at 12–13; Better Mem. at 33–34. Under New York law, a plaintiff must allege "(1) a written or spoken defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 169–70 (S.D.N.Y. 2021). The first element has four parts: there must be a writing or a statement; it must be defamatory; it must be a fact, not an opinion; and it must be about the plaintiff, not a general statement. *See Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014).

### A. Defamation Against Garg

Pierce alleges that Garg defamed her by stating that:

- Better needed to "hire experienced and seasoned executives," Am. Compl. ¶ 217(a) ("Statement 1");
- The "metrics of the [c]ompany are a black box," *id.* ¶ 217(b) ("Statement 2");
- Pierce was the leader of a "coup," *id.* ¶ 220(a) ("Statement 3");
- Pierce "resigned" from, "abandoned," and sought to "extort" Better, *id.* ¶ 220(b) ("Statement 4");
- Pierce's title "should have been Cheerleader in Chief," *id.* ¶ 220(c) ("Statement 5"); and

- Pierce had been "cooking the books" and "fudging the numbers" by stating an artificially low cost of Better's loan processing, *id.* ¶¶ 171, 223 ("Statement 6").

Statements 1 and 2, contained in an email from Garg to other Better employees, do not mention Pierce.  Although that is "not necessarily fatal" to her claim, Pierce must adequately plead that persons reading a statement would "understand that it refers to the person complaining."  *Gilman v. Spitzer*, 902 F. Supp. 2d 389, 395 (S.D.N.Y. 2012) (citation omitted).  "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance."  *Conti v. Doe*, 535 F. Supp. 3d 257, 266 (S.D.N.Y. 2021) (cleaned up).  The Court must "give the language a natural reading rather than strain to read it" at either extreme.  *Gilman*, 902 F. Supp. 2d at 395 (citation omitted).  The inference that Pierce urges the Court to adopt—that Garg was implying that she was not "experienced and seasoned"—is strained.  The Court is not persuaded that a reasonable reader of Garg's email containing Statements 1 and 2 would understand them to concern or defame Pierce, particularly considering that the email followed a week of extensive public criticism of Garg.

Statements 3, 4, and 5 are not actionable because Pierce has not pleaded special damages.  Pierce argues that they constitute defamation *per se* because they injure her in her trade, business, or profession.  *See* Am. Compl. ¶ 222.  Such a statement "must be made with reference to a matter of significance and importance for the operation of the business, rather than a more general reflection upon the plaintiff's character or qualities."  *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 77 (S.D.N.Y. 2012) (cleaned up).  It must be targeted "at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is of a kind incompatible with the proper conduct of the business, trade, profession or office itself."  *Id.* (cleaned up).  Statements cannot be defamatory *per se* "if reference to extrinsic facts is necessary to give them a defamatory import."  *Aronson v.*

*Wiersma*, 65 N.Y.2d 592, 594–95 (1985).  Although Statements 3, 4, and 5 may generally reflect upon Pierce's character, qualities, and even job performance, they are not "incompatible" with her ability to be an effective business executive.  Pierce, therefore, has failed to plead special damages.

Statement 6, by contrast, is actionable.  This is a clear statement of fact, referring to a specific instance of Pierce's conduct that is readily capable of being proven true or false.  *Conti*, 535 F. Supp. at 268; *see Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 722 (S.D.N.Y. 2014) ("When the criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, the borderline between fact and opinion has been crossed." (citation omitted)).  It is defamatory *per se*, as a statement that "imputes some form of fraud or misconduct" to Pierce, thus effecting reputational injury to her as a professional.  *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (quoting *Van-Go Transp. Co. Inc. v. N.Y.C. Bd. of Educ.*, 971 F. Supp. 90, 98 (E.D.N.Y. 1997)).  And the complaint states that Garg published Statement 6 to a third party—the Board.  Am. Compl. ¶¶ 171; 223.  Garg argues that the complaint does not plead actual malice on his part.  Garg & Calamari Reply at 7–8, ECF No. 65.  Assuming that standard of fault applies, the complaint alleges that Garg made Statement 6 with knowledge of its falsity.  Am. Compl. ¶¶ 171–72; 223–24.  This allegation is plausible:  Pierce claims that she told Garg the true cost of Better's loan processing, rather than the lower number he claimed, *see id.* ¶¶ 171–72; Garg frequently disregarded the company's metrics, *see, e.g.*, *id.* ¶¶ 43, 91, 95; and Garg said that he wanted to "get her out," *see id.* ¶ 134.

Accordingly, Garg's motion to dismiss Pierce's defamation claim is DENIED.

B. Defamation Against Better

Pierce alleges that Better's liability for defamation arises, first, under the theory of respondeat superior for Garg's statements, and, second, because of a November 9, 2022 press statement regarding the Loan Litigation.

"An employer is liable under respondeat superior if the employee, in committing the act complained of, was acting within the scope of his employment." *Cruz v. Marchetto*, No. 11 Civ. 8378, 2012 WL 4513484, at *7 (S.D.N.Y. Oct. 1, 2012). "An act is considered to be within the scope of employment if it is performed while the employee is engaged generally in the business of his employer." *Holmes v. Gary Goldberg & Co., Inc.*, 40 A.D.3d 1033, 1034 (N.Y. App. Div. 2007). Garg is Better's CEO, and Pierce alleges that he made Statement 6 in that capacity to other Better employees and the Board. Am. Compl. ¶¶ 171–72, 223. Better, therefore, would be liable under respondeat superior. *See Langenkamp v. New York Univ.*, No. 10 Civ. 8883, 2012 WL 12540277, at *3 (S.D.N.Y. Mar. 15, 2012).

Regarding the Loan Litigation press statement, Better argues that Pierce has not pleaded special damages. The Court agrees. Although Pierce contends that the statement is *per se* defamatory, it is at worst a "general reflection upon [her] character or qualities," rather than one related to the performance of her business. *Pure Power Boot Camp*, 813 F. Supp. 2d at 550.

Accordingly, Better's motion to dismiss Pierce's defamation claim under the theory of respondeat superior is DENIED, and its motion to dismiss her defamation claim with respect to the Loan Litigation statement is GRANTED.

VI.     Intentional Infliction of Emotional Distress

Garg and Calamari move to dismiss Pierce's claim for intentional infliction of emotional distress. Garg & Calamari Mem. at 16. To state a claim under New York law, a

plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 122 (1993). This standard is exceedingly difficult to meet, particularly in the employment context. *Harding v. Dorilton Cap. Advisors LLC*, 635 F. Supp. 3d 286, 304 (S.D.N.Y. 2022). Criticisms of job performance, harassment, and termination do not suffice to meet this high bar. *See id.*; *Ahmed v. Compass Grp.*, No. 99 Civ. 10032, 2000 WL 1072299, at *10 (S.D.N.Y. Aug. 3, 2000). Pierce claims that Garg and Calamari fired her, sought to smear her reputation, and engaged in a campaign of retaliation and harassment. *See* Pl. Opp. at 44. These allegations do not suffice under New York law.

Accordingly, Garg and Calamari's motion to dismiss Pierce's claim for intentional infliction of emotional distress is GRANTED.

VII.    Tortious Interference with Contract

Garg and Calamari move to dismiss Pierce's claim for tortious interference with contract based on her termination. Garg & Calamari Mem. at 19. Pierce concedes that she was an at-will employee. Pl. Opp. at 42. Generally, plaintiffs cannot "evade the employment[-]at-will rule and relationship by recasting [the] cause of action in the garb of [a] tortious interference" with contract claim. *Ingle v. Glamore Motor Sales*, 73 N.Y.2d 183, 189 (1989). To maintain a cause of action, an at-will employee such as Pierce must establish that a "third party used 'wrongful means' to effect the termination such as fraud, misrepresentation, or threats[;] that the means used violated a duty owed by the defendant to the plaintiff[;] or that the defendant acted with malice." *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001) (citation omitted). Garg and Calamari argue that, as co-employees, they were not third parties to Pierce's contract. Garg & Calamari Mem. at 20. They are correct. To be

a third party, Garg and Calamari would have to "act[] outside the scope of [their] authority"
or "commit[] an independent tortious act" against Pierce. *Albert*, 239 F.3d at 275 (citations
omitted). Pierce has not pleaded that Garg or Calamari independently committed torts prior
to the end of her employment with Better. *See supra* Section V.A (sustaining defamation
claim only as to a post-termination statement by Garg). And, Pierce has not alleged that Garg
or Calamari acted outside the scope of their authority in terminating her employment: Garg
had the authority to fire her, and Pierce's allegations about Calamari's conduct do not
establish that he acted outside his general counsel role. Garg & Calamari Mem. at 21–23.

Accordingly, Garg and Calamari's motion to dismiss Pierce's claim for tortious
interference with contract is GRANTED.

VIII.   Breach of Contract

Better moves to dismiss Pierce's claim for breach of contract, which arises from
Better's attempt to collect on its loans to Pierce. Under New York law, a claim for breach of
contract requires (1) the existence of an agreement, (2) adequate performance by the plaintiff,
(3) breach of contract by the defendant, and (4) damages. *N.Y.C. Transit Auth. v. Express
Scripts, Inc.*, 588 F. Supp. 3d 424, 434 (S.D.N.Y. 2022). Pierce alleges two separate
breaches. *See* Am. Compl. ¶¶ 261, 268.

First, Pierce claims that Better breached the terms of the promissory notes by seeking
to prematurely collect on the loans. *See* Am. Compl. ¶ 261. By email dated March 30, 2022,
Better stated that "her loan had come due." *Id.* ¶ 160. The actual due date—120 days after
Pierce's termination—was sixty-five days away. *Id.* The Court shall not decide if such a
statement is a breach by Better because, even if it were, Pierce has not pleaded that she
suffered damages. *See Int'l Bus. Machs. Corp. v. Dale*, No. 11 Civ. 951, 2011 WL 4012399,
at *2 (S.D.N.Y. Sept. 9, 2011). Better did not file an enforcement action—the Loan

Litigation—until after the actual due date.  *Id.* ¶ 170.  Pierce, therefore, does not state a claim as to the first alleged breach.

Second, Pierce alleges that Better "reneged" on its March 30, 2022 offer to buy back her shares following Pierce's "ultimate" acceptance.  *Id.* ¶ 268; *see id.* ¶¶ 161–63.  Pierce has not adequately pleaded the existence of an agreement.  To determine whether an agreement exists, the Court must look "to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds."  *Kolchins v. Evolution Mkts., Inc.*, 31 N.Y.3d 100, 106 (2018) (citation omitted).  An offer must be "sufficiently definite" and "reasonably certain in its material terms."  *Id.* (citations omitted).  "For an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal."  *ISS Facility Servs., Inc. v. Fedcap Rehab. Servs., Inc.*, No. 20 Civ. 6591, 2021 WL 2784550, at *5 (S.D.N.Y. July 2, 2021) (citation omitted).  Pierce does not describe the terms of Better's offer, does not allege that it was definite, and conclusorily states that she "ultimately accepted Better's proposal" without providing any details about the acceptance.  Am. Compl. ¶ 163.  A complaint must contain more than "mere labels and conclusions."  *Iqbal*, 556 U.S. at 678.  Pierce, therefore, does not state a claim as to the second alleged breach.

Accordingly, Better's motion to dismiss Pierce's breach of contract claim is GRANTED.

## CONCLUSION

For the foregoing reasons, Better's motion to dismiss is GRANTED in part and DENIED in part, and Garg and Calamari's motion to dismiss is GRANTED in part and DENIED in part.  The Clerk of Court is directed to terminate the motions at ECF Nos. 55 and 58.

SO ORDERED.

Dated: September 29, 2023
      New York, New York

ANALISA TORRES
United States District Judge